# EXHIBIT "E"

RONALD J.PRIBLE JR.              X                    IN THE 351 DISTRIC
            VS                   X                    COURT HARRIS CO.
THE STATE OF TEXAS               X                    TEXAS
                                 X
                     CAUSE # 921126A

## SUPPLEMENTAL WRIT

THE APPELLANT COMES BEFORE THE COURT AND MAKES HIS SUPPLEMENTAL
WRIT.SAID APPLLANE IS NOT AN ATTORNEY AND DOES NOT KNOW ALL THE
RULES  AND LAWS OF THE COURT.THE APPLLENT APPOLGIZES FOR ANY MIS-
TAKES.SAID APPLLANT HAS TOLD HIS ATTORNEYS ABOUT ALL OF THESE
ISSUES NUMEROUS TIMES.APPLLANT HAS HAS WRITTEN HIS ATTORNEY AND
JUDGE.(SEE CLERKS FILE)APPLLANT PRAYS THAT THIS COURT WILL ACCEPT
THIS SUPPLEMENTAL WRIT AND REVERS ON THESE ISSUES.APPLLANT BELIEVS
THAT THESE ISSUES ARE VERY IMPORTANT .APPLLANT BELIEVES THAT THESE
ISSUES SHOULD OF BEEN IN HIS ORIGNAL WRIT.

1)Prosecuter KELLY SEIGLER knowingly with held EXCULPATORY Evidence
from the defense.(BRADY VS.MARYLAND) a Brady violation!
Kelly Seigler failed to make known Her ties to the Defense as to
Her package deal with MICHALE BECKCOM and his cellyNATHEN FORMAN,
who she used a MONTH BEFORE My Trial to say another Inmate confessed
to Him.(THAT INMATE IS HERMILIO HERRERO JR.179 DISTRIC COURT CAUSE
#903122)This was a conspiracy on Kelly Seiglers part with her informant
Naten Forman,Who Seigler has ties to and his friend from the free-
world RAFAEL DOMINQUEZ and his celly MICHAEL BECKCOM.(Who said I
confessed to him)I have a witness to this conspiracy ,who wants
to make the truth known.(LARRY WAYNE WALKER)He is in Federal
Prison .
Nathen Forman was reinstated for probation violation when any
one else would of went and did State Prison time for the same
Violation.This was formans reward for recruting afriend from
the freeworld.They sold Drugs together.Rafael Dominquez and his
celly Mike Beckcom MR.credible himself ,who has been found quilty
of perjury testifying for a time cut against someone else )Seigler
knew that dominques was lieing on Her rero .She used himanyway.
(Just as she knew that Beckcom was lieing on me) It is all documented
and can be showne.When Forman & Dominques say Herrero confessed to
them,FORMAN WAS NOT EVEV ON THE COMPOUND.(HOW CAN YOU CONFESS TO
SOMEONE WHO IS NOT EVEN THERE TO CONFESS TO?) Prison records
showed this to Seigler .So,she just use Dominquez,knowing he was
lieing.She never thought what she did would ever come out!(GOD works
in All ways!)She failed to make known her ties to Forman and his
friend and mention "OH YEA I JUST SO HAPPEND TO USE HIS CELLY A
MONTH BEFORE TO DO THE SAME THING TO ANOTHER GUY.Out of 5000
Inmates both of these guys two totally different cases ,Confess
to the same group "FORMAN AND HIS CELLY and the SAME PROSECUTER".
(A Blind Man can see this for what it is!)Testimoney from Walker
will show Seigler had Forman and Beckcom waiting on Me before I
even stepped on the compound.( I should of known something was
NOT right when Forman and Beckcom came up to me asking Me if they
could help Me with my Leagal Work.They knew my first name .I had
never met them before.Who would think someone would lie about

something as serious as this.Hind sight is 20/20.I should of known
these guys should not of knowen my first name,since I had never
met them before.T was 58 days from going home from Federal Prison.
I was at a Low security Prison .Seigler knew while awatting to
be Bench warrented to Harrisco.my custody level would be raise
and I would go right next door to the medim.(WHICH IS EXACTLY WHAT
HAPPEND)She had Forman and Beckcom waiting on me .Look it is no
coincidence out of 5000 Inmates Forman says Herrero confessed to
him and Dominquez,(HIS FREEWORL FREND)and Beckcom says I confessed
to him .Walker was suppose to LIE with Beckcom .He was told that
I would never go to trial.He gave a statement to the Prosecuter
just for a statement saying I confessed to him.When he found out
I was going to Trial and they were seeking the Death Penalty ,he
would not LIE and backed out.He wants to tell the truth as to how
they went OVER and OVER ABOUT THEIR LIES TO MAKE SURE THEY HAD
IT RIGHT.(TO MAKE SUER THEY WERE SAYING THE SAME LIE)A Hearing
in open court will show this .A Prosecuter failing to make this
infomation known as to the Deal with this Group (PACKAGE DEAL)
Is certainaly not Harmless Error.(A Blind person could see this
for what it is.)A Rogue Prosecuter falseifying evidence.(THAT GET
TING SOMEONE TO KNOWINGLY LIE IS FALSEFYING EVIDENCE.To bring
to close a case .The Sheriff dept mest up so bad ,they dont have
a clue who commited it.(With all of the Drug activity that was
takeing place at that House and All the Individuls Involved,
which is crazy as crazy can be,to charge me and Falefafy evidence
just to CLOSE A CASE.I truely believe Kelly Seigler does these
type of things ,because she can and for Her Personal NOTORITY.
This woman is playing GOD ,but she is NOT GOD.There is only ONE
GOD and that is GOD.If you look at my case and (3) others I
personaly know of you will see the same pattern and the same
prosecuter.The only thing presented against them at trial is
some UNCREDIBLE JAIL HOUSE INFORMANT,telling  a obvious LIE
for a time cut.(Those 3 cases I know of other than mine are
HERRERO,WILLIAM IRVAN and TARUS SALES)It just so happend that I
found out about what was done to Herrero from Jaime Elizalde Jr.
Who Killed the Guy that Herrero is charged with Killing.( WHAT IS
SO CRAZY IS I TOLD MY ATTORNEYS 2½ YEARS AGO ,THAT THIS GUY WANTED
TO TELL THE TRUTH .HE KILLED THE GUY HERRERO IS CHARGED WITH KILLING
AND NOBODY EVEN ACTED ON THIS.)Just look for youeself ,you will
see everything I say and so much more what it truely is .It will
blow your mind what this Evil Woman has done.What is so Terrible
is that she used the Justice system to do these terrible acts.
appllant ask the coury to revers and remand for a new trial and
or alot the funds necessary to have someone investacate this
infomation .

2)WILLIAM WATSON the DNA guy for the Prosecution (WHO SEIGLER USES
IN ALL OF HER CASES ,BECAUSE HE SAYS WHAT SHE WANTS HIM TO SAY.)
Knowingly gave FALSE TESTIMONEY to give the impression that I was
at the crimescene when it was committed.(THIS WAS DONE TO MISLEAD
THE JURY IN TO BELIEVING I WAS AT THE CRIME SCENE,THEREFORE I
MUST HAVE COMITTED THE CRIME.)

HE WAS
TOLD HE
GET A LET
TO HIS
PROSECUT
ASKING
FOR
TIME
CUT.

I have in record copys of Affadavits from DR.SHILDS and ATTORNEY
TERRY GAISER TO SUPPORT SUCH.(SEE Affadavits.)Thats why I want
the DNA Tested in my case bv an outside Lab,to show such.watson
says it is my DNA and mine alone and states it was detected in
and had to be left just prior to her death.(Now he is giveing
the impression that I had sex with her just before she died or
after she was dead.eaither way he is leading the Jury to believe
that I was at the crime scene .So,I have to be the one who committed
this crime.)Now aTest by a outside Lab being truthful ,will show
him for the Lier that He is.That is why a DNA Test by a outside Lab
is so Important.In WILLIAM IRVAN'S CASE THEY CAN SHOW WHERE HE LIED
AS WELL.No doubt he is just doing what Seigler want him to do.LIE.
To confuse the Jury as to give them a reason to convict where theer
is NO evidence.(THE BIBLE SAYS ,MY PEOPLE ARE DESTROYED FOR LACK
OF KNOWLEDGE.)You believe that these people are professional and
their integity would be their bond.(The Bible also says that Money
is the Root of All EVIL.Im sure that Watson gets paid well to
testify for Seigler,as long as he is saying what she wants ,he
gets paid.(IT CAN BE SHOWN THAT HE KNOWNGLY LIED AT MY TRIAL AND
YOU CAN NOT SAY THAT IS HARMLESS ERROR.DNAis a high standerd of
proof in this day age,if not the hightest at this time.The Jury
look to these people to be Truthful and those shpwn to be lieing
take away from the integrity there of.They need to have detering
factors to stop them from lieingunder oth in court.SUCH AS PAYING
EVERYTHING BACK THEY ARE PAID WHEN FOUND TO BE LIEING.I THINK
THAT WOULD MAKE THEM MINDFUL NOT TO LIE OR TESTIFY IF THEY ARE
GOING TO LIE.THE APPLLANT ASK THE COURT TO REVERS AND REMAND FOR
A NEW TRIAL AND OR HAVE THE DNA TESTED.

3)Ineffective Assistance of Counsel on my Trial Attorneys.A former
F.B.I Agent who visited me in Federal Prison (WHO WAS A F.B.I
Agent at the time) Avoided a subpoena to my Trial(CAPITAL MURDERTRIAL)
My Attorney Specifially picked Juors with family and friends
in LAW ENFORCEMENT,knowing this F.B.I Agent had knowledge of a
known jacke$ my friend was dealing with in requards to stolen
Dope.(COcain)They exspected him to show up and make known the info-
mation that he knew,which was very important .(IM STILL TRYING
TO FIGURE THIS ONE OUT .HE AVOIDED A SUBPOENA TO A CAPITAL MURDER
TRIAL,) Now when he did not show up,my jury (of about 8-9 of 12
have family in Law Enforcement ,I cant rember if it was 8 or 9
of them)So,insted of aJury who most likely to except the testimonv
of a F.B.I Agent as Truth,I got a LYNCH MOB,who was just looking
for a reason to Hang someone.Anyone.(ESPECIALLY WHEN THERE ARE
CHILDRENS HEARTS ,LUNGS AND TOUNGS ON DISPLAY,WHICH CAUSED THE JURY
NOT TO USE REASON AND VIEW THE EVIDENCE ,BUT ACT ON EMOTION.)
Now my Attorneys should of had a hearing out of the presence of the    — TESTI
Jury ,with the Judge as the importance of this F.B.I Agent.Look
im not going to say im a smart Man ,by no means a Attorney,but
I understand then as well as now the importance of his testimoney
when you stack the Jury for the purpose of his testimoney.I never    COME TO
once heard them push the issue for him to be made to my Trial.
(I mean you are talking a Capitol Murder trial and testimony
which makes the Jury aware of activity surrounding this case
About the people as well.)

I know that if the Jury would of heard His testimoney it would
of been Night and Day Difference.So,yes my Attorney did not just
drop the Ball on that ,they did not even bother to pick it up.My
Attorney's did not even try to have the trial Delayed or even
suggest such to the Judge as to the Importance of His Testimoney.
(SEE MY THE WITNESS LIST FOR TRIAL .He is on the list for trial.?
He is a Formar F.B.I Agent.I dont know if im spelling his name
right ,but ill do my best.EFREN GUTEREZ.
THE APPLLANT ASK THAT THE COURT REVERS AND REMAND FOR A NEW TRIAL.


4)I need a new WRIT and a New Writ Attorney,all of this needs
to be done the legal wayand right way,to do justice ,to make known
what im trying to make known ,supported by case law.I cant say
all the right legal stuff that needs to be said ,but I know what
was done to me.He is in Houston and im in Livingston.I know that
he is bussy ,but itz is only a hour away.I asked him to call me
here(WE CAN HAVE PHONE CALLS BY A ATTORNEY)Never happend.I asked
for Trial transcripts ,Never Happend.HIS ATTITUDE IS TERRIBLE
IN REGUARDS TO MY APPEAL.None of this is right.In fact it is
Horrible Wrong!(IT IS A ABSOLUTE NIGHTMARE THAT YOU HAVE ~~EVER TO~~
EXPERANCED   TO BELIEVE).I COULD GO ON AND ON FOREVER ABOUT MY
WRIT ATTORNEY ,BUT JUST LOOK AT MY LETTERS TO THE JUDGE IT SPEEKS
FOR ITS SELF.(SEE LETTERS TO JUDGE AND MOTION TO GET A NEW
WRIT ATTORNEY.).APPLLANT ASK THAT COURT TO REVERS AND REMAND FOR
A NEW TRIAL.

*HOW CAW
HE DO A Y
WRIT WHEN
HE DON'T
COME SEE
ME?
OR CALL*


APPLLANT PRAYS THAT YOU ACCEPT MY ISSUES AND RULE IN MY FAVOR.




                              RESPECTFULLY SUBMITTED

                              RONALD J.PRIBLE,JR #999433
                              POLUNSKY UNIT
                              3872 FM 350 SOUTH
                              LIVINGSTON ,TEXAS.77351

CAUSE NO. 921126-A

RONALD JEFFERY PRIBLE        IN THE 351ST DISTRICT
      US                           COURT
                                  OF
STATE OF TEXAS          HARRIS COUNTY
HARRIS, COUNTY          STATE OF TEXAS

MOTION PRO-SE FOR NEW COUNCEL, DNA TEST TO SHOW
IT NOT MY DNA, AND WALKER TO BE SUBPOENA TO
A HEARING IN OPEN COURT SO HE CAN MAKE KNOWN
INFORMATION HE POSSESS. (I WISH TERRY GAISER
TO QUESTION HIM ON STAND) ENCLOSED IS INFORMA-
TION TO SUPPORT REASON TO GRANT MOTION. (I ASKED
JUDGE TO FORWARD ALL INFORMATION SUCH AS LETTERS
AFFIDAVIT, ETC'. TO YOU I ONLY HAD ONE COPY
AND FELT TIME WAS OF UTMOST IMPORTANCE)

RONALD J. PRIBLE JR

PLEASE TAKE TIME TO REVIEW,
JUDGE ELLIS. (VERY IMPORTANT!)

: 00279

JUDGE ELLIS,

PLEASE! PLEASE! READ THIS! JUDGE THIS IS
OF UTMOST IMPORTANCE! JUDGE OVER 3 YEARS AGO
IT WAS BRUNG TO MY ATTENTION OF A IDIVIDUAL
NAMED WALKER WHO COME FORWARD AND WANTED TO
MAKE INFORMATION KNOWN OF SIEGLER CONSPIR
ACY WITH JAILHOUSE INFORMANTS TO MAKE CASES
FOR HER. ( GOD WORKS IN ALL WAYS! )   HE KNOWS
THE TRUTH TO WHAT WAS DONE TO ME AND CAN
MAKE THIS KNOWN, NOW MY ATTORNEY ROLAND
MOORE HAS BEEN CAUGHT IN LIE AFTER LIE TO
ME, I TOLD A PRIVATE INVESTIGATOR HE SENT
TO SEE ME ABOUT THIS GUY (WALKER) HE(THE P.I.) TOLD
ME IF I TAKE A POLYGRAPH TEST HE THINKS
HE CAN GET MY CASE OVERTURNED. (THIS GUY
NOT HEARING WHAT I HAVE TO SAY AND TALKED
ABOUT SOMETHING THAT HAS NO RELEVANCE WHAT
SO EVER) WHEN I WROTE MY ATTORNEY HE SAID
"IM SORRY FOR WHAT HE SAID YOUR RIGHT THEN
NOT ADMISSIBLE I'M GONNA TALK TO HIM ABOUT THAT"
HE NEVER SENT ANYONE ELSE. OKAY I FILED
A MOTION PRO-SE FOR DNA TESTING. I SENT
YOU LETTERS SHOWING YOU WHERE HE SAID I
ADMITTED IT WAS MY DNA, (WHICH YOU KNOW I
ALWAYS SAID I DID NOT BELIEVE TO BE MY DNA) OF
COARSE WHEN CONFRONTED IN A E-MAIL BY MY
SISTER HE CHANGED WHAT HE SAID AND SAID
HE MENT SOMETHING ELSE. MY SISTER E-MAILED
HIM RECENTLY ASKING HIM SOME QUESTIONS
AND TO RESPOND TO MY QUESTIONS IN THE
LETTERS I SENT HIM.(ENCLOSED IS THE LETTER)
JUDGE HOW CAN THIS MAN ARGUE ISSUES FOR
ME OWN APPEAL WHEN HE NOT EVEN AWARE OF
THE CIRCUMSTANCES SURROUNDING THE ISSUE.
HERE HE SAYS YOU ADMITTED TO HAVING HAD
SEX WITH HER, AND THE ONLY ISSUE WAS WHEN,
YOU SAID BEFORE MIDNIGHT; THE STATE SAID
AFTER.   JUDGE I NEVER SAID BEFORE

MIDNIGHT WE DID NOT GET BACK FROM THE TOP-LESS CLUB UNTIL AFTER MIDNIGHT. (HE NOT EVEN AWARE OF FACTS IF HE READ MY STATEMENT HE KNOW THIS) JUDGE IT SIMPLE I WANT MY DNA TESTED TO SHOW IT NOT MY DNA. WATSON SAYING IT MY DNA GIVES HIM THE GROUNDS TO GIVE HIS OPINION (BAD SCIENCE) I HAD TO BE PRESENT AT SCENE OF CRIME FOR MY DNA TO BE DETECTABLE. SO FOR THE PURPOSE OF SHOWING IT NOT MY DNA IS WHY I WANT THE DNA TESTED. WATSON SAID IT MY DNA NO ONE ELSES (WELL LETS LET A OUTSIDE LAB TOTAL NEUTRAL DECIDE. I JUST ASK THEY ARE NO WAY ASSOCIATED WITH ORCHID CELLMARK) ALL MOORE DOES IS MAKE EXCUSES NOT TO ACT! NOW AS TO WALKER I HAD A ANTI DEATH PENALTY ACTIVIST NAMED WARD LARKIN LOCATE HIM SINCE MY ATTORNEY WOULD NOT (I STILL DO NOT KNOW HIS INFOR MATION AS TO CONTACT HIM MY SELF THE ANT. DEATH PENALTY ACTIVIST SAYS I AM IN NO WAY TO CONTACT HIM SO IT LOOKS IN NO WAY THAT I PERSUADED HIM TO COME FORWARD) PLEASE KEEP IN MIND BECKCOM GOT A INCENTIVE (TIME CUT) TO LIE. THIS GUY HAS NO INCENTIVE WHAT SO EVER TO GAIN BY COMING FORWARD. (I CAN NOT ASK HIS PROSECUTER FOR A TIME CUT NOW MY ATTORNEY WROTE A LETTER WHEN GIVEN THE CORRECT ADDRESS BY WARD LARKIN AND NAME OF INMATE. HE MAILED THE LETTER TO WRONG PRISON AND WRONG NAME WHEN HE WAS GIVEN CORRECT ONE. 3 MONTHS LATER WHEN HIM AND MR. LARKIN SPEAK AGAIN HE REALIZES HIS MISTAKE HE COMPLAINS ABOUT HIS HEALTH. (PAINS IN HIS CHEST ETC...) TWO WEEKS LATER MY SISTER E-MAIL HIM ABOUT WALKER. HE SAYS I SENT A LETTER IT COME BACK UNDELIVERABLE I CAN NOT DO ANY THING IF WALKER DON'T RESPOND. NOW WHY NOT TELL THE TRUTH INSTEAD OF

FAMILY BE CURIOUS TO WHY HE HAS NOT RESPOND
YET, WHY NOT SAY HEY I MADE A MISTAKE I
SENT TO WRONG PRISON WRONG ADDRESS. (JUST
ANOTHER UNTRUTH BY MY ATTORNEY) IN ONE LETTER
I ALREADY SENT YOU SEE WHERE HE SAYS IF
SOMEONE WOULD COME FORWARD AND MAKE KNOWN
CONSPIRACY BETWEEN STEGLER AND JAIL HOUSE IN
FORMANTS WE HAVE SOMETHING BUT NO ONES HAS
SO WE DON'T. OKAY WALKER INFORMATION GIVEN
TO HIM. NOW HE SAYS IT WILL DO NO GOOD
NO ONE WILL BELIEVE WHAT HE HAS TO SAY
TOTALLY CONTRADICTING HIMSELF. (I GOT TO SAY
THAT SICKENING HE SAY SOMETHING LIKE THAT!)
HE CAN NOT ASSUME THAT! THIS IS MY LIFE I
GOT TO DO EVERYTHING I CAN TO SHOW WHAT
WAS WRONGFULLY DONE TO ME! I KNOW WALKER
TESTIMONY IS OF GREAT IMPORTANCE AND CAN
LEAD TO A BRADY VIOLATION AS WELL AS
PROSECUTIONAL MISCONDUCT AND WHO EVER KNOWS
WHAT ELSE. (HE KNOWS THE TRUTH! IF GIVEN
THE OPPORTUNITY TO SPEAK IN OPEN COURT WHA
HE SAYS CAN BE VERIFIED AS FACTS JUDGE
ENCLOSED IS A LETTER FROM A PI WHO I
ASKED MOORE TO HIRE TO TALK TO THIS GUY
IN PRISON. MOORE TOLD HER HE WOULD WHICH
YOU SEE BY HER LETTER HE NEVER DID. NOW
MOORE SAID HE SEND SOMEONE GOOD TO TALK TO
HIM. NOW HE SAYS IN THIS LETTER SOMEONE
FROM A INNOCENCE PROJECT IN ALABAMA
GONNA SPEAK TO HIM. I SENT LETTER TO MR.
LARKIN ASKING HIM TO VERIFY THIS SINCE
MY ATTORNEY TOLD ME SO MANY UNTRUTHS.
ENCLOSED IS HIS LETTER AND WHY I BELIEV
THIS WILL NOT HAPPEN. (ALSO A LETTER FROM
BARRY SCHECK INNOCENCE PROJECT WHO TOOK MY
CASE BECAUSE I WROTE THEM AND ASKED THEM
TO IN REGARDS TO DNA. NOW MR. MOORE CON-
VINCED THEM HE OWN TOP OF IT WHEN HE NOT
SO I DON'T HAVE THEM ANY MORE.) JUDGE IF

THE GUY LIES TO ME ONCE IT A BAD SIGN BUT
COME ON TIME AND TIME AGAIN. THAT WRIT
HE FILED IS TRASH (NO GOOD!) AND YOU KNOW
IT! HE NEVER SPOKEN TO ME **LISTENED** TO WHAT
I HAVE TO SAY. IT OBVIOUS HE NEVER READ
MY MANY LETTERS HOW COULD HE FILE A GOOD
WRIT. NOW HE JUST MAKE POOR EXCUSES NOT
TO ACT. (IT SICKENING!) JUDGE I NEED A
HEARING IN OPEN COURT ON WHAT WALKER HAS
TO SAY. MY ATTORNEY HAD HIS INFORMATION
GIVEN TO HIM OVER 9 MONTHS AGO AND HAS YET
TO HAVE ANYONE SPEAK WITH HIM. PLEASE SUBPOE
HIM AND HAVE A HEARING IN COURT (I LIKE TO
BE PRESENT) PLEASE APPOINT ME **NEW** COUNCE
AS TO DNA ISSUE AND WALKER HEARING, IT
OBVIOUS MOORE NOT THE ONE FOR THE JOB. I
ASK FOR TERRY GAISER! ANYONE GOT TO
BE BETTER THAN MOORE! MR. MOORE HAS WALKER
INFORMATION TO HAVE HIM SUBPOENA. IF MOOR
SAYS HE LOST IT WELL WARD LARKIN WHO INF
ORMATION IS ENCLOSED WILL SURLY GIVE IT
TO YOU. (I WOULD BUT I TRUELY DO NOT HAC
IT MY SELF AND BELIEVE IT BEST SO NO ONE
CAN SAY I ASKED HIM TO SAY WHAT HE GON
SAY. TRUTH BE TOLD I DON'T KNOW WHAT HE
GONNA SAY BUT I KNOW IT THE TRUTH AND
WILL MAKE KNOWN WHAT KELLY SIEGLER DID
WRONGFULLY TO PUT ME HERE. **GOD** WORKS IN
ALL WAYS!) SO PLEASE EXCEPT THIS IS MY
MOTION FOR NEW COUNCEL, DNA TEST TO
SHOW IT NOT MY DNA, AND HEARING IN
COURT AS TO WALKER. I AM AT MY WITS
END AND KNOW NOT WHAT TO DO SO I ASK YOU
FOR THE LOVE OF **GOD!** HELP ME! YOU KNOW IT
THE TRUTH! JUST HAVE A HEARING AS TO
WALKER, TEST THAT DNA FOR PURPOSE TO SHOW IT
NOT MINE AND GET RID OF ROLAND MOORE
AS MY COUNCEL OWN THESE ISSUE (WHICH I
AM SURE HE WILL BE GLAD OF HIMSELF!)

I AM JUST ASKING YOU TO DO WHAT RIGHT IN THE EYES OF THE LAW AND LET ME SHOW WHAT WRONG WAS TRUELLY DONE TO ME. IT CAN ALL BE SHOWN IF YOU JUST MAKE THE OPPERTUNITY AVAILABLE. PLEASE JUDGE DON'T MAKE THE ASSUMPTION WHAT WALKER HAS TO SAY WILL NOT BE BELIEVED. (I HAVE A FEELING WHAT HE HAS TO SAY GONNA SHED SOME LIGHT IN A PLACE THAT BEEN DARK FOR WAY TO LONG!) THIS IS MY PRAYER YOU WILL GRANT MY MOTION!

GOD BLESS!

RONALD J. PRIBLE JR.

ALSO JUDGE THESE ARE MY ONLY COPIES OF THESE LETTERS SO PLEASE FORWARD TO CLERK OFFICE I SENT A COPY OF THIS LETTER BUT NO ACTUAL LETTERS BECAUSE THESE ARE MY ONLY ONES. ALSO IS A AFFADAVIT OF WATSON CAUGHT SAYING IT WAS SOMEONE DNA WHERE IT WAS NOT IN A CAPITAL MURDER TRIAL. (I HOPE THIS FURTHER SUPPORT THE FACT TO TEST AND SHOW THAT NOT MY DNA) IF THE TRUTH DOES NOT COME OUT NOW I DO NOT THINK IT WILL AND THE STATE OF TEXAS WILL KILL ME AND ALL THIS WILL BE SWEPT UNDER THE RUG. HOW LONG! HOW LONG! CAN THIS CONTINUE TO BE ALLOWED TO GO ON?

(EXTRA)

ENCLOSED IS ONLY COPYS OF LETTERS I HAD. ALL LETTERS TO SUPPORT MOTION WERE SENT WITH SAME LETTER AS THIS ONE TO JUDGE, AS SHOWN ABOVE I ASKED HIM TO FORWARD TO COUNTY CLERK OFFICE.

: 00284

# ROLAND BRICE MOORE III, P.C.
## ATTORNEY-AT-LAW
### The Great Southwest Building
### 1314 Texas Ave. Suite 1705
### Houston, Texas 77002

Office: 713 229-8500                                                         Fax: 713 229-8989
    Board Certified in Criminal Law    Texas Board of Legal Specialization

July 10, 2006

Mr. Ronald Prible TDC# 999433
Polunsky Unit
3872 FM 650S
Livingston, Texas 77351

Re:  Your recent letters

Dear Mr. Prible,

I got your letter about the DNA matter.  I do not want to be discouraging.  I am just trying to tell you the honest truth about your case.  The big problem is that you admitted to having sex with her.  The only issue at trial was when.

Let me summarize the problem about the DNA.  These observations are all because of the restrictions on what can and cannot be done in a Writ.

The first thing is that the whole question of the time of the sex act with the deceased was gone over at your trial.  It is therefore almost impossible to have the issue reconsidered on the Writ.  The Writ is for new evidence, like if Beckhom would come forward and admit he lied (and take the 5 year aggravated perjury sentence that would follow.) Or it's for attacking a conviction where the lawyer lay down on the job.  We don't have that second one at all.

Secondly, I am using the DNA matter to try to stretch things out.  One way or the other, the DNA is going to be retested.  But, you admitted to having had sex with her, and the only issue was when.  You said before midnight; the state said after.  Watson's testimony was bull as I argued in the Writ.  But, again, another big BUT, the State's M.E. said the same thing that we are saying.  So if everything was argued and heard by the jury, the Court of Criminal Appeals will only say the jury already heard all this and there's nothing new in the Writ.  They heard the experts and believed Watson; they may well have been wrong, but the law is that the Court won't go back and decide which witness should have been believed.  They will not second guess a jury verdict where everything we are saying was already heard by the jury.

Secondly, we are saying that the presence of the DNA did not imply a time frame for when the sex act occurred.  Only Watson said it did.  He was clearly wrong.  But this has another side.  The only reason to retest the DNA is to see if there was somebody else's DNA besides yours and her husbands.  If there was somebody else's, we can't say that that somebody else had sex with her at the time of the murder, unless we say that Watson

*(Handwritten margin notes:)*

I NEVER SAID THIS!

HOW CAN YOU ARGUE MY ISSUE WHEN YOUR NOT AWARE OF CIRCUMSTANES THAT SURROUND IT!

:00285

I WANT TO SHOW IT NOT MY DNA (THAT SIMPLE!

was right. And that would mean that you and somebody else had sex with her at the time of the murders, which really doesn't help.

As for Walker, the Innocence Project people in Alabama said that they would send an investigator to go see him. What I don't understand is what anybody could say that would help. As I told your sister by email last night, if the ideal witness came forward like you would dream up in a movie, and said: "Yes, Kelly Sigler told me to say all these things about Prible's confessing, even though he didn't, and offered me a deal to come say that, but I changed my mind because it was a lie" then we could have a hearing where this dream witness would say all that. But nobody would believe it. I mean nobody. So my question is, aside from having an inmate say that Kelly Sigler is a bloody minded prosecutor who will use a filthy snitch like Beckhom to send somebody to death row, which everybody knows, what are we looking for? I mean what are we looking for that could be used to upset your death sentence?

Sincerely,

Roland B. Moore III

→ HOW CAN HE ASSUME THIS?
I HAVE TO TRY EVERYTHING TO SHOW
WHAT WAS DONE HERE! IT NOT A MATTER
OF IF, IT WHEN! (HOPEFULLY A.S.A.P.)
THIS HEARING WILL GIVE OPPERTUNITY FOR
BECKCOM AND FOREMAN TO BE CALLED AS WITNESS.
EVERYTHING CAN BE SHOWN AS IT TRUELLY IS.
THIS CAN LEAD TO BECKCOM AND FOREMAN BEIN
FOUND GUILTY OF PERSURY IF PROPERLY
QUESTIONED BY SOMEONE WHO NOT AFRAID
TO PUT SIEGLER OUT THERE FOR THE ROGUE
PROSECUTER SHE IS!

Barry C. Scheck, Esq.
Peter J. Neufeld, Esq.
Directors

Maddy deLone, Esq.
Executive Director

Innocence Project
100 Fifth Avenue, 3rd Floor
New York, NY 10011
Tel 212.364.5340
Fax 212.364.5341

www.innocenceproject.org

July 05, 2006

Ronald Jeffery Prible
999433
Polunsky Unit
3872 FM 350 South
Livingston, TX  77351

Dear Mr. Prible:

The Innocence Project has completed its evaluation of your case. We regret to inform you that we will not be able to accept your case.

We have contacted Mr. Roland Moore about your case and he is pursuing several DNA-related angles and working with DNA experts. Since you have an attorney working on biological evidence issues, we are closing your file at this time. We have informed Mr. Moore that our office is available to him and his associates as a reference for DNA issues.

In the future, you should direct correspondence to the office of Mr. Moore. We wish you the best with your appeals.

Sincerely,

Matt Kelley
Case Coordinator

CC: Roland Moore

Benjamin N. Cardozo School of Law, Yeshiva University

: 00287

RONALD JEFFERY PRIBLE,                    35st DISTRICT COURT

                                                    OF

        CAUSE NO. 921126-A        HARRIS COUNTY, TEXAS

        I FILE THIS MOTION PRO-SE ASKING JUDGE ELLIS TO
SUBPOENA SUPERVISOR OF MAIL ROOM AT POLUNSKY UNIT
PRISON TO HIS COURT, ALONG WITH LETTER MAIL ROOM
WITH HELD OF MINE. FOR PURPOSE OF HIM TO HOLD MAIL ROOM
SUPERVISOR IN CONTEMPT OF COURT FOR ABUSEING HIS
AUTHORITY AND DETERING (STOPPING) ME FROM PROSUEIN.
MY APPEAL PROCESS. LETTER EXPLAINING BASES OF MOTIO
ENCLOSED. THIS IS MY ONLY COPY OF STEP 1 GRIEVANC
FORM AND DRC RESPONSE.


                        THANK YOU

                        RONALD J. PRIBLE SR.


                                        : 00288

JUDGE ELLIS,

JUNE 12th, 2006 I WROTE A LETTER TO WARD LARKIN ASKING HIM TO INQUIRE IF ROLAND MOORE SPOKE TO THE INMATE IN FEDERAL PRISON. TWO WEEKS LATER JUNE 26th A WOMAN FROM MAILROOM BRING ME A FORM WHICH SAYS NO INMATE TO INMATE CORRESPONDENCE VIA THIRD PARTY. I ASKED THE WOMAN TO READ THAT LETTER AND TELL ME WHAT I DID WRONG. SHE READ LETTER AND SAID SHE SEEN NOTHING WRONG BUT IT OVER HER HEAD. SHE TOLD ME I COULD SIGN FORM AND APPEAL TO DRC (DIRECTOR'S REVIEW COMMITTEE) I ALREADY KNEW WHAT WAS GOING ON THE MAIL ROOM HERE HAS BEEN DOING ALL KINDA CRAZY THINGS IN REGARDS TO MAIL HERE. I WROTE A LETTER TO WARD LARKIN SENT HIM MY COPY OF FORM (YELLOW COPY) AND EXPLAINED TO HIM WHAT MAILROOM HAD DONE I ASK HIM IN LETTER TO DO A PROPER MOTION TO YOU ASKING YOU EXACTLY WHAT I'M ASKING YOU IN THIS MOTION, (I WAS DETAILED) I NEVER GOT A RESPONSE TO THIS LETTER FROM WARD LARKIN. JULY 25th I MET MR. LARKIN FOR VISIT HERE AT POLUNSKY. HE NEVER RECIEVED MY LETTER OR YELLOW FORM. (MY ONLY COPY) SO THAT TELLS ME I CAN NOT EVEN SEND THIS GRIEVAN FORM OR DRC RESPONSE OUT AND TRY TO GET THEM COPIED BECAUSE THERE SUBJECT TO DISAPPEAR. AS YOU CAN SEE BY DRC RESPONSE THEY ARE TELLING ME I CAN NOT GRIEVE THE MAILROOM. WHY NOT THERE A PART OF THIS PRISON EMPLOYED BY T.D.C.? WHO ARE THEY ACCOUNTABLE TO THEN? HOW CAN THEY DO WHAT THEY WANT WITHOUT NO ONE TO MONITOR THEM? LOOK AT THIS RULE THEY CITE BP-03.91 IF YOU READ THIS RULE IT HAS NO REFERENCE TO ME AND MY LETTER WHAT SO EVER. I'M NOT SPEAKING TO THIS INMATE IN FEDERAL PRISON IN NO WAY THROUGH MR. LARKIN. (IN FACT IT OF THE UTMOST IMPORTANCE I DO NOT DO ANYTHING IN THE WAY OF GIVING SOME ONE A OPPERTUNITY TO SAY I INFLUENCED HIM TO SAY WHA HE IS IN ANY WAY) I AM TRYING TO STOP THIS PROBLEM

SO IT DOES↓HAPPEN AGAIN IN FUTURE. I AM HOPEING
**NOT**
THIS INMATE WILL GIVE A AFFIDAVITE SOME TIME SOON.
(I THOUGHT I ALREADY HAVE ONE BY NOW!) I DO NOT WANT
THESE PEOPLE TO STOP IT FROM GOING OUT BY USEING THIS
RULE BP-03.91 WHICH DOES NOT APPLY. I PLAN OWN SENDING
COPIES TO SOURCES SUCH AS INNOCENT PROJECTS, ETC… TO
HELP ME. (I HAVE NO TRUST IN ROLAND MOORE) I AM NOT
TRYING TO BE A VICTIM OF THIS MAIL ROOM ABUSIVE
USE OF AUTHORITY AND DETER MY APPEAL PROCESS ANY MORE
THAN THEY HAVE. READ THE LETTER MAILROOM DID NOT
ALLOW OUT UNDER THIS RULE IT IN NO WAY IS A THREAT
TO SECURITY. (IT DOES NOT COME ANY WHERE **IN** THE BALL
PARK OF THERE RULE THEY CITE.) BECAUSE I MENTION
THE WORDS INMATE IN FEDERAL PRISON SOME PERSON
IN THE MAILROOM USES THIS RULE TO STOP MY MAIL
(THAT CRAZY) I CAN ONLY IMAGINE WHAT THEY WILL
SAY WHEN I SEND A COPY OF HIS AFFIDAVIT OUT TO
SOME ONE. (PROBABLY SAME RULE THEY WILL USE, FROM
WHAT I UNDERSTAND THERE USEING IT TO STOP OTHER MAIL
WHERE THIS DOES NOT APPLY IN ANY WAY) SO PLEASE AT THE
VERY LEAST LET THE MAIL ROOM KNOW THEY CAN NOT
DO THESE THINGS THAT DETER A PERSON FROM THERE
APPEAL PROCESS WITH OUT BEING LIABLE TO SOMEONE.
IF YOU SUBPOENA THE SUPERVISOR AND THAT LETTER HE
GONNA FEEL LIKE A IDIOT AND I GUARANTEE IT WILL
STOP WHAT SOME PERSON IN THAT MAIL ROOM DOING IN
THE WAY OF ABUSEING IT POWER TO DETER PEOPLE IN
REGARDS TO THERE LEGAL PROCESS. THIS IS MY **PRAYER**
YOU WILL GRANT THIS MOTION.

THANKS!

GOD BLESS!

RONALD J. PRIBLE SR



**Texas Department of Criminal Justice**

# STEP 1

## OFFENDER
## GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: _____

Date Received: _____

Date Due: _____

Grievance Code: _____

Investigator ID #: _____

Extension Date: _____

Date Retd to Offender: _____

**Offender Name:** RONALD PRIBLE        **TDCJ #** 999433

**Unit:** POLUNSKY        **Housing Assignment:** 12 BF 73

**Unit where incident occurred:** POLUNSKY

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? WOMEN FROM MAIL ROOM (OLDER, VERY NICE) When? JUNE 26th 2006

What was their response? SHE SAID SHE SEEN NOTHING WRONG WITH LETTER, IT OVER HER HEAD

What action was taken? I APPEALED TO DRC (DIRECTOR'S REVIEW COMMITTEE)

---

State your grievance in the space provided. Please state who, what, when, where and disciplinary case number if appropriate.

JUNE 26th 2006 IN THE EARLY MORNING HOURS A WOMAN FROM THE MAIL ROOM CAME TO MY DOOR. SHE GAVE ME A FORM AND EXPLAIND THAT FOR WHAT EVER REASON THERE SOMETHING NOT RIGHT WITH THIS LETTER THEY WILL NOT SEND IT OUT. I ASKED TO SEE IT, SHE LET ME READ IT, I ASKED HER TO READ IT, SHE DID. SHE SAID SHE SEEN NOTHING WRONG WITH IT BUT IT OVER HER HEAD SHE EXPLAINED I COULD APPEAL TO DRC. I DID, THE FORM THAT SHE GAVE ME NO INMATE TO INMATE CORRESPONDENCE VIA THIRD PARTY, PLEASE GET THIS LETTER AND REVIEW IT, IT CLEAR AS CAN BE THERE NOTHING IN THERE THAT LETTER GOING TO ANOTHER INMATE (LETTER, MESSAGE, ETC...) IT GOING TO A ANTI-DEATH PENALTY ACTIVIST WARD LARKIN WHO HELPS PEOPLE WITH THERE LEGAL WORK, THE ONLY THING IT SAYS IN WAY OF ANOTHER INMATE IS TO SEE IF MY ATTORNEY HAS GOT A AFFIDAVIT FROM A INMATE IN FEDERAL PRISON YET FOR PURPOSE OF HAVING A HEARING IN COURT (MY APPEAL PROCESS) MY ATTORNEY WILL NOT RESPOND TO MY LETTERS (WRIT ATTORNEY AND KEEPS SAYING HE WILL GET A AFFIDAVIT FROM THIS GUY BUT DOES NOT, SO THIS GUY (WARD LARKIN) HELPING ME GET THIS INFORMATION AND FILE PAPERWORK WITH COURTS TO GET A HEARING. READ THE LETTER IT OBVIOUS AS NIGHT AND DAY THAT ALL THAT BEING DISCUSS IS HIM HELPING ME WITH MY LEGAL WORK, IN NO WAY AM I SENDING ANYTHING TO ANOTHER INMATE THROUGH ANOTHER PERSON (IN FACT IT OF THE UTMOST IMPORTANCE I DO NOT SPEAK WITH THIS INMATE SO NO ONE THINKS I PUT HIM UP TO SAYING WHAT HE IS) I GOT THE DRC RESPONSE IT SAYS OFFENDERS MAY NOT MAIL CORRESPOND TO ANOTHER OFFENDER BY WAY OF THIRD PARTY THAT NOT THE CASE HERE SO THAT DOES NOT APPLY. (READ LETTER) HOW CAN THEY (THE MAIL ROOM) TELL ME I CAN NOT ASK SOMEONE TO INQUIRE AND SEE IF MY ATTORNEY SPOKE TO SOMEONE IN FEDERAL PRISON. THIS IS ABUSE OF POWER AND DETERING MY APPEAL PROCESS. WHO EVER IN THAT MAIL ROOM HAS MIS-APPLIED THE RULE HERE. (READ LETTER) THE LEGAL PROCESS ON APPEAL TOUGH ENOUGH WHY WOULD YOU MAKE IT TOUGHER BY NOT ALLOWING A PERSON TO CORRESPOND WITH SOMEONE WILLING

I-127 Front (Revised 9-1-2001)        **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**        (OVER)

00291

TO ASSIST WITH APPELLIC PROCESS, (WHEN NO RULE HAS BEEN VIOLATED (WHAT SO EVER)
RULE BP-O. WHY AM I
ASKING MR. LARKIN TO RELAY A MESSAGE, SAY HELLO, NOTHING IN THE FORM OF ME
CORRESPONDING WITH THIS INMATE, I AM SIMPLY ASKING HIM TO VERIFY IF MY ATTORNEY
ROLAND MOORE SPOKE WITH INMATE IN FEDERAL PRISON AS TO A AFFIDAVIT (READ LETTER)
THE MAIL ROOM WILL NOT EVEN GIVE MY ENVELOPE BACK WITH POSTAGE ON IT EVEN
THOUGH IT NOT SEALED, IT JUST WRONG TO DO THIS TO ME!

THANKS FOR TAKING TIME TO READ<br>
RONALD T. PRIBLE JR

---

**Action Requested to resolve your Complaint.**

MAINLY TO NOT STOP ME FROM MY APPEAL PROCESS BY STOPPING ME FROM CORRESPONDING
WITH A PERSON WHO ASSISTING ME WHEN I DID NOTHING WRONG AS LETTER CLEARLY
SHOWS, PLEASE GIVE ME BACK MY ENVELOPE, MY POSTAGE ON THE SELF ADDRESSED
ENVELOPE IS STILL GOOD AND LETTER UNSEALED, WHY WAIST MY POSTAGE I CAN STILL
USE ENVELOPE?

**Offender Signature:** _____ **Date:** 07-26-06

**Grievance Response:**




**Signature Authority:** _____ **Date:** _____

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:** *Resubmit this form when corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days.*
☐ 3. Originals not submitted.*
☐ 4. Inappropriate/Excessive attachments.*
☐ 5. No documented attempt at informal resolution.*
☐ 6. No requested relief is stated.*
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☒ 8. The issue presented is not grievable.
☐ 9. Vacant – discontinued 9-1-00
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

AUG 0 3 2006

**UGI Signature:** _____
**I-127 Back** (Revised 9-1-2001)

**OFFICE USE ONLY**

Initial Submission     UGI Initials: _____
Grievance #: 2006209270
Screening Criteria Used: 359
Date Recd from Offender: AUG 0 3 2006
Date Returned to Offender: AUG 0 3 2006

2nd Submission     UGI Initials: _____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

3rd Submission     UGI Initials: _____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

: 00292

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## CORRECTIONAL INSTITUTIONS DIVISION

### DIRECTOR'S REVIEW COMMITTEE
### DECISION FORM
### OUTGOING CORRESPONDENCE

Offender:  Pribble, Ronald                TDCJ-ID#:  999433

Unit:  Polunsky  054                Date:  07-14-06

The Director's Review Committee (DRC) has rendered a decision regarding your appeal of the Unit decision not to allow you to mail correspondence and/or item(s) in contradiction with BP-03.91, Uniform Offender Correspondence Rules.

In accordance with BP-03.91, all offender mail must be sent and received through duly authorized channels; offenders may not mail correspondence to another offender by way of a third party. Be advised that parties who repeatedly relay information from an offender to another offender through the mail are subject to being placed on the negative mail list and lose their correspondence privileges.

The envelope is addressed to:

Ward, Larkin
15327 Pebble Bend Dr.
Houston, TX
77068

It is the decision of the DRC to **uphold** the Unit rejection of the above referenced correspondence; you will not be allowed to mail the correspondence and/or item(s) intended for another offender.

DRC/JR

copy:  Unit Mailroom
Ward, Larkin
file

RECIEVED
7-19-06

00293

IN THE **351**ST DISTRICT
COURT
OF
HARRIS COUNTY, TEX

STATE OF TEXAS        CAUSE NO. 921126-A
HARRIS, COUNTY

( HONORABLE MARK BEN
ELLIS )

THIS IS PART OF MOTION I SENT TO COURT JULY 24,
2006. I DID NOT HAVE THIS DOCUMENT THEN BUT **FEEL**
IT SHOULD BE **INCLUDED**. ( I JUST RECIEVED IT ) IT FURTHER
SUPPORT GROUNDS FOR MOTION PREVIOUSLY FILED. I ASK FOR DNA
RETEST WITH PURPOSE TO SHOW IT NOT MY DNA AS WATSON
ALLEGES IS MINE TO JURY, HEARING IN OPEN COURT AS TO
WALKER INFORMATION HE HAS TO MAKE KNOWN OF PROSECUTIONAL
MISCONDUCT, AND GET RID OF ROLAND MOORE AS MY COUNCEL ON
THESE ISSUES AND APPOINT ADEQUATE COUNCEL IN REGARDS TO
SUCH.

THANK YOU
RONALD J. PRIBLE SR.

JUDGE ELLIS,

I DID NOT HAVE THIS ENCLOSED DOCUMENT IN MY POSSESSION WHEN I FILED MY PRO SE MOTION WITH COURT. (I SENT OF MOTION July 24, 2006 TO COURT) IT JUST FURTHER SUPPORT WHAT I SHOWED IN LETTER SUBMITTED WITH MOTION AND I FILL IT SHOULD BE ADDED TO MOTION. THIS WAS THE E-MAIL FROM MY SISTER WHICH LEAD TO MR. MOORE WRITING ME THE LETTER I ENCLOSED WITH MOTION. ROLAND MOORE CLAIM "MOST OF THE WRIT IS ABOUT WATSON'S TESTIMONY". THIS IS WRONG, TWO PAGE (2 PAGES) OF THE APPLICATION FOR WRIT OF HABEAS CORPUS IS ABOUT WATSON'S TESTIMONY. ELIZABETH JOHNSON DID PROVIDE AN AFFIDAVIT BUT ONLY THREE PAGES OF THAT AFFIDAVIT ARE ABOUT TESTIMONY IN MY TRIAL. HE GOES ON TO SAY IN E-MAIL TO MY SISTER IF YOU DENY THE MOTION THEN HE WILL FILE A OPEN RECORDS REQUEST AND GET IT ANYWAY. AS FAR AS I KNOW (IN REGARDS TO TEXAS PUBLIC INFORMATION ACT) ROLAND MOORE IS NOT GOING TO BE ALLOWED TO RETEST DNA SAMPLES WITH AN OPEN RECORDS REQUEST. THE TEXAS PUBLIC INFORMATION ACT ALLOWS INDIVIDUALS TO INSPECT PUBLIC INFORMATION OR TO OBTAIN COPIES OF PUBLIC INFORMATION. THE TEXAS PUBLIC INFORMATION ACT DOES NOT ALLOW INDIVIDUALS TO TEST EVIDENCE, OR TO DESTROY EVIDENCE. A DNA TEST WILL REQUIRE DESTRUCTION OF A SMALL PART OF THE ORIGINAL DNA SAMPLE. HOWEVER IF ROLAND MOORE THINKS HE CAN GET DNA RETEST RESULTS WITH AN OPEN RECORDS REQUEST THEN HE SHOULD FILE THE OPEN RECORDS REQUEST NOW. WHY WAIT FOR THE COURT TO RULE ON THE MOTION FOR DNA? IF HE THINKS THAT HE CAN GET THE SAME RESULT WITH A TEXAS PUBLIC INFORMATION ACT REQUEST THEN HE SHOULD DO THAT. ACCEPT FOR SPECIAL REASONS TEXAS PUBLIC INFORMATION ACT REQUEST MUST BE HANDLED PROMPTLY AND USUALLY WITHIN NO MOORE THAN TWO WEEKS. (ONCE AGAIN JUDGE I WANT DNA TESTED FOR PURPOSE TO SHOW IT NOT MY DNA WATSON ALLEGES IS MIN TO THE JURY) ROLAND MOORE CLAIM THAT HE IS "DOING EVERYTHING POSSIBLE TO KEEP ME ALIVE". ROLAND MOORE DUTY AS AN ATTORNEY IS TO REPRESENT MY INTEREST

IN COURT ZEALOUSLY, MY INTERESTS ARE TO HAVE MY CON-
VICTION OVERTURNED. (NOT SIMPLY KEEP ME ALIVE) MR. MOORE
IS NOT DOING EVERYTHING POSSIBLE. HE WROTE WALKER
A LETTER BUT HE DID NOT GO SEE HIM. HE DID NOT
HIRE AN INVESTIGATOR TO SEE HIM, NOW HE SAYS NO
ONE WILL BELIEVE HIM WHICH IS A TOTAL CONTRADI-
CTION TO WHAT HE ONCE SAID. (THIS CAN IN NO WAY
BE ASSUMED. IF IT WAS MR. MOORE LIFE I DON'T THINK
HE MAKE THAT ASSUMPTION SO HOW CAN HE DO IT WITH MINE
SO PLEASE TEST DNA WITH INTENT TO SHOW IT NOT
MINE, HAVE A HEARING IN OPEN COURT AS TO WALKER
INFORMATION HE HAS TO MAKE KNOWN OF SIEGLER PROSE-
CUTIONAL MISCONDUCT, AND GET RID OF ROLAND MOORE
AS MY COUNCEL ON THESE ISSUES AND APPOINT TERRY
GAISER (OR SOMEONE AS EQUAL. HOW ABOUT SOMEONE WHO
WON A CAPITAL MURDER TRIAL, SIEGLER WON 18 OR MORE?
HOW ABOUT A EQUAL, IT COMMON SENSE YOU DON'T ENTER
A YUGO IN A MONSTER TRUCK EVENT) IT IS MY PRAYER
YOU WILL GRANT THIS MOTION.

THANK YOU
RONALD J. PRIBLE JR.

| | This message has been scanned for known viruses. |
|---|---|
| **From:** | roland@hal-pc.org |
| **To:** | angelabeacham@aim.com |
| **Subject:** | RE: JEFF PRIBLE |
| **Date:** | Sun, 9 Jul 2006 6:22 PM |

The people at the Capital Resource project in Alabama are going to talk to Walker.   Bear in mind that he has refused
to reply to my letters to him.  Furthermore, even if I were in a position to dictate the ideal affidavit for the ideal fantasy inmate from Jeff's federal prison days, I have a very hard time imagining what that testimony might be that would help Jeff.  Other than "Kelly Sigler told me what to say about Jeff's fictional confession that he never said and I wouldn't come repeat it in Houston."

At a hearing where this dream witness would testify, Ms. Sigler would say that he was lying and that would be the end of that. No one would believe it.  The problem with the case is that Beckhom is not going to retract what he said. It would mean 5 extra years on an aggravated perjury charge for him.

RE:  Watson.  Most of the writ is about Watson's testimony.  I have affidavits from Elizabeth Johnson, the famed DNA expert to go with it.  That is already on file.  As I have tried to explain before, all these issues were gone
over at trial.  Even the State's expert admitted that there was no "window of time" determined by the DNA found.  The experts at trial on both sides all agreed with each other, yet not one of them was aware of the actual scientific learning on the subject.  If the matter had not been completely litigated by some very competent lawyers,  there might be some hope here.  A writ has to be about things that the trial did not consider, to put it in as simple terms as possible.  Not very much about the DNA is new, but what there is I already put it in the Writ.

I have spoken with the DA in charge of your brother's case.  She has been too busy to go into court on the DNA motion.  Frankly, I am glad.
I guess I have not made it plain enough that I am trying to stall any further steps by having the DNA pending.  As I told her,
If the Judge refuses the DNA motion, then I will go ahead and file an Open Records request and get it anyway.
I am sure Judge Ellis understands this.  The main point is that it takes up more time. You all want everything done
Immediately?  Then that just hastens Jeff's execution date.  If I seem to be foot-dragging, I most definitely am.

And again, the dream outcome of the DNA test, and the only one that would matter, since Jeff admitted having
sex with the dead woman, is that somebody else's DNA besides his and her husbands would be found.  That would have been helpful at trial, but she could have had sex with anybody else at the party at about the time Jeff was there earlier, and we still wouldn't be getting anywhere. Our claim that the DNA could have been deposited at any time cuts both ways.

I am sure it is difficult for someone who is not a lawyer to understand the law in this area.  It is very difficult for the smartest lawyers to comprehend it.  I struggle with it because it is constantly being made more complicated by courts and legislatures who do not want to spend time and public money on writ cases.  Nonetheless,  I do not appreciate the tone of disparagement that began at the time that what's-his-name got into the act. I do not know who told you that "everyone is afraid to call Kelly Sigler's hand" but it is false as to yours truly, and it is false as regards his trial lawyers.  I do not know anyone who is practicing in this area who fits that description.
 I am doing everything possible to keep Jeff alive.  It is not my job to cheerlead.  I do not make judgments about my client's guilt.  It doesn't help if I do.  However, I do everything legally possible to help them.  There are other professionals who are much better at moral support than I.
That is everything I have to say to Jeff and you all.  I would prefer that you not go telling people that I am just trying to stall matters, because it might get back to the DA.  Repeatedly telling these things to Jeff over and over again seems to me at this point to be a waste of everybody's time.

That is simply all there is to say about the case. If he had has rotten lawyers at trial, I would be having a field day. They were in fact amongst the best, and that leaves any Writ lawyer with a whole lot less to do.
 If you have some other evidence that he is innocent, other than your faith in him as his sister, I would get the most delighted person of all to be able to use it.
It is also not my practice to delude my clients or their families. If you find that frustrating, it is a cost I pay for practicing law honestly.   There are no other steps to be taken. If there were, I would have taken them.
Finally, if you and your family are dissatisfied with the foregoing, you are certainly welcome to retain counsel to substitute for me.

Sincerely,
Roland Moore III

---

**From:** angelabeacham@aim.com [mailto:angelabeacham@aim.com]
**Sent:** Sunday, July 09, 2006 1:05 PM
**To:** roland@hal-pc.org
**Subject:** JEFF PRIBLE

Roland -

I just wanted to touch base with you and see if you have anything regarding my brother's case? Back in May when I emailed you, you were going to send someone to talk with Walker, has this been done? Has the DNA been retested? If not, when will it be retested? Also, Jeff had written you regarding Watson's testimony during trial. You and I both know that Watson's testimony was BAD SCIENCE. There is no scientific basis for his opinion and should not have been allowed as testmony. Are you pursuing this matter regarding Watson or any other matters regarding my brother's case?  We all know that time is critical at this point. Jeff's time is running out.My family believes that possibly, an evidentary hearing should been scheduled regarding the three matters above (Walker, DNA Retest and Watson). Is that possible?

If you are no longer going to pursue Jeff's case in his best interest, please let me know. I need someone on our side. Wether you beleive it or not, Jeff is innocent of the murder's. He robbed the banks but he did not murder Steve and Nelda. There are several things that shows Jeff is innocent as well as the DA's wrong doing during trial.It is very tragic what happen regarding the kids and that family, however, an innocent person should not be put to death just to simplify a case. My family is suffering as well knowing that Jeff is innocent. Kelley Siegler is wrong in this case as well as many other cases that she has tried. Everyone seems to be afraid to call her hand on her wrong doings.

Jeff has written you many letters and you never respond to his letters. I understand why he feels that you don't care and that you are not interested in representing him or pursuing his case. I am sure that you have your reasons for not responding to his letters. I would like for you to take a moment, step back and put yourself in his shoes. I would like to ask you to please write my brother and let him know what is going on with his case. This is not my life or yours that is hanging by a string, it is his. Walker, the DNA or the Watson issue could be one of the pieces to the puzzle deciding life or death for Jeff.

What other steps will be taken? What will go on from here regarding Jeff's case? Please be honest in all of your answers wether the honest answer is a good or bad thing. I want the truth from you, especially regarding wether you are going to pursue my brother's case to show that he is innocent of the murders or are you going to disregard his case and in the back of your mind always wonder if he was innocent and what could have been. Because time is running out for Jeff  and life is so short, at this point I have to be persistent. If you want to disregard his case, let me know, maybe you can then point me in the direction to possible find someone that would want to pursue his case. I know that a lot of the death row inmates are guilty, however, I also know that there are some, like Jeff,  that are innocent and are dying everyday for crimes they did not commit. After

they are gone, there innocense is proven, however it is to late.

Please let me know what your plans are regarding Jeff.

Thanks
The Prible Family

_____

**Check Out the new free AIM(R) Mail** -- 2 GB of storage and industry-leading spam and email virus protection.

RONALD J. PRIDGE

IN THE 351ST DIST. CO
US                                    OF

STATE OF TEXAS    CAUSE NO. 921126-A    HARRIS COUNTY, TEX
HARRIS, COUNTY

   I FILE THIS MOTION PRO-SE ASKING JUDGE
TO INVESTIGATE WHAT IS PRESENTED IN MOTION TO
BE TRUE ARE FALSE, IF THE JUDGE FINDS INFORMATION
NOT TO BE CORRECT TO GET RID OF ROLAND MOORE AND
APPOINT NEW **COUNSEL**.

                    RONALD J. PRIDGE JR

   PLEASE FORWARD TO JUDGE AS SOON AS
   POSSIBLE!

        THANK YOU!

00300

JUDGE ELLIS,

I GOT THIS LETTER FROM MY ATTORNEY SAYING YOU DENIED MY DNA MOTION AUGUST 11, 2006. I HAD SOME ONE CHECK MY FILE TO SEE IF IT TRUE SINCE HE TELLS ME SO MANY THINGS THAT ARE NOT CORRECT. WELL THIS IS WHAT IN MY FILE, (ENCLOSED LETTER, AND SOME ONE ELSE MOTION DENIED) IT NOT MY NAME OR CAUSE #. JUDGE IF YOU DID NOT DENY MY MOTION PLEASE EXCEPT THIS IS ANOTHER REASON TO GET RID OF MR. MOORE REPRESENTING ME. ALSO ENCLOSED IS A COPY OF A E-MAIL TO MY SIS WHERE MR. MOORE SAYS THE CAPITAL RESOURCE PROJECT IN ALABAMA GONE GO SPEAK WITH WALKER JUDGE THERE IS NO CAPITAL RESOURCE PROJECT IN ALABAMA IT CLOSED DOWN YEARS AGO. (MR MOORE SHOULD KNOW THIS) PLUS WALKER BEEN MOVED TO DALLAS SO I DON'T THINK THERE GONNA TALK TO HIM ANY WAY. JUDGE PLEASE LOOK INTO WHAT GOING ON HERE THIS IS SO WRONG IT IS CRIMINAL.

RONALD J. PRIBLE JR.

I WRITTEN MR. MOORE SAME TIME I SENT THIS OUT TO ONCE AGAIN LET HIM KNOW THIS IS NOT RIGHT. ENOUGH IS ENOUGH ! THERE NO EXCUSE FOR THIS OVER AND OVER AGAIN !

*(handwritten)* ← THAT NOT MY CAUSE NO.

CAUSE NO. 909,843

THE STATE OF TEXAS §
§
VERSUS §
§
RAY MCARTHUR FREENEY §
§

IN THE 337th DISTRICT

COURT OF HARRIS COUNTY,

TEXAS

## ORDER ON DEFENDANT'S MOTION FOR DNA TESTING
## PURSUANT TO CHAPTER 64

*(handwritten)* THAT NOT ME →

The Defendant's Motion for Post-Conviction DNA Testing filed on the _11_ day of _August_ , 2006 is hereby:

_____ **GRANTED** _____ **DENIED**

Signed on this _11_ day of _August_ 2006.

PRESIDING JUDGE
351st District Court
Harris County, Texas

: 00302

# ROLAND BRICE MOORE III, P.C.
## ATTORNEY-AT-LAW
### The Great Southwest Building
### 1314 Texas Ave. Suite 1705
### Houston, Texas 77002

Office: 713  229-8500

Fax: 713 229-8989

Board Certified in Criminal Law        Texas Board of Legal Specialization

August 14, 2006

Mr. Ronald Prible TDC# 999433
Polunsky Unit
3872 FM 650S
Livingston, Texas 77351

Re:  Your DNA Motion

Dear Mr. Prible,

I regret to inform you that your DNA Retest Motion was denied by Judge Ellis on Friday, August 11, 2006.  I have filed a Notice of Appeal of his ruling as I said I would.

I was startled to see a copy of my email to your sister that predicted this result in the State's Motion to Deny the Request for DNA Testing. It would help me if the confidential communications that I have with you and your family are not filed with the Court for use by the State.  Please do not write the Clerk or the Judge again about any matter whatsoever.  If you feel the need to complain about me, do not do it to the Court. You shot yourself in the foot.

I discussed the issue of your DNA retest with Mr. Gaiser, Mr. Wendt, and Mr. Burkholder.  None of us could think of a plausible way to get around the State's counter-arguments.

One argument was that you had admitted having sexual contact with Nilda.  That is interpreted to mean that you did not contest the issue of the identity of the DNA sample. This was not done at trial, nor was it challenged on appeal, nor in the Writ.  Your

: 00303

This message has been scanned for known viruses.

| | |
|---|---|
| **From:** | roland@hal-pc.org |
| **To:** | angelabeacham@aim.com |
| **Subject:** | RE: JEFF PRIBLE |
| **Date:** | Sun, 9 Jul 2006 6:22 PM |



IT CLOSED DOWN
YEARS AGO

The people at the Capital Resource project in Alabama are going to talk to Walker.   Bear in mind that he has refused
to reply to my letters to him.  Furthermore, even if I were in a position to dictate the ideal affidavit for the ideal fantasy inmate from Jeff's federal prison days, I have a very hard time imagining what that testimony might be that would help Jeff.  Other than "Kelly Sigler told me what to say about Jeff's fictional confession that he never said and I wouldn't come repeat it in Houston."

At a hearing where this dream witness would testify, Ms. Sigler would say that he was lying and that would be the end of that. No one would believe it.  The problem with the case is that Beckhom is not going to retract what he said. It would mean 5 extra years on an aggravated perjury charge for him.

RE:  Watson.  Most of the writ is about Watson's testimony.  I have affidavits from Elizabeth Johnson, the famed DNA expert to go with it.  That is already on file.  As I have tried to explain before, all these issues were gone
over at trial.  Even the State's expert admitted that there was no "window of time" determined by the DNA found.  The experts at trial on both sides all agreed with each other, yet not one of them was aware of the actual scientific learning on the subject.  If the matter had not been completely litigated by some very competent lawyers,  there might be some hope here.  A writ has to be about things that the trial did not consider, to put it in as simple terms as possible.  Not very much about the DNA is new, but what there is I already put it in the Writ.

I have spoken with the DA in charge of your brother's case.  She has been too busy to go into court on the DNA motion.  Frankly, I am glad.
I guess I have not made it plain enough that I am trying to stall any further steps by having the DNA pending.  As I told her,
If the Judge refuses the DNA motion, then I will go ahead and file an Open Records request and get it anyway.
I am sure Judge Ellis understands this.  The main point is that it takes up more time. You all want everything done
Immediately?  Then that just hastens Jeff's execution date.  If I seem to be foot-dragging, I most definitely am.

And again, the dream outcome of the DNA test, and the only one that would matter, since Jeff admitted having
sex with the dead woman, is that somebody else's DNA besides his and her husbands would be found.  That would have been helpful at trial, but she could have had sex with anybody else at the party at about the time Jeff was there earlier, and we still wouldn't be getting anywhere. Our claim that the DNA could have been deposited at any time cuts both ways.

I am sure it is difficult for someone who is not a lawyer to understand the law in this area.  It is very difficult for the smartest lawyers to comprehend it. I struggle with it because it is constantly being made more complicated by courts and legislatures who do not want to spend time and public money on writ cases. Nonetheless,  I do not appreciate the tone of disparagement that began at the time that what's-his-name got into the act. I do not know who told you that "everyone is afraid to call Kelly Sigler's hand" but it is false as to yours truly, and it is false as regards his trial lawyers.  I do not know anyone who is practicing in this area who fits that description.
I am doing everything possible to keep Jeff alive.  It is not my job to cheerlead. I do not make judgments about my client's guilt.  It doesn't help if I do.  However, I do everything legally possible to help them.  There are other professionals who are much better at moral support than I.
That is everything I have to say to Jeff and you all.  I would prefer that you not go telling people that I am just trying to stall matters, because it might get back to the DA.  Repeatedly telling these things to Jeff over and over again seems to me at this point to be a waste of everybody's time.

That is simply all there is to say about the case. If he had has rotten lawyers at trial, I would be having a field day. They were in fact amongst the best, and that leaves any Writ lawyer with a whole lot less to do.
 If you have some other evidence that he is innocent, other than your faith in him as his sister, I would get the most delighted person of all to be able to use it.
It is also not my practice to delude my clients or their families.  If you find that frustrating, it is a cost I pay for practicing law honestly.   There are no other steps to be taken.  If there were, I would have taken them.
Finally, if you and your family are dissatisfied with the foregoing, you are certainly welcome to retain counsel to substitute for me.

Sincerely,
Roland Moore III

---

**From:** angelabeacham@aim.com [mailto:angelabeacham@aim.com]
**Sent:** Sunday, July 09, 2006 1:05 PM
**To:** roland@hal-pc.org
**Subject:** JEFF PRIBLE

Roland -

I just wanted to touch base with you and see if you have anything regarding my brother's case? Back in May when I emailed you, you were going to send someone to talk with Walker, has this been done? Has the DNA been retested? If not, when will it be retested? Also, Jeff had written you regarding Watson's testimony during trial. You and I both know that Watson's testimony was BAD SCIENCE. There is no scientific basis for his opinion and should not have been allowed as testmony. Are you pursuing this matter regarding Watson or any other matters regarding my brother's case?  We all know that time is critical at this point. Jeff's time is running out. My family believes that possibly, an evidentary hearing should been scheduled regarding the three matters above (Walker, DNA Retest and Watson). Is that possible?

If you are no longer going to pursue Jeff's case in his best interest, please let me know. I need someone on our side. Wether you believe it or not, Jeff is innocent of the murder's. He robbed the banks but he did not murder Steve and Nelda. There are several things that shows Jeff is innocent as well as the DA's wrong doing during trial. It is very tragic what happen regarding the kids and that family, however, an innocent person should not be put to death just to simplify a case. My family is suffering as well knowing that Jeff is innocent. Kelley Siegler is wrong in this case as well as many other cases that she has tried. Everyone seems to be afraid to call her hand on her wrong doings.

Jeff has written you many letters and you never respond to his letters. I understand why he feels that you don't care and that you are not interested in representing him or pursuing his case. I am sure that you have your reasons for not responding to his letters. I would like for you to take a moment, step back and put yourself in his shoes. I would like to ask you to please write my brother and let him know what is going on with his case. This is not my life or yours that is hanging by a string, it is his. Walker, the DNA or the Watson issue could be one of the pieces to the puzzle deciding life or death for Jeff.

What other steps will be taken? What will go on from here regarding Jeff's case? Please be honest in all of your answers wether the honest answer is a good or bad thing. I want the truth from you, especially regarding wether you are going to pursue my brother's case to show that he is innocent of the murders or are you going to disregard his case and in the back of your mind always wonder if he was innocent and what could have been. Because time is running out for Jeff  and life is so short, at this point I have to be persistent. If you want to disregard his case, let me know, maybe you can then point me in the direction to possible find someone that would want to pursue his case. I know that a lot of the death row inmates are guilty, however, I also know that there are some, like Jeff,  that are innocent and are dying everyday for crimes they did not commit. After

they are gone, there innocense is proven, however it is to late.

Please let me know what your plans are regarding Jeff.

Thanks
The Prible Family

_____

Check Out the new free AIM(R) Mail -- 2 GB of storage and industry-leading spam and email virus protection.

PCW

Puble

35kt

JUDGE ELLIS,

921/26 A

I THINK YOU SHOULD SEE THIS. IT
WAS SENT TO ME FROM A MAN WHO
I PAID NO MONEY HE HELPED ME OUT
OF THE KINDNESS OF HIS HEART. HE
SENT THIS TO ME AND SAID YOUR ATTOR-
NEY SHOULD OF SENT YOU A COPY OF
THIS **ALREADY.** (MEANING MOORE) NO, HE
HAS NOT! I DON'T KNOW HOW THIS COULD
NOT BE SENT TO ME ARE IN MY APPEAL.
(IT NEEDS TO BE IN MY APPEAL) I HAVE
NOT HAD A CHANCE TO SPEAK WITH THE
PERSON WHO SENT ME THE COPY OF THIS
AFFIDAVIT. IT WAS DONE IN MAY BUT
I JUST SEEN IT. IT STAMPED IN THE
COUNTY CLERK STAMP (CHARLES BACARISS
SO IT IN MY RECORD I'M SURE AS FOR
AS BEING FILED BUT I WANT IT TO
BE USED ON APPEAL TO SHOW JUST HOW
MUCH LIEING TAKEN PLACE HERE AND
CAN BE SHOWN. I ASKED MY ATTORNE
FOR TRIAL TRANSCRIPTS BUT THAT
DID NOT HAPPEN. YOU REMEMBER
WHEN DETECTIVE BROWN ( CURTIS
BROWN, HOMICIDE DETECTIVE = LEAD
DETECTIVE OF CASE) WAS OWN STAND
WAS PICTURES OF CRIME SCEN

I HOPE
TO SEE
HIM AT
VISIT.
IN THE
NEXT
FEW
WEEKS!

WAIL. IT OBVIOUS IT NOT THE VICTIM (STEVE HERRERA) BLOOD AND IS SOME ONE WHO HE STRUGGLED WITH. NOW ON THE STAND AT TRIAL MY ATTORNEY ASKED DETECTIVE BROWN. DID YOU GET SAMPLES OF THIS BLOOD? HE SAID NO WHEN ASKED WHY NOT? HE JUST SAID POOR DETECTIVE WORK (NOW THATS AS CRAZY AS CRAZY CAN BE!)

THERE GOT TO BE A RECORD OF THAT BLOOD BEING TESTED SOME WHERE RIGHT ALONG WITH THE SKIN UNDER STEVE FINGER NAILS. IF HE HIT THEM THEN BLOOD COULD BE OWN HIS HAND, (FOR SURE DNA) WHERE THESE RESULTS? (LET A OUTSIDE LAB TEST)

WHERE ARE THE SKIN SAMPLES FROM UNDER STEVE FINGER NAILS? WHO TESTED THAT? WHAT WAS THE RESULTS? WHY HAS NO ONE MENTIONED THAT? (LETS GET IT TESTED BY A OUT SIDE LAB) I BET THAT BLOOD OWN THAT WAIL AND THE SKIN UNDER STEVE FINGER NAILS MATCH! YOU KNOW THEY TOOK SAMPLES OF THAT BLOOD ON WALL

PROCEDURE EVERYONE WHO WAS AT HOUSE T... JUDGE IF YOU ... DO IT, WHIC... I DID F SUBPOENA ALL DNA RECORDS OF E AFTER ALL THIS T TESTING DONE IN A INTERA- GATION THIS CASE. (THAT MEANS TRYING TO GET M EVEN OTHER THAN ORCHID CELL TO THIS CRIM... THEY SA MARK) I BET YOU SEE HAS BEEN DID IT YOUR F WHERE THAT BLOOD IS TESTED ARE OWN A GAS CA AND NOT MINE OR STEVES. E TABOR SAI... HE GO LIED & THIS FOR WHAT IT IS! ES SHOES (TAL... ...Y SHOES) I KNEW THAT...

HE MIGHT
OF HAD →
IT TESTED
AND KNOWS
IT NOT MINE
OUR STEVES
BUT KNOWS IT
WILL SHOW
THIS FOR
WHAT IT
IS. THE
PROSECUTER
LIEING TO
CONVICT
SOMEONE FOR
A INVESTI-
GATION THEY
MESSED UP.
I JUST
THINK HE
LYING ABOUT
NOT GETTING
THE BLOOD
BECAUSE HE
LYING ABOUT
THE PICTURES

BLOOD OR STEVES. (EITHER HE LYING
OR REALLY STUPID) EITHER WAY HE
GOT NO BUSINESS BEING A HOMOCIDE
DETECTIVE. HOW CAN YOU JUST SAY
POOR DECTIVE WORK IN REGARDS TO
SOMETHING THAT SERIOUS, WHO TOOK
THOSE PICTURES OF ME NAKED THE
TOOTH FERRY? AND NOW DR. BENJAMIN
KNEW WATSON WAS LYING AND DID
NOT TELL. SIEGLER TOLD THE
JURY DURING MY TRIAL YOU KNOW
MR PRIBLE HAD A GUN HIDDEN ON
HIM WHEN HE ROBBED THOSE BANKS
LIE, AFTER LIE, AFTER LIE HOW
CAN THEY NOT GET IN TROUBLE
FOR LYING UNDER OATH. JUDGE I
AM AT MY WITS END, I WAKE UP
TO THIS TERRIBLE NIGHTMARE EVERY
DAY. I THOUGHT FOR SURE SIEGLER
WAS GONNA GO JAIL FOR DOING THIS
TO ME WHEN I FIRST GOT TO DEATH
ROW. I THOUGHT IT JUST A MATTER OF
TIME THE TRUTH WILL COME OUT
SHE GOT HER OWN DAM T.V. SERIE'
AND IM OWN DEATH ROW FOR A
CRIME I NEVER COMMITED SO
HOW THAT FOR STUPIDITY. I JUST
SIT HERE QUIET THINKING IT GONNA
GET MADE RIGHT WITH IT JUST

GOT TO BE PATIENT THERE PURPOSE IN
THIS EVEN THOUGH I DON'T KNOW
WHAT AT THIS TIME. LOOK MY ATTOR
NEY SAYING STUFF I NEVER SAID,
FILEING ISSUES WITH NO MERIT
(SUCH AS HISPANICS ON JURY POOL) AND
TELLING ME I DO NOT HAVE ISSUES
I KNOW I DO (SUCH AS DNA). I'M
NOT GONNA TELL YOU I'M SMART I
KNOW THIS GOD GIVEING ME THE
ABILITY TO REASON. I KNOW WHATS
BEEN DONE TO ME, I KNOW I'M HERE
SENTENCED TO DIE FOR A CRIME I
NEVER COMMITED, I KNOW A JURY
FOUND ME GUILTY BECAUSE I AM
CHARGED WITH A TERRIBLE CRIME
AND THE PROSECUTER USED PICTURES
OF THOSE CHILDREN HEART, LUNGS, TONGE
ETC... TO NOT VIEW EVIDENCE BUT
ACT OWN EMOTION. THEN TO TOP
IT OFF SHE FABRICATES WHAT SHE
DOES PRESENT AS FOR AS EVIDENCE
(BECKOM, WHO SHE DOES NOT DISCLOSE
HER TIES TO  WHO A OBVIOUS LIER,
HAD SHE TOLD THE JURY OH YEA I USED
HIS CELLY A MONTH EARLIER TO DO THE
SAMETHING TO ANOTHER GUY THEY
CAN'T USE THAT REASON TO HANG ME
IT SHOWS THIS FOR WHAT 49310S

AND
THE
CONSPI-
NCY ON
ZEGLER
PART &
NOT MAKING
NOW THER
TES OR
DEAL WITH
BECKOM
AND HIS
CELLY
FOREMAN!

THATS ALL
LYNCH
MOB JURY
WANTS
A REASON
HANG SOME

A LIEING INMATE WHO WAS A PART OF
A PROSECUTERS CONSPIRACY TO MAKE
CASES (FABRICATE EVIDENCE) WHERE NO
EVIDENCE EXIST AGAINST THAT PERSON.
NOW KEEP IN MIND THE JURY LOOKING
FOR ANY REASON TO HANG A PERSON
FOR SUCH A TERRIBLE CRIME (ESPEC-

A JURY
BECOMES →
BENCH
FOR JURY
WHEN THEY
NO LONGER
ACT WITH
REASON BUT
EMOTION !

IALLY THE LOSS OF A CHILD, IN THIS
CASE THREE CHILDREN) SHE BRINGS
IN WATSON (THE DNA GUY) NOW
KEEP IN MIND JOYCE CARTER LEADING
PATHOLOGIST FOR 20YRS IN HARRIS
COUNTY SAYS THIS GUY WRONG WHO
I THINK IT OBVIOUS IS FAR MORE
QUALIFIED (THANK GOODNESS SHE HAS A
LITTLE BIT OF INTEGRITY!) IT REMIND
ME OF A JOKE I ONCE HEARD  NO
SHIT SHERLOCK (AS IN SHERLOCK

JUST
MEANING →
THIS
GUY WILL
DO WHAT
EVER SIEGLER
ASK THATS
WHY SHE
KEEPS USE-
ING HIM.

HOLMES) KEEP DIGGING WATSON
HE WILL SAY WHAT EVER SIEGLER
WANTS. (DID YOU KNOW ONE OF OR-
CHID CELLMARKS LABS WAS CAUGHT
DRY LABING, YEA THAT RIGHT
DRY LABING!) NOW IT OBVIOUS THAT
JURY DID NOT BASE THERE VERDICT
OWN EVIDENCE PRESENTED AGAINST
ME AT TRIAL. ( I DID NOT COMMIT
CRIME THATS WHY THERE NO
EVIDENCE.) WHAT SIEGLER FABRI-

SIEGLER NOT ... ...KING KNOWN HER TIES TO WITNESS IS A BRADY VIOLATION (NOT DISCLOSEING EXCULPATORY EVIDENCE) THIS WAS IMPORTA-NT TO MY DEFENSE EVERY IMPOR-TANT) IF THIS IS SHOWN THE PACKAGE DEAL (FOREMAN, BECK-OM, DOMINGUEZ) TWO SZPERATE CASES SAME PROSECUTER IT SHOWS THIS IS NOT A COINCIDENCE BUT A CONSPIRACY BY PROSECUTER

WHEN — YOUR TALK DEAD CHI... THERE HE... CUMBS, AND TONE DID DISPLA... IT HANG...G IME SOME NE, ANY SHE GOT TO HANG...

THE VERDICT SUPPOST BE BASED ON FACT (EVIDENCE) NOT LIES, EMOTION

I SAY WHAT I DO IN THE MOST

RESPECTFUL WAY AT LEAST THAT SHOW I MEAN TO SAY IT I KNOW HIS, IT THE TRUTH!

WAS IF BECKOM JUST HAPPEN TO WRITE HER A LETTER SAYING I CONFESSED TO HIM. SHE PERJURIED HER SELF, SHE INTENTJONALLY WITH HELD MAKING KNOWN HER TIES TO BECKOM KNOWING IF IT KNOWN SHE USED HIS CELLY A MONTH BEFORE HER EVIL DEED WOULD BE KNOWN!

...SIEG... IS A LIE IERSCEVI... ...ATSON TELLS LENCH IT WHAT LYING WAS

JUST A PART OF SIEGLER CONSPIRACY WHICH SHE DID NOT MAKE KNOWN HER TIES TO HIM TO JURY. (LIKE I SAID THAT WOULD SPEAK FOR IT SELF, THAT WHY YOU NEED TO HAVE A HEARING OWN THIS IT CAN AND WILL BE SHOWN) LET SIEGLER EXPLAIN HOW SHE FAILED TO MAKE KNOWN THE FACT OH YEA I JUST SO HAPPEND TO USE HIS CELLY A MONTH EARLIER OWN ANOTHER GUY YOU MIGHT SAY HOW CAN I BE SO BOLD TO WRITE YOU AND SAY WHAT I DO. THE QUESTION HOW CAN I NOT IT THE TRUTH AND YOU KNOW IT! SO ONCE AGAIN JUST LOOK INTO WHAT I'M SAYING, JUST BE FAIR YOUR THE JUDGE YOUR SUPPOST TO RIGHT!

GOD BLESS!
RONALD J, PRIBLE JR

00312

JUDGE ELLIS,

I SHOULD OF NEVER ROBBED THOSE BANKS
WITH A NOTE ( I AM A IDIOT! ) I WENT TO FEDERA
PRISON FOR THAT AND DONE MY TIME. I SHOULD OF
NEVER PUT THAT MONEY TOWARD THE PURCHASE OF
DRUGS ( GIVING IT TO STEVE TO BUY DOPE AND RE-
SALE SO WE COULD OPEN A NIGHT CLUB) IF THAT ACT
IN IT SELF OF GIVING STEVE THE MONEY I DID
( WHICH I TOLD FBI I DID) TO BUY DOPE WAS
ORGANIZED CRIME THEN I'M SURE THE FBI
WOULD OF CHARGED ME WITH THAT. IF YOU STRETCH
THAT TO THE UTMOST OF STRETCHIFACATION AND
CALL IT ORGANIZED CRIME ( CONSPIRACY TO DISTR-
IBUTE DRUGS) THEN I CAN SEE ME BEING GUILTY
OF THAT. ( EVEN THOUGH IT WAS NOT ANY KIND OF
ORGANIZED CRIME, IT JUST ME BEING STUPID FOR
BUYING INTO THE IDEA) I KNOW THIS THAT IS NO
WHERE IN THE BALL PARK OF CAPITAL MURDER, MURDE
OR ANYTHING ELSE SIEGLER HAS SAID ABOUT ME
( SHE SAID WE WERE ROBBING CRACK HOUSES ( what
crack houses) SHE SAID I HAD A GUN WHEN I ROBBED
THOSE BANKS WITH A NOTE ( NO I DID NOT!)) SHE TOLD THE
JURY I HAVE TO BE HELD LIABLE FOR EVERYTHIN
THAT HAPPEND IN THAT HOUSE THAT NIGHT, STEVE
WAS A DOPE DEALER WITH A HOUSE FULL OF
MONEY ABOUT TO MAKE A PURCHASE OF STOLE
DOPE, NOW NO ONE TOLD ABOUT STEVE BURGLARI
THE DOPE DEALERS HOUSE IN MY NEIGHBORH

WHERE? ?
WHEN? →

THAT WAS
ABOUT A
MONTH BEFORE
HE WAS
KILLED →

BROTHER AND
BROTHER IN LAW
↓    APART OF THAT

(OUR PARENTS NEIGHBORHOOD, IN FACT ON HIS MOM
AND DAD STREET) HE TOOK EVERYTHING FROM THE
WEED TO THE FURNITURE. IN THE SAME NEIGH-
BORHOOD A GUY NAMED PETE OWED STEVE MONEY
FOR DRUGS AND GUNS AND DID NOT PAY STEVE
AND PULLED GUNS ON HIM. THE NEXT NIGHT
STEVE HAD HIS CAR (MUSTANG SET OWN FIRE)
STEVE BROTHER SHOT A GUY 2 STREETS FROM
HIS MOM AND DADS HOUSE AND WENT TO PRISON
FOR THAT. STEVE WAS INTO SO MUCH STUFF I
COULD GO ON FOR EVER (A LONG TIME) IN FACT
MIKE SERNA (REMEMBER ANGELA **SERNA**
HIS WIFE SAID NELDA SAID I WAS CREEP
WHICH IS A LIE IF NELDA THOUGHT I WAS
CREEPY WHY SHE CALL ME WANTING ME TO
TAKE HER TO HER PARENTS HOUSE WHEN SHE
NEEDED TO GO THERE, WHICH I ALWAYS DID)
WAS THE FIRST PERSON I EVER BOUGHT DRUGS
FROM IN MY LIFE (MARIJUANA IN 7th GRADE)
HIS BROTHER GOT HIS ARM BLOWN OFF BY
SOME ONE WHO WAS WITH HIM WHEN THEY ROBBED
SOME HOUSE FOR SOME DRUGS. THE GUY KICKED
THE DOOR IN AND THE GUY BEHIND
HIM FIRED A SHOTGUN BY ACCIDENT.
I KNOW TICED HIS BANDAGE AND NUB AT
A GET TOGETHER AT MIKES HOUSE AND
ASKED STEVE AND HE TOLD ME WHEN WE
WERE BY OUR SELVES. LOOK JUDGE MY POINT
IS ALL THE THING GOING ON IN THIS

THAT
WAS
-WEEKS
BEFORE
HE WAS
KILLED.

AREA AND WITH STEVE HIS DRUG DEALING
IN AND OUT OF HIS HOUSE ALL THE TIME.
ALL THE ENEMYS HE HAD, ALL THE PEOPLE
HE ASSOCIATED WITH. (I DID NOT EVEN GET IN
TO THE KNOWN JACKER BY FBI STEVE WAS
SUPPOST TO BE USEING THE BANK MONEY TO
PURCHASE STOLEN DOPE (FROM WITH) WHY JUDGE,
WHY AM I THE ONE CHARGED? WHY
DO I HAVE TO BE THE ONE TO HANG FOR
THIS CRIME? TRUTH BE TOLD I NEVER
BEEN CONVICTED OF A CRIME (I GOT A
HONERABLE DISCHARGE FROM MARINE CORPS.)
UNTIL I HUNG AROUND STEVE AND LET
HIM TALK ME INTO THE CRAZY ASS IDEA
OF NIGHTCLUBS! (I'M NOT BLAMING HIM FOR
ROBBING THOSE BANKS I SHOULD NOT OF BEEN
SO WEAK MINDED TO GO ALONG WITH IT)
JUDGE I TRY TO UNDERSTAND WHY ANGELA
SERNA LIED (SHE A DRUGGY) BUT THE ONLY
THING I CAN THINK OF SHE MIGHT BE
TRYING TO COVER FOR MIKE OR ELSE
SHE IN TROUBLE WITH THE LAW AND
SIEGLER MADE HER SOME DEAL TO LIE
TO GET OFF. IM TIRED OF TRYING
TO FIGURE IT OUT BUT I KNOW THIS
WHAT WAS DONE TO ME IS IN NO WAY
RIGHT. (IT THE FURTHEST THING FROM
IT!) I FEEL ALL THIS STUFF SHOULD
SOMEHOW BE IN MY WRIT. BUT MY

JE NEVER
AD A CHANCE
J TALK
BOUT

↘

ISSUES
JUST THE

NTERVIEW

ATTORNEY NEVER CAME AND TALKED TO ME ABOUT MY WRIT. (HE CAME HERE ONE TIME WHEN FOX 26 DID A INTERVIEW) I NEVER HAD A TIME TO SPEAK WITH HIM IN REGARDS TO ISSUES. EVIDENTLY HE FELT HE COULD DO MY WRIT WITH OUT SPEAKING TO ME. (WHICH I DON'T SEE HOW!) I DON'T KNOW HOW MUCH HE LOOKE INTO ALL THE THINGS I TOLD HIM TO LOOK INTO AND I FELT WERE ISSUES. IT OBVIOUS BY MY WRIT THAT NONE OF THE THINGS I FEEL NEEDS TO BE IN THERE ARE IN THERE. THE DNA ISSUE, THE BRADY VIOLATION ARE ALL TRUE AND ISSUES THAT CAN BE SHOWN AND HAVE MERIT

I DON'T
KNOW
HOW I
BUT I
AM TRYING

THATS
WHY I
WRITE
YOU!

↓

I AM TRYING TO GET THEM DONE BY MY SELF. I WANT A CHANCE TO SPEAK AT A HEARING, I'M NOT JUST GONNA SHUT UP AND LET THIS BE DONE TO ME WITHOUT DOING EVERYTHING I CAN TO STOP IT. (I BE WRONG AS WRONG CAN BE TO DO THAT!) IF I GET A CHANCE TO TALK IN YOUR COURT AND MY ATTORNEY NOT SAYING WHAT NEEDS TO BE SAID I AM GOING TO IT

I DON'T
KNOW
WHAT
ELSE TO
DO!

MY LIFE. (I WILL NEVER JUST SEAT HERE AND SAY NOTHING WHY THIS IS DONE TO ME GOD GIVEN ME A MOUTH, AND THE ABILITY TO REASON (READ + WRITE) I

THING I CAN TO STOP THIS EVIL
ACT SIEGLER DONE TO ME! ) I DON'T
KNOW HOW TO DO ALL THE LEGAL STUFF
THE RIGHT WAY TO GET DONE WHAT
NEEDS TO BE DONE IN THE COURTS EYES
BUT I'M GONNA DO MY BEST! I'M GONNA
PUT MY FAITH IN GOD AND DO THE NATUR
AL AND LET GOD DO SUPERNATURAL (WHIC
GOD DOES) WITH ALL MY FAITH IN !!!!!
GOD! ALWAYS AND FOREVER! GOD !!!!!
RONALD T. PRIBLE JR

ROMANS 8:28
ROMANS 8:31

GODBLESS!

Cause No. 921126-A

| EX PARTE | § | IN THE 351ST DISTRICT COURT |
| | § | OF |
| RONALD JEFFERY PRIBLE, J | § | HARRIS COUNTY, TEXAS |
| Applicant | | |

## AFFIDAVIT

| STATE OF TEXAS | § | DATE: 5/9/05 |
| HARRIS COUNTY | § | |

Before me, the undersigned authority, a Notary Public in and for Harris County, Texas, on this day personally appeared Terrence Gaiser, who being by me duly sworn, upon his oath deposes and says:

"My name is Terrence Gaiser. I am presently licensed to practice law in the State of Texas and have been licensed since September 1972. My Texas bar number is 07572500. I have been employed as a Research Assistant in the Texas Court of Criminal Appeals and Supervising Briefing Attorney for the Criminal District Court Judges in Harris County, Texas. In 1975 I entered into private practice and, since that time, at least 95 percent of my practice has been devoted to criminal defense. I have been appointed on several capital cases that were treated as non-death cases. I have handled thirteen capital cases were the State sought the death penalty; ten of those cases were tried to a verdict.

Judge Mark Ellis appointed me to represent the defendant, Ronald Jeffery Prible, in his 2002 capital murder trial in cause no. 921126 in the 351st District Court of Harris County, along with defense counsel Kurt Wentz.

As part of the pre-trial investigation and preparation, the defense prepared and filed pre-trial motions, including a motion in limine regarding extraneous

IMAGED

00318

offenses, specifically the fact that three other people were killed in the same criminal transaction the defendant was charged with. Judge Ellis ruled that the issue of the children's deaths could not be discussed during voir dire. However, upon the beginning of the guilt-innocence phase of the trial, the judge ruled that said evidence was admissible as contextual evidence, and I lodged a running objection which was noted by the Court.

During the State's case-in-chief, evidence of the deaths of the three little girls was admitted. The jury was exposed to pictures of their bodies and testimony from the medical examiner regarding the manner of their deaths. The State also offered Michael Glenn Beckom as a witness. He testified that while incarcerated with the defendant, the defendant confessed to the crime with which he was charged and shared details of the offense with Beckom, such as motive, location of bodies, and manner of death. Prior to the testimony of Beckom, the State had witnesses placing the defendant as the last person seen with the complainants, but nothing directly linking him to the murders. This was the only direct evidence that connected the defendant to the murders.

Obviously, my strategy was to try to discredit Mr. Beckom. This was done through cross-examination as well as testimony from other witnesses who were incarcerated with the defendant and Beckom, specifically J. Brent Liedtke and Brian Fuller. Both of those witnesses testified that the defendant was willing to speak with other prisoners about the murder case and that he had received documents regarding the case, including the criminal complaint. The defendant's mother testified that she sent the defendant papers concerning the murder case and that she also talked to Beckom about the defendant's case.

Co-counsel and I, even prior to trial, had made the strategic decision to offer the criminal complaint, which included the probable cause affidavit, in evidence before the jury. Again, the purpose of introducing this document was to discredit

2

: 00319

Michael Beckom by showing the jury that what he testified to could be found in the probable cause affidavit, that the defendant never offered any jailhouse confession to Beckom and that Beckom was merely an opportunist. In fact, when the affidavit was offered, it was not offered for the truth of the matters asserted therein. It was offered to show that its content was public information. The Court of Criminal Appeals of Texas, on appeal in Mr. Prible's case, reviewed the claimed error in the admission of the extraneous evidence of the deaths of the children. That Court found no waiver in the admission of the probable cause affidavit.

The State also presented evidence pertaining to sperm found in Nilda Tirado's mouth which was shown through DNA profiling to match the profile of the defendant. We retained an expert, Dr. Robert C. Benjamin, who was present during the testimony of William Watson, the State's expert. Dr. Benjamin had impeccable credentials. Dr. Benjamin, as it turned out, was Mr. Watson's professor and dissertation advisor. Dr. Benjamin advised me on several occasions, in the presence of Co-counsel and a private investigator, that there was no available literature concerning the viability of DNA in the human mouth after being placed there by ejaculation. In fact, he joked about how the research would be conducted.

After Watson's testimony and before presenting our defense, we had sufficient time to discuss discrediting his testimony and I again questioned Dr. Benjamin concerning the existence of literature on the issue at hand. I did this because Dr. Carter, the medical examiner, had testified that there was such literature and that sperm and DNA had a lengthy viability in the human mouth. Dr. Benjamin again informed me that there was no such literature. There was ample time to discuss the State's evidence and strategies to effectively rebut it. I conferred with Dr. Benjamin after Mr. Watson testified and before I cross-examined Mr. Watson. At no time did Dr. Benjamin express his surprise or inability to rebut Mr. Watson's testimony. In fact, he simply said Watson's testimony was "bad" science.

3

The affidavits of Dr. Benjamin and Dr. Elizabeth A. Johnson only came to my attention after I was ordered to make this affidavit. I am annoyed and frustrated to learn that literature existed on this crucial point and that Dr. Benjamin should have been aware of this literature. Dr. Benjamin's claim that he was surprised by Watson's testimony and that Watson's testimony is "not based upon scientific literature available to this day", is absurd hypocrisy. He appears to be covering for a case of his own ineptitude.

The above statement is true and correct to the best of my knowledge."

_____
TERRENCE GAISER
Affiant

SWORN AND SUBSCRIBED before me, under oath, on this the 9th day of May_____, 2005.

_____
NOTARY PUBLIC in and for the
State of Texas

My commission expires: January 31, 2009

VICTORIA FLORES
MY COMMISSION EXPIRES
January 31, 2009

4

00321

COUNTY CLERK,

PLEASE FILE THIS IN MY FILE SO IT A MATTE
OF RECORD. CAUSE NO. 921126-A  RONALD JEFFE
PRIBLE  IN  THE  351st  DISTRICT COURT OF HARRI
COUNTY,

THANK YOU!

RONALD S. PRIBLE S

_Ronald J Prible_

PLEASE FORWARD TO JUDGE ELLIS IN
351st DISTRICT COURT OF HARRIS COUNTY AS
SOON AS POSSIBLE.

THANK YOU!

RONALD S. PRIBLE SR

_Ronald J Prible_

JUDGE ELLIS,
PLEASE SUBPOENA THIS INDIVIDUAL
INTO YOUR COURTROOM FOR A HEARING
IN OPEN COURT! (I WISH TO
BE THERE AS WELL PLEASE) THIS
IS VERY URGENT! (OF GREAT
IMPORTANCE!) THANK YOU! RONALD PRIBLE

: 00322

THE STATE OF TEXAS                                    IN THE 351st DISTRICT COU

VS                                                                    OF

RONALD J. PRIBLE JR.          CAUSE NO. 921126-A          HARRIS COUNTY, TX


I AM NOT A ATTORNEY, I AM FILEING THIS
MOTION THE BEST I CAN PRO-SE, THE PURPOSE
OF THIS MOTION IS TO GET A EVIDENTURY HEARING
IN COURT AT STATE LEVEL IN REGARDS TO THE
TESTIMONY OF INMATE IN FEDERAL PRISON. (WHO
INFORMATION ENCLOSED AS WELL AS HOW OBTAINED) TH
PURPOSE OF SUCH HEARING IS TO SHOW PROSECUTIONA
MISCONDUCT ON BEHALF OF PROSECUTION. (BRADY
VIOLATION, ETC...) TO SHOW PROSECUTER CONSPIRED
WITH JAIL HOUSE INFORMANTS TO GIVE FALSE TESTIMO
FOR LETTER TO PROSECUTER ASKING FOR TIME CUT.
SHE KNOWING HID HER TIES TO JAIL HOUSE INFO
MANTS AND DID NOT ALLOW THIS INFORMATION TO
BE KNOWN. (SHE BEING KELLY SIEGLER) HAD THI
BEEN KNOWN THE JURY WOULD SEE THIS FOR WHAT
IT TRUELLY WAS A CALCULATED ACT ON BEHALF OF
PROSECUTER TO MAKE CASES (FABRICATE EVIDENCE)
WHERE THERE IS NO EVIDENCE. SIEGLER ACTS AS
THOUGH INMATE BECKCOM IS A INMATE WHO JUST
HAPPEND TO CONTACT HER WITH SOME INFORMATION
IN REGARDS TO A CONFESSION OF A MURDER. (THIS
IS THE FURTHEST THING FROM TRUTH AND INMATE
IN FEDERAL PRISON CAN SHOW THIS) SIEGLER HAC
BECKCOM COME UP TO ME AND GET TO KNOW ME IN
PRISON SO HE COULD LIE AND SAY I CONFESSED TO

HIM. IN FACT SHE WAS USEING HIS CELLY NATHEN
FOREMAN OWN ANOTHER INMATE HERMILIO HERRERC
BEFORE I EVEN SET FOOT OWN MEDIUM SECURITY
COMPOUND. (WHAT WILL COME OUT DURING HEARING
CAN NOT BE DENIED IF I AM ALLOWED COMPETENT
COUNSEL. THIS MEANING IN NO WAY ROLAND MOORE!
SIEGLER FAILED TO MAKE THE FACTS AS THEY TRUELY
ARE KNOWN. THIS WAS DONE INTENTIONALLY! TO
PUT A PROBLEM OFF IS NOT TO SOLVE IT! THIS
TRUTH HAS BEEN HIDDEN WAY TO LONG! (I FEEL
THAT ONCE THIS TRUTH COMES OUT IT BE SHOWN SIEGLER
DONE THIS VERY SAME THING MANY TIMES OVER) SO
I PRAY YOU GRANT THIS MOTION AND GIVE
ME A HEARING IN COURT. I ASK WACKER
BE SUBPOENA AND ALLOW MY COUNSEL TO QUESTION
HIM ON STAND. (COUNSEL BEING SOMEONE YOU
GIVE ME QUALIFIED AS SUCH!)
                    THANK YOU!
                    RONALD S. PREBLE JR.

MOTION GRANTED _____
        DATE _____

ENCLOSED IS A RUELING BY COURT OF APPEALS IN
REGARDS TO HERMILIO HERRERO SR. PLEASE PAY CLOSE
ATTENTION TO PAGE 3. I KNOWTICE DETECTIVE CURTIS
BROWN FROM HARRIS COUNTY SHERIFFS DEPARTMENT, (SAME
HOMOCIDE DETECTIVE WHO SAID THEY DID NOT TAKE
SAMPLES OF BLOOD ON WALL IN GARAGE WHO IT APPEARS
IS SOMEONE STEVE FOUGHT WITH BLOOD. WHEN ASKED
WHY AT TRIAL HE SAID POOR DETECTIVE WORK. ALSO
REMEMBER HE DENIED EVER SEEING THOSE PHOTO OF ME
NAKED TAKEN IN INTERIGATION ROOM AT LOCKWOOD AND
NAVIGATION. THOSE PHOTO SHOWED I HAD NO MARKS ON
MY BODY OF ANY KIND. HE TOOK THE PHOTOS! HE IS A
LIER!!!!!!! ) I KNOWTICE KELLY SIEGLER (IMAGINE
THAT COINCIDENCE!), NOW PAY CLOSE, (CLOSE
ATTENTION TO THIS RAFAEL DOMINQUEZ! (HE
NATHEN FOREMAN BEST FRIEND FROM FREEWORLD AS
WELL AS PART OF HIS GROUP THAT HUNG OUT TOGETHER
IN PRISON, WITH FOREMAN CELLY MIKE BECKCOM OF
COARSE A PART OF THIS GROUP.) NOW ONCE AGAIN
FOREMAN SAID HERRERO CONFESSED TO HIM
BUT PRISON RECORD SHOWED WHEN HE SAYS THIS
WAS DONE HE WAS NOT EVEN ON COMPOUND BUT
IN P.C. (PROTECTIVE CUSTODY) BECAUSE HE WAS
A KNOWN SNITCH. SIEGLER KNOWING ONCE RECORDS
SHOWED THIS IT COULD BE SHOWN HE LYING SIDE
LINED HIM AND USED DOMINQUEZ. KNOW FOREMAN
WAS SUPPOST TO GO TO STATE PRISON FOR VIOLATIN
PROBATION WITH HIS FEDERAL CASE. OF COARSE HE
WAS REINSTATED.) I WAS AT A LOW SECURITY

PG2

PRISON ABOUT TO GO HOME. WHEN I GOT A BENCH
WARRENT FOR CAPITAL MURDER IT UP MY CUSTODY LEVEL
AND I HAD TO GO TO MEDIUM UNTIL I WAS BENCH
WARRENTED TO HARRIS COUNTY. NOW MY NAME RONALD
JEFFERY PRIBLE SR., IN PRISON OUR LAST NAME ON
OUR SHIRT (PRIBLE). MIKE BECKCOM COME UP TO ME
AND CALLED ME JEFF, (WHICH IS WHAT MY FRIENDS
CALL ME) I NEVER MET HIM BEFORE. (HIND SIGHT
20/20 I SHOULD OF KNOWN SOMETHING NOT RIGHT)
I WAS ONLY AT PRISON A SHORT TIME UNTIL I
WAS BENCH WARRENT. (MAYBE AROUND BECKCOM FOR
15 OR 20 TIMES FOR SMALL PERIODS OF TIME) HE
SAYS IN HIS STATEMENT WE WERE BEST FRIENDS.
I GOT A TATOO OF A DOG TAG FROM MARINE CORPS
UNDER MY LEFT RIB CAGE. (IT SAYS U.S.M.C., MY
SOCIAL SECURITY #, BLOOD TYPE, AND BAPTIST.)
MIKE BECKCOM GET STUPID WITH HIS STORY AND
SAYS I WAS A GOVERMENT ASSASSIN, COVERT
BLACK OP'S STUFF. (IT INSANE!) HIS STORY
A OBVIOUS IMPOSSIBLE LIE, MY SERVICE RECORD
BOOK SHOWS I WAS NEVER ANY OF SUCH THINGS.
HE SEEN MY TATOO OWN REC YARD BECAUSE
I ALWAYS HAD MY SHIRT OFF GETTING SUN. NOW
I AM OWN DEATH ROW BECAUSE OF A UNCREDIBLE
(THAT PUTTING IT MILDLY) JAIL HOUSE INFORMANT
TELLING A OBVIOUS IMPOSSIBLE LIE AS WELL
AS SIEGLER DNA GUY WITH HIS BAD SCIENCE
THE POPE WOULD OF BEEN CONVICTED OF THIS
CRIME IF HE WAS ACCUSED WITH CHILDREN

HEART, LUNGS, AND TONGUE PUT OWN DISPLAY. I ROBBED BANKS AND GAVE MONEY TO BE INVESTED IN A DRUG TRANSACTION TO OPEN NIGHT CLUBS SO THE JURY WOULD KILL ME OWN MY BAD CHRACTER ALONE. THIS IS NOT THE WAY THE JUSTICE SYSTEM IS SUPPOSTED TO BE WHERE A PROSECUTER FABRICATES EVIDENCE (THAT EXACTLY WHAT GETTING JAIL HOUSE INFOR MANT TO LIE IS AS WELL AS DNA EXPERTS KNOWN BAD SCIENCE) TO CLOSE CASES. WALKER TESTIMONY WILL CONNECT THE DOTS AND SHOW SIEGLER GLUE AND PASTE THIS CASE TOGETHER AND WRONGFULLY CONVICTED ME FOR THIS CRIME. (WHICH I DID NOT COMMIT AND I BELIEVE SIEGLER TRUELLY KNOWS THIS!) AS TO WHAT SIEGLER TRUE MOTIVES ARE ONLY SHE KNOWS BUT A HEARING IN COURT AS TO WALKER WILL CERTAINLY SHOW PROSECUTIONAL MISCONDUCT THAT CAN NOT BE DENIED I TRUELLY BELIEVE THE TRIAL COURT KNOWS THIS TO BE TRUE. JUST HAVE A HEARING AND SUBPOENA WALKER AND HAVE ME A ATTORNEY WHO WILL REPRESENT ME TO THE FULLEST. (I DON'T NEED A BIG NAME ATTORNEY JUST A ATTORNEY WHO WILL DO WHAT NEEDS TO BE DONE TO THE BEST OF THERE ABILITY) IF IT TURNS OUT I'M WRONG AND WHAT I SAY IS SHOWN NOT TO BE TRUE THAN I AM A IDIOT AND I'LL SHUT UP AND STOP FILEING THINGS IN THE COURT. (I KNOW IT THE TRUTH!, AND CAN BE SHOWN IF I JUST GET A CHANCE! IF THE PROSECUTION HAS NOTHING TO HIDE THEY SHOULD SUPPORT SUCH A HEARING JUST FOR THE SAKE OF SHOWING JUST HOW RIGHTOUS

PG4

THEY TRUELLY ARE. > I THINK HERMILIO HERRERO SR SHOULD BE SUBPOENA AS WELL! (I TRUELLY DO!)

ALSO ENCLOSED HOUSTON PRESS ARTICLE IT JUST TELL WHAT BECKCOM GOT TO CUT E OWN ME.

NOW REMEMBER DETECTIVE BROWN, KELLY SIEGLER, NATHEN FORTMAN, MIKE BECKCOM RAFAEL DOMINQUEZ, RONALD S. PRIBLE SR (ME), HERMILIO HERRERO SR, BEAUMONT FEDERAL PRISON. DO YOU REALLY THINK IT COINCEDENCE ALL THIS IS SO INTERCONNECTED. (IT NOT AND MY JURY HAD A RIGHT TO KNOW THIS! AS BAD AS A JURY WANTS SOMEONE TO BE HELD LIABLE FOR A CRIME AS BAD IS THIS THEY CAN NOT USE THE CRUTCH "WHAT IF HE DID CONFESS TO HIM" AS A REASON TO HANG ME. IT WOULD BE CLEAR AS DAY WHAT GOING ON HERE SHOULD THE FACTS BE MADE KNOWN TO THEM AS THEY TRUELLY ARE. TRUTH BE TOLD ALL A JURY LOOKING FOR IS A REASON TO HANG SOMEONE FOR A CRIME SUCH AS THIS. KELLY SIEGLER KNOWS THIS ALL TO WELL SO SHE PULLED A LIEING JAILHOUSE INFORMANT OUT OF HER HAT. DRAMA BELONGS IN HOLLYWOOD, IN THE COURT ROOM THE TRUTH! (PERHASPS SIEGLER MISSED HER TRUE CALLING, MAYBE SHE SHOULD BE IN HOLLYWOOD!)

00328

124 S.W.3d 827, *; 2003 Tex. App. LEXIS 10313, **

**HERMILIO HERRERO, JR., Appellant v. THE STATE OF TEXAS, Appellee**

**NO. 14-02-00534-CR**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*124 S.W.3d 827; 2003 Tex. App. LEXIS 10313*

**December 9, 2003, Rendered**
**December 9, 2003, Opinion Filed**

**PRIOR HISTORY:** On Appeal from the 179th District Court. Harris County, Texas. Trial Court Cause No. 903,122.

**DISPOSITION:** Affirmed.

**PROCEDURAL POSTURE:** Defendant appealed the judgment of the 179th District Court, Harris County, Texas, convicting him of murder.

**OVERVIEW:** The victim's dead body was discovered inside a rolled carpet, tied with a rope, and left on a street near a ditch. A few days before, the victim's wife saw him with defendant. Five years later, defendant confessed the crime to his prison cellmates. He said he killed the victim by beating him with a hammer. Independent of defendant's extrajudicial confession, corroborating evidence was sufficient to establish the corpus delicti of murder. The autopsy report indicated the victim suffered bruises on his back consistent with a round, flat object. The confession was sufficient to establish defendant's identity as the perpetrator. Inconsistencies in the testimony heard at trial did not render the evidence insufficient. Defendant was not entitled to a mistrial because a witness testified that he was promised protection against defendant's death threat in exchange for his testimony. The jury was given curative instructions. The court of appeals upheld his conviction for murder.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** murder, confession, mistrial, corpus delicti, murder conviction, factually, carpet, death threat, extrajudicial, factual-sufficiency, physical evidence, cooperated, perpetrator, inconsistencies, promised, night club, overrule, hammer, killed, unjust, throat, alive, hit, legally insufficient, legally sufficient, last seen, linking, conflicting evidence, medical evidence, trier of fact

*Evidence > Criminal Evidence > Confessions*
*Evidence > Criminal Evidence > Weight & Sufficiency*
[HN1] An extrajudicial confession, standing alone, is insufficient to support a conviction without other evidence showing that a crime has in fact been committed.

*Evidence > Criminal Evidence > Confessions*
*Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution*
[HN2] The identity of the perpetrator of the crime is not an element of the corpus delicti; the inquiry focuses only on the harm brought about by the criminal conduct of some person.

*Evidence > Criminal Evidence > Confessions*
[HN3] The corpus delicti rule is satisfied if some evidence exists outside of the extrajudicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred.

*Evidence > Criminal Evidence > Confessions*
*Criminal Law & Procedure > Criminal Offenses > Homicide > Murder*
[HN4] The corpus delicti of murder is established by a showing of (a) the death of a human being (b) caused by the criminal act of another.

*Evidence > Criminal Evidence > Weight & Sufficiency*
[HN5] In evaluating a legal-sufficiency challenge, the court of appeals views the evidence in the light most favorable to the verdict.

*Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution*
*Evidence > Criminal Evidence > Weight & Sufficiency*
[HN6] The issue on appeal is not whether the court of appeals believes the State's evidence or believes that appellant's evidence outweighs the State's evidence. The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt.

*Criminal Law & Procedure > Witnesses > Credibility*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN7] The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence. The jury may choose to believe or disbelieve any portion of the witnesses' testimony.

*Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution*
*Evidence > Criminal Evidence > Weight & Sufficiency*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN8] When faced with conflicting evidence, the court of appeals presumes the trier of fact resolved conflicts in favor of the prevailing party. Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the court of appeals must affirm. The question is not whether a rational jury could have entertained a reasonable doubt of guilt, but whether it necessarily would have done so.

*Criminal Law & Procedure > Criminal Offenses > Homicide > Murder*
[HN9] Under Tex. Penal Code Ann. § 19.02(b)(1)-(2), a person commits the offense of murder when he either: (1)

intentionally or knowingly causes the death of another; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another.

*Evidence > Criminal Evidence > Confessions*
[HN10] An extrajudicial confession is sufficient to establish the perpetrator's identity.

*Criminal Law & Procedure > Witnesses > Presentation*
*Evidence > Criminal Evidence > Weight & Sufficiency*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN11] To the extent that testimony is inconsistent, the jury as the trier of fact has the ultimate authority to determine the credibility of witnesses and the weight to be given to their testimony. *Tex. Code Crim. Proc. Ann. art. 38.04* (1979). Any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal-sufficiency review.

*Evidence > Criminal Evidence > Weight & Sufficiency*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN12] When evaluating a challenge to the factual sufficiency of the evidence, the court of appeals views all the evidence without the prism of in the light most favorable to the prosecution and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

*Evidence > Criminal Evidence > Weight & Sufficiency*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN13] In conducting the factual-sufficiency review, the court of appeals essentially compares the evidence which tends to prove the existence of a fact with the evidence that tends to disprove that fact. The court of appeals must employ appropriate deference so that it does not substitute its judgment for that of the fact finder.

*Evidence > Criminal Evidence > Weight & Sufficiency*
[HN14] When reviewing a factual-sufficiency challenge, the court of appeals must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict.

*Criminal Law & Procedure > Witnesses > Credibility*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN15] The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the evidence. Therefore, the jury may believe or disbelieve all or part of any witness's testimony.

*Evidence > Criminal Evidence > Weight & Sufficiency*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN16] A factual-sufficiency challenge will not necessarily be sustained simply because the record contains conflicting evidence upon which the fact finder could have reached a different conclusion. A reviewing court may disagree with the fact finder's resolution of conflicting

evidence only when it is necessary to prevent manifest injustice.

*Evidence > Criminal Evidence > Weight & Sufficiency*
*Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury*
[HN17] A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State.

*Evidence > Criminal Evidence > Weight & Sufficiency*
[HN18] The existence of alternative reasonable hypotheses may be relevant to, but is not determinative in, a factual-sufficiency review.

*Criminal Law & Procedure > Trials > Motions for Mistrial*
*Criminal Law & Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN19] The court of appeals reviews a trial court's denial of a motion for mistrial under an abuse-of-discretion standard.

*Criminal Law & Procedure > Trials > Motions for Mistrial*
[HN20] Mistrials are an extreme remedy for curing prejudice occurring during trial. They ought to be exceedingly uncommon and employed only when less drastic remedies are inadequate to the task of removing residual prejudice.

*Criminal Law & Procedure > Trials > Motions for Mistrial*
[HN21] A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.

*Criminal Law & Procedure > Jury Instructions > Curative Instructions*
[HN22] A prompt instruction to disregard will ordinarily cure error associated with an improper question and answer regarding extraneous offenses.

*Criminal Law & Procedure > Trials > Motions for Mistrial*
*Criminal Law & Procedure > Jury Instructions > Curative Instructions*
*Criminal Law & Procedure > Pretrial Motions > Motions In Limine*
[HN23] Because curative instructions are presumed effective to withdraw from jury consideration almost any evidence or argument that is objectionable, trial conditions must be extreme before a mistrial is warranted. This presumption may apply even where the instruction follows violation of an order in limine.

COUNSEL: For Appellants: Dan Cogdell, Houston, TX.

For Appellees: Dan McCrory, Houston, TX.

JUDGES: Panel consists of Justices Yates, Hudson, and Frost.

: 00330

124 S.W.3d 827, *; 2003 Tex. App. LEXIS 10313, **

OPINIONBY: Kem Thompson Frost

OPINION:

[*830] Appellant Hermilio Herrero, Jr. appeals his murder conviction, arguing (1) the evidence is insufficient to establish the corpus delicti of murder independent of appellant's extrajudicial confession; (2)-(3) the evidence is legally and factually insufficient to support his conviction; and (4) the trial court abused its discretion when it denied appellant's motion for mistrial following a witness's statement that he was promised protection from appellant's death threat in exchange for his testimony. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 1995, Albert Guajardo's dead body was discovered inside a rolled carpet, which was wrapped in plastic, tied with a rope, and left on a street near a ditch. Guajardo's wife told police she had last seen her husband approximately four days earlier when he left the house around 7:00 a.m. with a man named Freddie Hernandez. n1 According to her testimony, Hernandez and appellant, whom she referred [**2] to as "Millie," came to the Guajardo home the previous afternoon; Albert Guajardo left with them briefly and then returned home. Guajardo's wife provided police with descriptions of both appellant and Hernandez during the investigation. Detective Curtis Brown from the Harris County Sheriff's Department attempted to interview Hernandez; however, he refused to answer questions. Appellant agreed to answer questions and to a search of his home. The search did not produce any evidence of the crime.

n1 Detective Curtis Brown from the Harris County Sheriff's Department testified that he questioned Guajardo's wife about "both individuals that he was last seen with." However, according to her testimony, Guajardo left home with only Hernandez on the morning of January 5, 1995.

Approximately five years later, Jesse Moreno contacted Kelly Siegler, an assistant district attorney with the Harris County District Attorney's Office. Moreno claimed he had information about the case. Moreno had been in a Beaumont federal prison [**3] with appellant and testified that appellant told him and other inmates that appellant killed Guajardo because Guajardo owed appellant money for drugs. Rafael Dominguez, also a prison inmate, contacted Siegler with similar information, claiming appellant had bragged about killing Guajardo to a group of inmates in the recreation yard on a separate occasion. Appellant was then charged by indictment with Guajardo's murder. n2 See TEX. PEN. CODE ANN. § 19.02 [*831] (Vernon 1994). A jury found appellant guilty and the trial court sentenced him to life imprisonment in the Texas Department of Criminal Justice, Institutional Division and assessed a $ 10,000 fine.

n2 The indictment included an enhancement paragraph, which referenced appellant's 1989 conviction for aggravated assault. The trial court found the enhancement paragraph true when assessing punishment.

II. ISSUES PRESENTED

Appellant presents the following issues for review:

(1) Is the evidence sufficient to establish the corpus [**4] delicti of murder independent of appellant's extrajudicial confession?

(2) Is the evidence legally sufficient to support appellant's murder conviction?

(3) Is the evidence factually sufficient to support appellant's murder conviction?

(4) Was appellant entitled to a mistrial because a witness improperly testified that he was promised protection from appellant's death threat in exchange for his testimony?

III. ANALYSIS AND DISCUSSION

A. Is the evidence sufficient to establish the corpus delicti of murder independent of appellant's extrajudicial confession?

In his second issue, appellant contends that his extrajudicial confession alone is insufficient to establish the corpus delicti of murder absent physical evidence linking him to the crime.

Appellant is correct that [HN1] an extrajudicial confession, standing alone, is insufficient to support a conviction without other evidence showing that a crime has in fact been committed. See Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). Appellant argues that the evidence must demonstrate that he was the person who committed the murder. However, [HN2] the identity of the perpetrator of the crime is not an [**5] element of the corpus delicti; the inquiry focuses only on the harm brought about by the criminal conduct of some person. See id. The purpose of the corroboration requirement is to ensure that a person confessing to a crime is not convicted without independent evidence that the crime actually occurred. Id. Therefore, [HN3] the corpus delicti rule is satisfied if some evidence exists outside of the extrajudicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred. Id. at 645.

[HN4] The corpus delicti of murder is established by a showing of (a) the death of a human being (b) caused by the criminal act of another. Fisher v. State, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993). In this case, police were notified when residents partially unrolled a carpet lying on the side of the road and discovered human feet. When police arrived, they opened the carpet to find a man's body laying face down. Police identified the victim as Albert Guajardo through fingerprint identification. During her testimony, Guajardo's wife identified a photo of the victim from the medical examiner's office as Guajardo. Dr. [**6] Dwayne Wolf from the Harris County Medical Examiner's Office testified that the autopsy report indicated the victim suffered multiple lacerations on his scalp as well as a deep wound on the neck caused by a sharp object. He stated that the victim's neck was cut to the vertebral column, resulting in rapid death. In addition, Dr. Wolf testified that the autopsy report showed

: 00331

the victim had bruises on his back consistent with a round, flat object. This testimony provides sufficient evidence to establish the corpus delicti of murder. *See Emery v. State; 881 S.W.2d 702, 705 (Tex. Crim. App. 1994)* (finding the State offered independent evidence of corpus delicti of murder by proving identity of [*832] body and that cause of death was stabbing); *Hammond v. State, 942 S.W.2d 703, 707 (Tex. App.—Houston [14th Dist.] 1997, no pet.)* (holding corpus delicti of murder met when medical examiner proved identity of body and that cause of death was fatal bullet wounds). Accordingly, we overrule appellant's second issue.

**B. Is the evidence legally sufficient to support appellant's murder conviction?**

In his first issue, appellant contends the evidence is legally [**7] insufficient to support his murder conviction because (1) the State presented no physical evidence linking appellant to the crime; (2) the testimony by Moreno and Dominguez regarding appellant's confession is factually inconsistent with other testimony; (3) appellant and his wife cooperated with authorities; and (4) evidence exists to suggest someone else committed the crime.

[HN5] In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).* [HN6] The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).* The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).* [HN7] The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).* The jury may [**8] choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).* [HN8] When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).* Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).* The question is not whether a rational jury could have entertained a reasonable doubt of guilt, but whether it necessarily would have done so. *Swearingen v. State, 101 S.W.3d 89, 96 (Tex. Crim. App. 2003).*

[HN9] Under *section 19.02 of the Texas Penal Code*, as it applies in this case, a person commits the offense of murder when he either (1) intentionally or knowingly causes the death of another; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. *See* TEX. PEN. CODE ANN. *§ 19.02(b)(1)-(2).* [**9] Appellant contends the evidence is legally insufficient to support his conviction because the State failed to produce physical evidence linking him to the crime. Appellant claims the confessions about which Moreno and Dominguez testified are

the only evidence connecting him to Guajardo's murder. Moreno and Dominguez testified to separate conversations with appellant while at the Beaumont federal prison in 1999 and 2000 respectively. In these conversations, each stated that appellant recounted the events leading up to Guajardo's murder. They testified that appellant said Guajardo owed him money for drugs and was not willing to pay. According to their testimony, appellant saw Guajardo at a night club and convinced him to leave with him. The two men and an unnamed third person, got in a van. Appellant and Guajardo allegedly argued about the money and appellant began choking Guajardo. According to their testimony, appellant then pulled a knife and slit Guajardo's throat. Appellant told Moreno and Dominguez [**833] that when he saw Guajardo was still alive, he got a hammer and hit him until he killed him, and then disposed of the body by rolling it up in a carpet.

[HN10] An extrajudicial confession [**10] is sufficient to establish the perpetrator's guilt. *See Emery, 881 S.W.2d at 706* (holding three extrajudicial confessions sufficient to support finding that appellant committed the offense despite lack of scientific evidence). The jury heard accounts of appellant's confession from both Moreno and Dominguez. Details within the accounts, beyond those which Moreno admitted to hearing about prior to the confession, n3 were consistent with evidence from other sources. Both Moreno and Dominguez testified that appellant said he hit Guajardo with a hammer. The medical evidence showed that some of Guajardo's injuries were consistent with a round, flat object similar to the head of a hammer. In addition, Moreno and Dominguez stated that appellant told them Guajardo was sitting in the front seat when appellant slit his throat from behind. Detective Brown testified that, while examining the body at the scene of its discovery, he noted blood did not appear to go beyond Guajardo's waistline, indicating he was probably cut while in a seated position. After reviewing the evidence, we conclude that a rational trier of fact could have found the essential elements of the crime beyond [**11] a reasonable doubt.

n3 When questioned about details he had heard prior to the conversation with appellant, Moreno testified that he was aware that Guajardo's body was rolled in a carpet and that his throat was slit.

Appellant argues that the testimony of Moreno and Dominguez regarding appellant's confession is factually inconsistent with other testimony, thereby rendering the evidence insufficient for conviction. Specifically, appellant contends the following facts are inconsistent with testimony from Moreno and Dominguez: (1) appellant told them he met Guajardo at a night club, yet Guajardo's wife testified that he was not dressed for a night club when he left the house that morning; (2) appellant said he placed Guajardo's dead body by a dumpster, yet other testimony indicated the body was not found by a dumpster but in an area commonly used for dumping; and (3) appellant indicated he beat Guajardo in the head with a hammer because Guajardo was still alive after appellant cut his throat, yet the medical examiner [**12] testified that Guajardo would have lived for a maximum of one

minute and would not have made "significant, purposeful movement" under those circumstances. Appellant also raises the following additional inconsistencies in Moreno's testimony: (1) appellant stated he first choked Guajardo, yet the medical evidence does not indicate strangulation, and (2) appellant said Guajardo's friend drove Guajardo's vehicle home from the night club, yet Guajardo's wife recalls having the keys to the vehicle that day.

[HN11] To the extent the testimony is inconsistent, the jury as the trier of fact had the ultimate authority to determine the credibility of witnesses and the weight to be given to their testimony. See TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); Garcia v. State, 919 S.W.2d 370, 382 n.6 (Tex. Crim. App. 1996) (per curiam). Any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal-sufficiency review. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Therefore, we conclude the inconsistencies cited by appellant do not render the evidence legally insufficient. [**13]

Finally, appellant asserts that the evidence is not legally sufficient to support [*834] his conviction because he and his wife cooperated with authorities, whereas Hernandez refused to speak to the police and some facts point to Hernandez as the perpetrator. Appellant's argument appears to contest the fact that the jury rejected an alternative hypothesis, namely that Hernandez, not appellant, committed the offense. Appellant bases this contention on several grounds in addition to Hernandez's refusal to speak with authorities: (1) the fact that Guajardo never expressed fear of appellant; (2) Guajardo was last seen alive in Hernandez's company; and (3) Hernandez often worked for his father laying carpet. The State's failure to disprove a reasonable alternative hypothesis does not render the evidence legally insufficient. Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). Therefore, we conclude appellant's contention in this regard lacks merit.

Having reviewed all of appellant's contentions, we conclude the evidence is legally sufficient to sustain appellant's murder conviction. Accordingly, we overrule appellant's first issue.

C. Is the evidence factually sufficient [**14] to support appellant's murder conviction?

In his third issue, appellant challenges the factual sufficiency of the evidence to support the jury's verdict. [HN12] When evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). This concept embraces both "formulations utilized in civil jurisprudence, i.e., that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great weight and preponderance of the available evidence." Id. at 11. Under this second formulation, [HN13] the court essentially compares the evidence which tends to prove the existence of a fact with the evidence that tends to disprove that fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). In conducting the

factual-sufficiency review, we must employ appropriate deference so that we do not [**15] substitute our judgment for that of the fact finder. Id. at 648.

[HN14] When reviewing a factual-sufficiency challenge, we must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Here, appellant cites the same reasons for factual insufficiency as discussed under legal sufficiency, namely (1) inconsistencies in the testimony of Moreno and Dominguez when compared to that of other witnesses and to the medical evidence; (2) the lack of physical evidence linking appellant to the crime; (3) the fact that he and his wife cooperated with authorities; and (4) the existence of facts pointing to Hernandez as the perpetrator of the crime. As additional support for his factual-sufficiency claim, appellant characterizes Moreno as a "professional witness" because he testified previously for the same prosecutor.

[HN15] The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the evidence. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Therefore, the jury may believe or disbelieve all or part [**16] of any witness's testimony. See Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). [HN16] A factual-sufficiency challenge will not necessarily be sustained simply because the record contains conflicting evidence upon which the fact finder could have reached a different conclusion. See Santellan v. [*835] State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). A reviewing court may disagree with the fact finder's resolution of conflicting evidence only when it is necessary to prevent manifest injustice. See id. at 164-65. [HN17] A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. See Cain, 958 S.W.2d at 410.

In this case, the jury apparently chose to believe that appellant told Moreno and Dominguez he killed Guajardo and that he recounted the details of the crime, despite any arguable inconsistencies in the testimony and appellant's contention that the State lacked physical evidence. See Torres v. State, 92 S.W.3d 911, 916-17 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (overruling appellant's factual-sufficiency challenge to murder conviction [**17] despite lack of physical evidence when jury chose to believe statements made by appellant to others). The jury evidently did so despite hearing testimony that appellant cooperated with authorities during the initial investigation and after learning that Moreno had testified for the prosecution in a prior case. After reviewing the evidence without "the prism of in the light most favorable to the prosecution," we cannot conclude that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Appellant's claim that some facts point to Hernandez, rather than appellant, as the perpetrator of the crime does not mean the evidence is factually insufficient. [HN18] The existence of alternative reasonable hypotheses may be relevant to, but is not determinative in, a factual-sufficiency review. Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). The facts upon which appellant

: 00333

124 S.W.3d 827, *; 2003 Tex. App. LEXIS 10313, **

bases the hypothesis that Hernandez committed the crime are tenuous at best. Although appellant points to the fact that Guajardo was last seen alive with Hernandez, Detective Brown testified that Guajardo's wife gave him descriptions of two men, Hernandez and [**18] "Millie," whom she identified in court as appellant. As additional support for his claim, appellant states that Hernandez often worked for his father laying carpet; however, this statement is not accurate. The testimony on which appellant relies indicates only that Hernandez's father installed carpet in Guajardo's home, with no mention of Hernandez assisting him. The only other evidence that appellant offers to show Hernandez may have committed the crime is that Guajardo never expressed any fear of appellant and that appellant cooperated with authorities whereas Hernandez did not. These statements are not enough for this court to conclude that the evidence is factually insufficient to support the appellant's conviction. By contrast, the jury heard testimony from two witnesses to whom appellant recounted the details of Guajardo's murder and admitted to killing him. See Wilson, 7 S.W.3d at 141-42. Accordingly, we overrule appellant's third issue.

D. Was appellant entitled to a mistrial because a witness improperly testified that he was promised protection from appellant's death threat in exchange for his testimony?

In his fourth issue, appellant argues that the [**19] trial court abused its discretion when it denied him a mistrial following Dominguez's statement before the jury that he was promised protection from appellant's death threat in exchange for his testimony.

[HN19] We review a trial court's denial of a motion for mistrial under an abuse-of-discretion standard. See Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). [HN20] Mistrials are an extreme remedy for curing prejudice occurring during trial. Bauder [*836] v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). They ought to be exceedingly uncommon and employed only when less drastic remedies are inadequate to the task of removing residual prejudice. Id. [HN21] A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).

On direct examination, Dominguez stated that he was promised protection against appellant's death threat in exchange for his testimony in the case. Defense counsel immediately requested the attorneys approach [**20] the bench and the trial court excused the jury. Outside the jury's presence, the prosecutor stated that she did not anticipate the answer, but that the witness was telling the truth. Defense counsel objected that the statement violated the motion in limine. Just prior to Dominguez taking the witness stand, the parties had agreed not to broach the subject of appellant's alleged death threats without first approaching the bench. The trial court agreed to instruct the jury and offered defense counsel the option of writing out the instruction. With the jury still removed, defense counsel questioned the witness

further about his knowledge of a death threat and the promise he received from the prosecution. After additional discussion between the trial court and counsel, the court called the jury in and instructed them to disregard the last response by the witness. The trial court then inquired whether defense counsel wished any additional instruction. Defense counsel moved for a mistrial, and the trial court denied the motion.

Appellant contends Dominguez's response improperly injected an extraneous offense in violation of the motion in limine and was calculated to inflame the jury. [HN22] A [**21] prompt instruction to disregard will ordinarily cure error associated with an improper question and answer regarding extraneous offenses. See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). [HN23] Because curative instructions are presumed effective to withdraw from jury consideration almost any evidence or argument that is objectionable, trial conditions must be extreme before a mistrial is warranted. Bauder, 921 S.W.2d at 700. This presumption may apply even where the instruction follows violation of an order in limine. Janney v. State, 938 S.W.2d 770, 773 (Tex. App.–Houston [14th Dist.] 1997, no pet.).

The improper statement was not of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. See Martinez v. State, 844 S.W.2d 279, 284 (Tex. App.–San Antonio 1992, pet. ref'd) (holding instruction cured error when police officer testified that appellant had threatened intended victim); see also Whitaker v. State, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998) (finding instruction cured error when witness testified that appellant was physically [**22] and mentally abusive towards her); Paster v. State, 701 S.W.2d 843, 848 (Tex. Crim. App. 1985) (concluding instruction rendered testimony about appellant's alleged involvement in two extraneous murders harmless). Nor were trial conditions so extreme as to warrant a mistrial. Before this testimony, the jury heard similar testimony from Moreno concerning his fear that appellant would have him stabbed if he knew Moreno cooperated with the State in any investigation. n4 Like Dominguez, [*837] Moreno also confirmed that the prosecution offered him protective custody, stating, without objection, that "I told you that the reason I'm calling you is because I need your help, because I was going to get killed regardless. So, I mean, it's my only self-defense I got against this man." Therefore, we conclude that the trial court did not abuse its discretion when it denied the motion for mistrial. Accordingly, we overrule appellant's fourth issue.

n4 IN EXPLAINING WHY HE SHOWED APPELLANT A FAKE PRE-SENTENCE INVESTIGATION (P.S.I.), MORENO STATED:

Q: WHY DID YOU DO THAT?

A: WHY DID I SHOW HIM THAT P.S.I.? BECAUSE WHEN THEY FIND THAT YOU'RE HOT – WE CALL IT HOT – THEY MAKE YOU CHECK IN OR YOU GET HIT, SO I DIDN'T WANT TO GET –

. . .

124 S.W.3d 827, *; 2003 Tex. App. LEXIS 10313, **

Q: WHY DID YOU WORRY ABOUT BEING HOT TO THIS MAN?

A: BECAUSE HE WOULD HAVE HAD ME HIT OR CHECKED IN.

Q: WHAT DOES THAT MEAN, HE, THIS DEFENDANT, WOULD HAVE HAD YOU HIT?

A: STABBED.

[**23]

## IV. CONCLUSION

The evidence suffices to prove the corpus delicti of murder. Likewise, the evidence is legally and factually sufficient to sustain appellant's murder conviction. Lastly, the trial court did not abuse its discretion when it denied appellant's motion for mistrial following Dominguez's statement concerning appellant's death threat. Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Kem Thompson Frost

Justice

: 00335



**December 6, 2006**

**I mailed this to Angela Beacham on 11/28/06. The purpose of this is to document how I obtained Carl Walker's information.  My writ attorney has had Walker's information for a long time. However, he has never acted to this witness.**

**CARL WALKER #04770-017**
**FCI SEAGOVILLE**
**FEDERAL CORRECTIONAL INSTITUTION**
**P.O. BOX 9000**
**SEAGOVILLE, TX 75159-9000**

I FILED GRIEVANCE
WITH STATE BAR
AGAINST ROLAND
MOORE. HIS REPRESENT-
ATION HAS BEEN
TERRIBLE! THERE NO
EXCUSE WHY SOMEONE
HAS NOT SPOKEN TO WAL
BY NOW AT MOORE DISCRE

_Angela Beacham_                    12.6.06
**Angela Beacham**                  **Date**

12.7.06                              AB 12.6.06
**Date Mailed Back to Jeff**        **Verification That 3 Copies Sent**

I WROTE MY SISTER AND ASKED HER TO
CONTACT WARD LARKIN AND GET WALKER INFORMATION
MY ATTORNEY WAS SUPPOST TO SEND SOMEONE TO
TALK TO HIM. (HE NEVER DID!) WARD LARKIN THEN
SAID HE SPEAK WITH HIM AND MEET WITH HIM. HE
SPOKE TO HIM BUT HAS NOT MEET WITH HIM. I DON
HAVE ANY MORE TIME TO WASTE ON WAITING FOR
SOMEONE TO SPEAK TO HIM. HIS TESTIMONY OF
GREAT IMPORTANCE! SO HERE HIS INFORMATION!

**A Very Good Year — Inmate Beckcom gets his term reduced for his work in the Prible case**

The controversial jailhouse snitch nicknamed "The Rock" has moved one year closer to freedom as his reward for helping to send Ronald Jeffery Prible to death row.

Michael Glynn Beckcom, a former steroid-shooting bodybuilder convicted of participating in the execution-style murder of a federal witness, gained a 12-month reduction in his ten-year term and is now headed for release in about 4 years.

He had testified that fellow inmate Prible confessed to him about shooting a Houston couple and then torching their house. Two of the couple's young children and another girl also died in that 1999 blaze (see "The Devil You Say," December 5).

Terry Gaiser, Prible's trial attorney, accused Beckcom of fabricating the testimony in a blatant effort to gain his freedom. Gaiser was somewhat surprised that the payoff for Beckcom was only a one-year reduction, but he compared the convict to a worm edging his way to release.

"The worm moves inch by inch," Gaiser said. "That may not seem like much, but that's the way the worm moves. That's still one more year that he won't now have to serve."

Beckcom had become a veteran informant over the years. The Prible case was the fourth time he had appeared in a trial as a witness for the prosecution, in exchange for leniency in his own case.

Prible prosecutors Kelly Siegler and Vic Wisner were on vacation last week and unavailable for comment. Federal court records showed that, in the bid for the reduced sentence for their star witness, Siegler had told the government that Beckcom's testimony "was truthful, articulate and crucial in obtaining a conviction."

Siegler told jurors in the Prible case that Beckcom was despicable but that a deal with him was necessary to bring the murderer of the five Houston victims to justice. She said the only conditions were that she would put in a good word for him with his judge if he was truthful in his testimony.

*SHE KNEW HE WAS LIEING!*

Beckcom, 41, is a former Houstonian who had been in trouble with the law for receiving stolen goods and dealing cocaine. He went to work in the mid-'90s as bodyguard and aide — some say "enforcer" — for Corpus Christi-area businessman Mark Crawford, a former mayor of Ingleside.

In 1996, they and Beckcom's friend Kirk Johnson were charged with killing Crawford business associate Nick Brueggen, shortly after they learned he was turning federal informant in an investigation of Crawford's businesses.

Johnson and Beckcom both became prosecution witnesses against Crawford, but their conflicting stories led one state jury to deadlock and the second to acquit Crawford.

Then the federal government got involved and sidelined Johnson as a witness, leaving Beckcom as their star in a trial that netted a federal murder conviction against Crawford and various other fraud-related charges against him and others associated with his shady businesses.

U.S. District Judge Oliver Wanger concluded that Beckcom had lied in some parts of his statements and testimony against his former boss. The judge did agree with the prosecution to limit his sentence for retaliation against a witness by murder to the same 10 years he got in the deal with the state on that murder plea.

While in prison in Beaumont, Beckcom befriended Prible, who had received a term of about five years after confessing to a series of Houston bank robberies in 1999. He told officers he turned the robbery proceeds over to his friend Esteban "Steve" Herrera Jr. because they planned to use that loot — along with money Herrera made by dealing drugs — to open a nightclub.

However, Herrera and his girlfriend had been shot to death and set ablaze in a fire that killed the 3 children sleeping at their house. Prible was the last known person to see them alive and became the prime suspect, but authorities had little more than that circumstantial evidence to link him to the crimes.

→ Then Beckcom contacted Siegler and said Prible had repeatedly referred to the killings in their conversations, saying he'd used his U.S. Marine training to murder the couple. Prosecutors referred to Beckcom's details about the killings as proof that Prible had confessed to Beckcom. Some other inmates, as well as defense lawyers Gaiser and Kurt Wentz, said Prible's penchant for discussing his defense — and for sharing various court documents — made it easy for a scheming Beckcom to fabricate a supposed confession.

In arguing later for a 1-year reduction for Beckcom, Assistant U.S. Attorney Mark Cullers told Wanger that it was justified because of the convict "voluntarily coming forward with information which directly led to the conviction of a multiple murderer, and his truthful and important testimony at trial that resulted in the conviction."

Prible's appeal is expected to sharply challenge the authenticity of the confession. Gaiser said he has some regrets that Beckcom did not gain an outright release, as he's the one person who could get Prible off death row if he recanted his testimony.

"Of course, Beckcom will never do it while he's in the joint," Gaiser said. "So, in one way, it is too bad he didn't get out now."

(source: Houston Press)

*Handwritten margin notes:*

SIEGLER USED HIS CELLY AGAINST INMATE A MONTH BEFORE MY TRIAL IN ANOTHER CASE. SHE HID THIS INFORMATION! I FOUND OUT SINCE I BEEN ON DEATH ROW! GOD WORKS IN ALLWAYS! ALWAYS AND FOREVER!

THAT NOT HOW IT HAPPEN AT ALL! SHE HAD HIM GET TO KNOW ME SO HE COULD LIE AND SAY I CONFESSED TO HIM. SHE USED HIS CELLY ON ANOTHER GUY ALREADY IN SAME PRISON, IT NO COINCIDENCE, TO SAY IT IS A COINCIDENCE IS TO KNOWING (EXCEPT A LIE, TO TURN A BLIND EYE TO JUSTICE. (IS TO MURDER ME AND THAT A FACT!) IF A HEARING IS GIVEN IN OPEN COURT THIS CAN BE SHOWN THAT SIEGLER CONSPIRED WITH JAILHOUSE INFORM IS TO CITE) MAKE CASES AND HID THIS INFORMATI

00338

COPY
FOR
COURT

CAUSE NO. 921126-A

RONALD J. PRIBLE JR                    IN THE 351ST DISTRI
        US                             COURT
STATE OF TEXAS                         OF
    HARRIS, COUNTY                     HARRIS COUNTY
                                       STATE OF TEXAS

MOTION FILED PRO-SE FOR PURPOSE FOR COURT TO
CONSIDER RELEVANCY OF DNA TEST ON APPEAL, ENCCO
ED IS REASON TO SUPPORT MOTION.


                    RONALD J. PRIBLE SR


        PLEASE READ THIS MOTION!

PLEASE READ ENCLOSED STATEMENT, NOW I AM IN NO
WAY SAYING THAT ANY DNA IS MINE. I ADMITTED TO
HAVEING SEXUAL CONTACT WITH NELDA THE NIGHT PRIOR
TO HER AND STEVE DEATH. NOW AS SHOWN AT TRIAL THER
RELATIONSHIP WAS SHOWN FOR HOW IT TRUELLY WAS. (THE
TOPLESS DANCER SHOWED SHE THOUGHT SHE WAS PREGNANT WIT
STEVE BABY AT TIME OF HIS DEATH) THE SISTER IN LAW O
NELDA TALKED OF MINE AND NELDA RELATIONSHIP, NOW
BECAUSE NELDA PERFORMED ORAL SEX OWN ME DOES NOT
IN NO WAY MAKE ME RESPONABLE FOR THERE DEATH, NOW
SIEGLER DNA GUY WATSON SAYS HE DETECTED MY DNA OWN
A SWAB SUBMITTED FOR TESTING. (A SWAB FROM MOUTH OF
NELDA) NOW EVERYONE IN DNA FIELD KNOWS SEMEN STAYS
DETECTABLE FOR 72 TO 96 HOURS. SO FIRST OF ALL HE KNOWIN
LIEING TO JURY TELLING THEM FOR MY SEMEN TO BE DETEC
ABLE I HAD TO BE AT SCENE OF CRIME, (HE ALREADY BEEN
SHOWN TO BE WRONG IN ANOTHER DNA CASE, CAPITAL CASE
WHERE HE SAYING IT SOMEONE DNA IT NOT) NOW SINCE HE
LIEING SAYING I HAD TO BE AT SCENE OF CRIME FOR MY DN
TO BE DETECTABLE, (WHICH IS BAD SCIENCE) I BELIEVE HE
LIEING ABOUT IT BEING MY DNA, MY TRIAL ATTORNEY SHOULD
OF HAD IT TESTED BY OUT SIDE LAB TO SHOW THIS. MY ONLY THIN
IS HE THOUGHT JURY UNDERSTAND DNA(SEMEN) DETECTABLE FOR
72 TO 96 HOURS SO IF IT WAS MY DNA IT JUST SUPPORT WHAT
I SAID. NOW HE IN NO WAY THOUGHT WATSON WOULD GET
UP AND SAY FOR IT TO BE DETECTABLE I HAD TO BE AT SCEN
OF CRIME. NOW I WANT IT TESTED TO SHOW HE LIED (WAS
WRONG) IN FIRST PLACE AS TO MY DNA BEING DETECTED. HE
USES THIS BEING MY DNA AS A BASES FOR HIM TO GIVE
HIS OPINION,(WHICH IS KNOWN TO BE BAD SCIENCE) HIM
SAYING IT MY DNA GIVES HIM THE OPPERTUNITY TO CONFU
JURY WITH BAD SCIENCE. TO NOT GRANT RELIEF FROM STAN
POINT OF ALLOWING ME TO RETEST DNA ON APPEAL TO
SHOW WRONG DONE, (DISPUTE UNCREDIBLE TESTIMONY) IS TO
PUT A PROBLEM OFF NOT SOLVE IT. IT IS TO ALLOW THE CLOUD
OF DOUBT (A LIE) TO REMAIN AND HIDE BEHIND A TECHNI-
CALITY. A RETEST WILL WITH OUT A DOUBT SHOW THIS FOR WH
IT IS. (RETEST DNA AND LET CHIPS FALL WHERE THEY MAY
THIS IS A DEATH PENALTY CASE AT THE VERY LEAST A PERSON

SHOULD BE GRANTED THE RIGHT TO DISPUTE SUCH AS TO WHERE THERE
DOUBT WHEN IT THERE LIFE WHICH HANGS IN THE BALANCE. (I
ASSURE YOU NO ONE APPRECIATE MY LIFE THE WAY I DO!) I AM
NOT ASKING FOR ANYTHING UNREASONABLE! I AM ASKING FOR
DNA RETEST FOR PURPOSE OF SHOWING IT NOT MY DNA SO
THERE FOR THERE WAS NO BASES FOR WATSON BAD SCIENCE IN
FIRST PLACE. (THERE A LAW, I'M NOT FAMILIAR WITH EXACT
WORDING IT HAS TO DO WITH THE FRUIT OF THE TREE AND
MAKES REFERENCE TO ROOTS) I THINK THAT APPLIES HERE
THE DNA NOT BEING MINE SHOWS HIS BAD SCIECE OF ME
BEING AT SCENE OF CRIME FOR DNA TO BE DETECTABLE SHOULD OF
NOT BEEN ALLOWED BECAUSE IT HAD NO RELEVANCY. (IT WOULD IN
NO WAY APPLY IF THAT NOT MY DNA, SO THERE NO OPINION
(BAD SCIENCE) TO BE DISPUTED) TO SAY MY ATTORNEY SHOULD OF
HAD IT TESTED IS SHALLOW! (HE NOT GONNA LAY ON THE GURNE
FOR ME) TO SAY I ADMITTED TO IT BEING MY DNA IS TO NOT
TELL TRUTH EITHER. (READ MY STATEMENT, IN FACT WHERE
HAS IT EVER BEEN SAIDOS SHOWN IN ANY WAY I ADMITTED TO THA
BEING MY DNA. I WAS SO DRUNK AND WHEN ME AND NELDA DID
HAVE SEXUAL CONTACT IT WAS SO QUICK I DON'T REMEMBER
HAVEING A ORGASM. I THINK I OF REMEMBERED IF I DID! THAT
WHAT I SAID THEN AND NOW BECAUSE IT THE TRUTH!) SO FOR
THE PURPOSE OF JUSTICE TO BE DONE PLEASE, PLEASE RETEST
THAT DNA AND IT WILL SPEAK FOR IT SELF.

                           THANK YOU!

                    RONALD J. PRIBLE JR

     MOTION GRANTED

          DATE

Copy
For
Court

CASE NUMBER:

DATE: April 25, 1999

TIME: 12:09 AM

Statement of Ronald Jeffery Prible Jr. taken in Harris County, Texas. Prior to making this statement I have been warned by Detective W.A. Taber of the Harris County Sheriff's Department, the person to whom this statement is made that:

1.) I have the right to remain silent and not make any statement at all and that any statement I make may and probably will be used against me at my trial.;

2.) Any statement I make may be used as evidence against me in court;

3.) I have the right to have a lawyer present to advise me prior to and during any questioning;

4.) If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning; and

5.) I have the right to terminate the interview at any time.

Prior to and during the making of this statement. I knowingly, intelligently and voluntarily waive the rights set out above and make the following voluntary statement.

My full name is Ronald Jeffery Prible Jr. and I am a White male, I am 27 years of age. I was born on 04/18/1972 in Houston Tx.. My drivers license number is unknown. My social security number is 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, I reside at 2423 Woodwild with my poarents, the telephone number there is 281 999-7360. I am

I made a statement to Deputy Hernandez about my knowledge of what happened at my friend Steve's house. I would like to say that I did not tell the entire story about last night. everything was true except I did not say anything about me messing around with Nelda, Steves wife. Detective Taber asked me a question concerning any relationship with me and Nelda and I originally denied that there was a relationship between us but later told the truth that we had been messing around on the side.

Nelda and I had sex over at Steves house early in the morning after we came back from the club. Steve was out in the garage drinking and playing pool and went inside to use the bathroom. Nelda was up when i went inside and we started talking and we both went in the bathroom and closed the door. I bent her over the sink in the bathroom and started having sex with her but we thought that we heard Steve coming in the house, but he did not come in. Nelda began sucking my dick and then jacking me off. I do not remember if I came or not.

After we finished Nelda went back to bed and I went back outside with Steve in the garage and told him to take me home. I would like to say that Nelda and I have messed around on three occasions and I have never told anyone about this before. On the other two occasions all we did was kiss, and never had sex. Last night was the first time that we had ever had sex with each other. I really want anyone to know about this because it would ruin Nelda's reputation.

CAUSE NUMBER 921126

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 351ST DISTRICT COURT |
| VERSUS | §<br>§ | OF |
| | § | |
| ROLAND JEFFERY PRIBLE, JR | § | HARRIS COUNTY, TEXAS |

AND

CAUSE NUMBERS AP-74,487 & 921126-A

| | | |
|---|---|---|
| | § | IN THE TEXAS COURT OF |
| | § | CRIMINAL APPEALS |
| EX PARTE | § | AND |
| RONALD JEFFERY PRIBLE, JR | § | |
| | § | IN THE 351ST DISTRICT COURT |
| | § | OF HARRIS COUNTY, TEXAS |

MOTION TO DISQUALIFY JUDGE MARK KENT ELLIS, ATTORNEY HENRY BURKHOLDER, III AND ATTORNEY ROLAND MOORE, III.

TO THE HONORABLE JUDGES OF SAID COURTS:

NOW COMES RONALD JEFFERY PRIBLE, JR., acting on my own behalf, to file this motion. In support of this I state the following:

I am innocent. In October of 2002 I was convicted and sentenced to death in the 351ST Judicial District Court of Harris County, Texas, Judge Mark Kent Ellis presiding. Terrence Gaiser and Kurt Budd Wentz were my court-appointed trial attorneys. Soon afterward Judge Ellis appointed Henry Burkholder, III to help me prepare and file my direct appeal to the Texas Court of Criminal Appeals. About the same time Judge Ellis appointed Roland Moore, III to help me prepare and file my Texas State Application for Writ of Habeas Corpus.

1

: 00343

The Texas Court of Criminal Appeals denied the direct appeal on January 26, 2005. The Supreme Court of the United States of America denied the petition for writ of certiorari on the direct appeal on October 17, 2005. The status of the Texas State Application for Writ of Habeas Corpus is pending.

I've uncovered what I feel is a bribery scheme between Judge Mark Kent Ellis, Henry Burkholder and Roland Moore. However, even if I'm wrong and there is no actual impropriety, the appearance of impropriety is unmistakable. Judge Ellis, Mr. Burkholder and Mr. Moore should be disqualified from my case.

## JUDGE MARK KENT ELLIS

The legal system in the United States and the State of Texas is based on the fundamental principle that an independent and competent judiciary will interpret and apply the laws in a fair and just manner. This is vital to the American ideal of justice and rule of law. In keeping with this ideal, the Texas Code of Judicial Conduct provides basic standards to establish and maintain the principles of proper judicial conduct.

Canon 1 of the Texas Code of Judicial Conduct succinctly states what is generally desired and expected of Texas judges, both individually and collectively.

### Upholding the Integrity and Independence of the Judiciary

**An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and should personally observe those standards so that the integrity and independence of the judiciary is preserved. The provisions of this Code are to be construed and applied to further that objective.**

2

: 00344

Also, the Texas Code of Judicial Conduct specifically provides that judges

- "[Avoid] impropriety and the appearance of impropriety in all of the Judge's Activities" Title of Canon 2.

- "should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2(B).

- "shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism." Canon 3(C)(4).

- "shall refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of the judicial duties, exploit his or her judicial position …." Canon 4(D)(1).

I feel that Judge Mark Kent Ellis has betrayed or violated these ideals of integrity, of independence, of high standards of conduct. It appears to me that Judge Ellis accepted kickbacks (in the form of political campaign contributions) from Henry Burkholder and Roland Moore in return for their respective court appointments to represent me on my appeals.

According to Texas Ethics Commission records Mr. Burkholder and Mr. Moore each gave Judge Ellis two (and only two) campaign contributions. For each attorney, the first campaign contribution was before appointment to my appeal and the second contribution was after appointment to my appeal. In fact, Mr. Burkholder and Mr. Moore each gave Judge Ellis their first campaign contribution on the exact same day: September 28, 1999. Most telling, Mr. Burkholder's and Mr. Moore's each largest Harris County Judicial campaign contributions went to Judge Ellis.

I feel this is characteristic of a typical bribery kickback scheme. One payoff is made before the desired concession (i.e. the court appointment) and another payoff is made afterward. Also, Mr. Burkholder and Mr. Moore each made their first campaign contribution to Judge Ellis on the exact same day (September 28, 1999), and their contributions were disproportionately large. For example, Henry Burkholder made two $500 contributions to Judge Ellis, and contributed no more than $100 to any other individual Harris County Judge.

Candidates for Texas elected office file campaign reports with the Texas Ethics Commission semi-annually. Judge Ellis has filed 14 reports since July 1, 1999, but in only four of those did Judge Ellis show campaign contributions:

| | |
|---|---|
| July 1, 1999 – December 31, 1999 | $12,625.00 |
| January 1, 2000 – June 30, 2000 | $350.00 |
| July 1, 2003 – December 31, 2003 | $3,150.00 |
| January 1, 2004 – June 30, 2004 | $4,800.00 |

Since July 1, 1999 Judge Ellis has received 90 individual campaign contributions. Eighty-five came from attorneys, and two came from court reporters. Interestingly, the times that Judge Ellis received campaign contributions coincide significantly with the times that Judge Ellis' campaign itself contributed money to the Harris County Republican Party:

| | |
|---|---|
| July 1, 1999 – December 31, 1999 | $2,575.00 |
| July 1, 2000 – December 31, 2000 | $500.00 |
| July 1, 2003 – December 31, 2003 | $500.00 |
| January 1, 2004 – June 30, 2004 | $2,500.00 |
| July 1, 2004 – December 31, 2004 | $3,000.00 |

Judge Ellis' campaign's other expenditures since July 1, 1999 total $1,242.71 – not much compared to the $20,925 in campaign contributions and the $9,075

4

Judge Ellis' campaign in turn contributed to the Harris County Republican Party. The other expenditures include such items as campaign printing costs, campaign postage, campaign related meals, and courtroom office supplies not otherwise provided by the Harris County Courts. Note, as of the last report submitted, Judge Ellis' campaign has a cash-on-hand balance of $10,800.05.

According Texas Ethics Commission reports for the week of September 27, 1999 through October 1, 1999 Judge Ellis received 60 campaign contributions totaling $11,475. Fifty-five of those contributions (averaging $198.18, totaling $10,900) came from lawyers, 2 from court reporters (averaging $150, totaling $300) and 1 from a bail bondsman (averaging and totaling $150). That is, 58 of the 60 contributions came from individuals who work and make their livelihood in the Harris County Criminal Justice System.

On Tuesday, September 28, 1999 alone, Judge Ellis received 47 campaign contributions, totaling $8,525. September 28, 1999 is the day in which Henry Burkholder first gave Judge Ellis $500. September 28, 1999 is the day in which Roland Moore gave Judge Ellis $250. It sure appears me to that Judge Ellis laid the foundation for kickbacks during the week of September 27, 1999 through to October 1, 1999.

It's interesting to note that according to the Texas Ethics Commission Terrence Gaiser and Kurt Budd Wentz haven't ever contributed any money to Judge Ellis. My understanding is that Harris County Criminal District Judges don't have discretion in appointments for trial representation in capital cases, that Harris County Criminal District Judges appoint the next attorney on a preset

5

: 00347

list of available and qualified capital defense trial attorneys. That is, Judge Ellis didn't have any choice but to appoint Mr. Gaiser and Mr. Wentz to represent me at my capital trial. They were the next on the preset list. If there is a kickback scheme, then there was no reason for Mr. Gaiser or Mr. Wentz to contribute money to Judge Ellis. They would have been appointed to represent me at trial regardless.

However, I think appellate appointments are different. It is my understanding that Judge Ellis did have complete discretion to appoint Henry Burkholder and Roland Moore to represent me on appeal. Yes, Mr. Burkholder and Mr. Moore had to be qualified for appointment, but Judge Ellis was free to choose any capital qualified appellate attorney. Judge Ellis chose Henry Burkholder and Roland Moore. Judge Ellis wasn't required to use the next attorneys on any preset capital appeals list or lists.

SPECIAL NOTE: I don't find Henry Burkholder's name on the Second Administrative Judicial Region of Texas list of Qualified Counsel for Appointment in Death Penalty cases. Thus, I'm not really sure that Henry Burkholder was lawfully qualified to represent me on direct appeal.

Henry Burkholder gave Judge Ellis a $500 campaign contribution on September 28, 1999, and another $500 campaign contribution on February 27, 2004. Mr. Burkholder was appointed to represent me on my direct appeal in October of 2002. Since July 1, 1999 Mr. Burkholder gave seven other campaign contributions to Harris County Criminal District Judges, six for $100 each and one for $50. Mr. Burkholder gave Judge Ellis 10 times as much money ($1,000 as

6

: 00348