UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **RONALD JEFFREY PRIBLE,**<br>    **Petitioner,**<br><br>VS.<br><br>**RICK THALER, DIRECTOR,**<br>**TEXAS DEPARTMENT OF CRIMINAL**<br>**JUSTICE, CORRECTIONAL INSTITUTIONS**<br>**DIVISION,**<br>    **Respondent.** | **4:09-cv-01896** |

## PETITIONER'S OPPOSED SECOND MOTION FOR DISCOVERY

TO THE HONORABLE KEITH P. ELLISON, U.S. DISTRICT JUDGE:

Petitioner Ronald Jeffrey Prible, through undersigned counsel, respectfully requests that this Court issue a discovery order, or, in the alternative, authorize service of subpoenas pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts and Rule 45 of the Federal Rules of Civil Procedure, as follows:

**I.    BACKGROUND**

Mr. Prible was convicted of the April 24, 1999, murder of Steve Herrera and Nilda Tirado based on the statements of Michael Beckcom, who testified at Mr. Prible's October 2002 trial that Mr. Prible confessed to him Thanksgiving Day, November 24, 2001, when the two were inmates at the Federal Corrections Institute in Beaumont, Texas. Beckcom maintained that his cellmate, Nathan Foreman, was present throughout the month-long process that began in October of 2001 whereby Beckcom and Foreman, through daily meetings, allegedly gained Prible's confidence. Beckcom further testified that Prible was the sole source of the facts about Steve's and Nilda's murders. Because the State withheld information indicating that Foreman was simultaneously involved with federal prisoners Jessie Moreno and Rafael Dominguez in a related

1

scheme to incriminate another FCI Beaumont inmate named Hermilo Herrero in a separate cold-case murder, it did not come out at Mr. Prible's trial that Foreman had arranged a *quid pro quo* with the lead prosecutor for supplying informants and supposedly substantiating Herrero's alleged jailhouse confession to murdering Albert Guajardo.  Nor did the State disclose that Foreman had been transferred from FCI Beaumont to facilities in Houston while the Harris County Grand Jury that indicted Mr. Prible and Herrero convened.

In federal post-conviction proceedings initiated in 2008, Mr. Prible developed evidence that the State sponsored false testimony, withheld exculpatory evidence and violated his right to counsel.  Mr. Prible's Second Amended Petition (filed August 17, 2012) therefore contains claims of prosecutorial misconduct.  In his first claim for relief, Mr. Prible alleges that in violation of *Giglio v. United States*, 405 U.S. 150 (1972), the State sponsored false testimony that Mr. Prible confessed to jailhouse informants Michael Beckcom and Nathan Foreman.  In his second claim for relief, Mr. Prible argues that in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), the State withheld exculpatory information, including information identifying key exculpatory witnesses, including Carl Walker, Jr., who informed Mr. Prible's federally appointed investigator and counsel in 2010 and 2011 that Beckcom and Foreman had approached him with a *quid pro quo* plan to incriminate Mr. Prible in return for the State's use of its influence to secure sentence reductions.  In his third, fourth and fifth claims for relief, Mr. Prible maintains that while he was represented by counsel, the State, in violation of *Massiah v. United States,* 377 U.S. 201, 206 (1964), utilized inmates, principally Beckcom and Foreman, as agents to develop evidence implicating him in Steve's and Nilda's deaths.

## II.     REQUESTED PRODUCTION

On March 15, 2011, BOP produced 268 pages of documents related to 11 inmates in response to a Harris County District Attorney's Office subpoena.[1]  Exh. 'A' at HCDA000001 (cover letter from BOP).  Sixteen pages pertained to Foreman. *Id.* at HCDA000034-50 (Records of Nathan Foreman).  Twenty-eight pages pertained to Beckcom. *Id.* at HCDA000051-78.  Seven pages pertained to Jessie Moreno. *Id.* at HCDA000138-145.  Nineteen pages pertained to Rafael Dominguez. *Id.* at HCDA000146-165.  BOP withheld third party information.  *Id.* at HCDA000001 (cover letter from BOP).  BOP also stated that "the agency is still attempting to obtain electronic visiting information," and that it would supplement the record if "relevant records are located." *Id.*  Supplements were not provided to Mr. Prible and, to his knowledge, the State did not receive supplements.

BOP's March 15, 2011, production includes documents maintained by FCI Beaumont, but does **not** include records from other state or federal in-transit or holding facilities to which Foreman, Beckcom, Moreno or Dominguez were transferred during the relevant time frames set forth below.  Nor does the March 15, 2011, production contain any information regarding visits or interviews between Foreman or Beckcom and state or federal law enforcement officials.  Review of BOP disclosures related to other inmates, particularly Beckcom and Moreno, indicates that BOP withheld this information.

In response to a separate request for production, the Harris County District Attorney's Office disclosed its trial file.  On November 26, 2001, the lead prosecutor sent a letter to FCI Beaumont requesting a December 10, 2001, meeting with Beckcom.  Trial transcripts confirm

---

[1] Unknown to Mr. Prible, three days before he filed his February 18, 2011, motion in this Court for production of BOP records (Dkt. Entry #14, filed under miscellaneous number 4:08 MC 316), Harris County District Attorney's office subpoenaed similar records. Exh. 'A' HDCA00002-3.  The parties then exchanged production.  The BOP response to Harris County was more complete, so excerpts from the response to HCDA's subpoena are attached as exhibits to this motion.  The Bates numbering is the HCDA's system.

that this meeting took place at the federal penitentiary.  However, BOP did not produce a copy of the letter or any other records related to the December 10, 2001, meeting between the HCDA personnel and Beckcom.  The March 15, 2011, disclosure of Jessie Moreno's records also do not contain any information related to his known July 3, 2001, interview with the lead prosecutor. Exh. 'A' at HCDA000138-145.  Finally, the records do not contain logs, notes, phone records or memoranda drafted by or maintained by FCI Counselors.  However, transcripts confirm that FCI Beaumont counselors facilitated communication between inmates whom the State used to investigate and prosecute Mr. Prible and the Harris County District Attorney's Office.  Beckcom testified that he contacted the lead prosecutor using his FCI Counselor's telephone.

Records related to Foreman that BOP has disclosed so far show that on January 26, 2000, Nathan Foreman was admitted to a federal "in-transit facility."  *Id.* at HCDA000035.  February 28, 2000, was the date of Foreman's "admission & orientation" at FCI Beaumont's Medium facility. *Id.* at HCDA000038.  Between August 3, 2001, and August 31, 2001, while the 177th Grand Jury convened, Foreman was released from FCI Beaumont and transferred to Houston, Texas on a Federal Writ. *Id.* at HCDA000034.  Between March 28, 2002, and May 13, 2002, coinciding with Herrero's April 2002 trial, Foreman was transferred by State Writ from FCI Beaumont to an "in-transit" facility. *Id.*  On July 11, 2002, Foreman was transferred to a low security facility in Englewood, Colorado.  *Id.* at HCDA000034.  BOP records related to Beckcom show that on October 5, 2000, he was admitted to FCI Beaumont Medium, *id.* at HCDA000053, and that on March 17, 2003, he was transferred to FTC Oklahoma City.  On March 9, 1999, Moreno was designated at FCI Beaumont Medium, and on June 12, 2002, transferred to FTC Oklahoma City. *Id.* at HCDA000138.  On September 13, 1999, Dominguez

4

was designated at FCI Beaumont Medium and on July 3, 2002, was transferred out. *Id.* at HCDA000148.

Mr. Prible therefore seeks an order for production of, or an authorization to subpoena, documents related to Michael Beckcom (BOP # 49349-079), Nathan Foreman (BOP # 07831-078), Jesse Moreno (BOP # 72731-079) and Rafael Dominguez (BOP #79233-079), including letters, memos and other handwritten, types or computer generated paper documents, as well as copies of electronically/computer stored records from the following departments and agencies:

**(i)** from the Harris County District Attorney's Office for all information related to any and all proceedings of the Harris County Grand Jury concerning the capital murder case against Ronald Jeffrey Prible and against Hermilo Herrero, including, but not limited to, information in the State's trial files in *State v. Prible,* cause number 921126, and *State v. Herrero*, cause number 903122, concerning Grand Jury proceedings, including witness lists and summaries of testimony, whether handwritten, typed or stored electronically;

**(ii)** from the Harris County Sheriff's Department for all records, including reports and supplements to reports for the period January 1, 1999, to December 31, 2002, related to:

(a) Nathan Foreman, specifically including, but not limited to, Harris County Jail records for the periods March 28, 2002, to July 11, 2002, and August 1, 2001, to November 1, 2002, identifying visitors by name or by department or positions, including records of any meetings, interviews or visits, with Harris County Sheriff's Department, Harris County District Attorney's Office, or Houston Police Department personnel;

(b) Michael Beckcom, specifically including, but not limited to, Harris County Jail records for the period September 30, 2002, to December 30, 3002, identifying visitors by name or by department or positions, including records of any meetings, interviews or visits, with Harris County Sheriff's Department, Harris County District Attorney's Office, or Houston Police Department personnel;

(c) Jessie Moreno, specifically including, but not limited to, Harris County Jail records for the period March 29, 2002, to May 6, 2002, identifying visitors by name or by department or positions, including records of any meetings, interviews

5

or visits, with Harris County Sheriff's Department, Harris County District Attorney's Office, or Houston Police Department personnel; and

(d) Rafael Dominguez, specifically including, but not limited to, Harris County Jail records for the period March 29, 2002, to May 6, 2002, identifying visitors by name or by department or positions, including records of any meetings, interviews or visits, with Harris County Sheriff's Department, Harris County District Attorney's Office, or Houston Police Department personnel.

**(iii)** the United States Attorney's Office for the Southern District of Texas for all information in its possession related to Nathan Foreman for the period January 26, 2000, to December 31, 2002, including specifically, but not limited to, all records related to any federal writs issued between August 1, 2001, and September 1, 2001, commanding the Bureau of Prisons transfer Nathan Foreman to state or federal facilities in Houston, Texas and any communication regarding Foreman from the other law enforcement or prosecuting agencies;

**(iv)** the Bureau of Prisons for all records related to Nathan Foreman, Michael Beckcom, Jessie Moreno, and Rafael Dominguez, including, but not limited to, records identifying all visitors who met with Foreman, Beckcom, Moreno or Dominguez, or requested to meet with any of these individuals, at FCI Beaumont, the Federal Detention Center in Houston, Texas, or any Federal holdover center or other facility of the Bureau of Prisons during the period from April 1, 2001, to December 31, 2002.  This request encompasses all records related to Foreman, Beckcom, Moreno or Dominguez created or maintained by any BOP Counselor; and

**(v)** the U.S. Marshal Service for all records related to Foreman, Beckcom, Moreno and Dominguez, including, but not limited to, all records related to requests to transfer any of these individuals or to meet with or interview any of these individuals during the period from April 1, 2001, to December 31, 2002.

**III.    STANDARDS**

Rule 6(a) of the Rules Governing Section 2254 cases in the United States District Courts provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure." *See, also, Bracy v. Gramley,* 520 U.S. 899, 904 (1997). In *Herrera v. Collins*, 506 U.S. 390 (1993), Justice Blackmun instructed that the "district court retains discretion to order discovery … when it would help the court make a reliable determination with respect to the prisoner's claim." *Id.* at 444 (Blackmun, J., dissenting on other grounds) (citing *Harris v. Nelson*, 394 U.S. 286, 299-300 (1969)).

In the case of documents in possession of United States agencies, *Touhy* regulations guide discovery. *United States ex rel. Tuohy v. Ragan*, 340 U.S. 462 (1951); 5 U.S.C. § 301. The Bureau of Prisons ("BOP") and United States Attorney's Offices follow Department of Justice *Touhy* regulations. *See* 28 C.F.R. 513.33; 28 C.F.R. 16.21 et seq. Pursuant to these regulations, on September 13, 2012, Petitioner served the United States Attorney's Office for the Southern District of Texas with a letter request for disclosure of the records referred to in the instant motion.

Under these regulations, parties seeking documents for proceedings in state court may have to file suit under the Administrative Procedures Act. However, litigants already in federal court get the full benefit of Federal Rules of Civil Procedure governing production of records, including the use of subpoenas pursuant to Rule 45. As the Circuit Court for the District of Columbia stated, "an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45." *Watts v. Securities and Exchange Commission*, 482 F.3d 501, 516 (D.C. Cir. 2007). Therefore, if

privilege cannot be successfully asserted and the burden of production relative to the importance of the requested document is reasonable, an agency must disclose the requested information.

## IV. GOOD CAUSE FOR DISCOVERY

### A. HARRIS COUNTY RECORDS SHOULD BE DISCLOSED.

*Grand Jury Information*

**1. Mr. Prible has developed prima facie evidence that Foreman, or information derived from Foreman, was introduced in Grand Jury proceedings.**

Within days of Steve and Nilda's April 24, 1999, murders the State developed all the non-confessional evidence it later introduced at trial. However, this evidence was not sufficient to charge or indict Mr. Prible in 1999 or in 2000 when the lead prosecutor reviewed the case again. However, on April 4, 2001, former FCI Beaumont inmate Jesse Moreno wrote the lead prosecutor that he had information on the murder of Alberto Guajardo. On July 3, 2001, the lead prosecutor interviewed Moreno and audiotaped his statements. On tape, Moreno tells the lead prosecutor that in late November or early December 1999, Herrero confessed to killing Guajardo not only to Moreno, but also, at the same time, **to Nathan Foreman and Rafael Dominguez**. Both inmates had supplied the lead prosecutor with jailhouse informant testimony in other cases. On July 5, 2001, two days after learning that Dominguez and Foreman, as well as Moreno, were incarcerated in FCI Beaumont, the State charged Mr. Prible with capital murder.

After being charged, Mr. Prible was held in isolation at FCI Beaumont Low for approximately three weeks. On July 25, 2001, though, he was moved into the general population at the FCI Beaumont's Medium facility. That same day, July 25, 2001, Foreman was returned from isolation to the general population in the very unit or block where Prible had been assigned.

According to Carl Walker, Jr., Mr. Prible was immediately targeted by Foreman and Foreman's cellmate, Michael Beckcom.

On August 3, 2001, one week after Foreman and Prible were released into the general population, Foreman was "releas[ed] on [a] federal writ" from FCI Beaumont and taken to a transit facility in Houston. Exh. 'A' at HCDA000034. Foreman does not appear to have been involved at the time in any federal case as a defendant or a witness, so the use of the *federal* writ is inexplicable, except as a way for the prosecution to move Foreman so he could not be detected by Prible's state attorneys. Review of Foreman's criminal records does not indicate Foreman was summoned to be a defendant or to be a trial witness in any state case either. However, the Grand Jury 177th District Court had convened by the time the State moved Foreman to Houston.

Harris County JIMS records indicate that the lead prosecutor, operating under her maiden name, "Kelly Renee Jalufka," reviewed and presented this case to this Grand Jury. *Exh. 'B'* (Harris County JIMS Records regarding Mr. Prible). On August 29, 2001, these records show that the Grand Jury returned indictments against both Herrero and Mr. Prible. *Id.; Exh. 'C'* (Harris Count JIMS records regarding Herrero). Two days after the Grand Jury finished its work, Foreman was returned to FCI Beaumont. *Exh. 'A'* at HCDA000034. According to transcripts of trial, after returning to FCI Beaumont Medium, Foreman gave his cellmate Beckcom the lead prosecutor's phone number for the purpose of arranging a deal for testimony against Mr. Prible. 26 RR 23.

### 2. During 2010-2011 proceedings in State court Mr. Prible diligently sought Grand Jury records.

After this Court dismissed Mr. Prible's prosecutorial misconduct claims without prejudice pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), Mr. Prible filed a successor application in State court and then subpoenaed Bureau of Prison records of Nathan Foreman and

9

other FCI Beaumont inmates. BOP asserted sovereign immunity, so Mr. Prible was forced to move this Court, pursuant to *Touhy* regulations, to order production of the BOP records, which suggest that Foreman was involved in the return of the August 29, 2001 indictment against Mr. Prible.

Based on the BOP records, Mr. Prible filed a motion in the 351st District Court for disclosure of grand jury transcripts and records. The Assistant District Attorney in charge of the State's opposition to Mr. Prible's habeas action agreed to look for and disclose relevant grand jury documents; however, she reported that the relevant records either were not made or were not retained. This search, though, did not include, as far as Mr. Prible can ascertain, a review of the State's trial file for documents related to Grand Jury proceedings against Mr. Prible.

Recent developments in the 1999 murder case against David Temple justify discovery of any grand jury information in the State's file. *Exh. 'D'* (Houston Chronicle articles dated Sept. 11-12, 2012). The lead prosecutor in Mr. Prible's case also prosecuted Temple. *Id.* In the *Temple* case, the potentially exculpatory information was suppressed because the lead prosecutor classified the information as privileged or confidential. In the instant case involving Mr. Prible, the same lead prosecutor labeled inmate letters containing information identifying exculpatory witnesses attorney work product, thereby preventing its disclosure to trial and state habeas attorneys. Because of the history of suppressing exculpatory information by classifying it as privileged, this Court should order the State to disclose the entire trial file, including any and all information labeled confidential, because it pertains to grand jury proceedings, or else authorize Mr. Prible to serve the Harris County District Attorney's office with a subpoena for this information. Since the Harris County District Attorney has already disclosed the great majority

10

of the file, any difficulty or expense for locating, copying and providing withheld documents will be *de minimis*.

> **3.     The Grand Jury information Mr. Prible seeks is calculated to support Mr. Prible's prosecutorial misconduct and actual innocence claims.**

Proof that Foreman or Beckcom, or that information purportedly obtained from either one, was introduced in proceedings of the 177th District Court Grand Jury that resulted in the indictment of Mr. Prible on August 27, 2001, would demonstrate that Beckcom testified falsely, inter alia, about the following critical matters:

(a)  That Foreman and Beckcom initially had no intention of incriminating Mr. Prible;

(b)  That Prible confessed only after a prolonged process through which Foreman and Beckcom gained Mr. Prible's confidence; and

(c)  That Mr. Prible was the sole source of Beckcom's and Foreman's information about Steve and Nilda's murder.

Furthermore, proof that information from either Beckcom or Foreman was introduced into Grand Jury proceedings that took place *before* Mr. Prible's alleged Thanksgiving Day confession (i) would demonstrate that the State knew that Beckcom testified falsely about the foregoing matters (a-c), and (ii) would corroborate the statements of former FCI Beaumont inmate Carl Walker, Jr., who told Mr. Prible's federally appointed investigator and counsel that Foreman and Beckcom knew critical details about the murders before they encountered Prible, and schemed, along with others, to incriminate Mr. Prible from the date he was transferred into the FCI Beaumont general population on July 25, 2001. The information sought is therefore calculated to support Mr. Prible's allegations of prosecutorial misconduct, his "gateway" innocence argument against procedural default, and his actual innocence.

11

### *Harris County Sheriff's Department Records*

4. **Harris County Jail records are reasonably calculated to contain information substantiating allegations that from the outset the State planned to use Foreman as an agent against Mr. Prible.**

For the reasons described above in section **A.1-3** of this motion, Mr. Prible is entitled to discover information related to the transfer of Foreman to Houston, Texas during the time that the Grand Jury of the 177th Harris County District Court was deciding whether to indict Mr. Prible. Records showing that Harris County detectives or investigators, particularly those known to be involved in the Prible case, met with Foreman during this time frame will substantiate the claims of prosecutorial misconduct outlined in section **A.3** above. The request, further, is limited in time and will not require voluminous production of records.

5. **Harris County Jail records are reasonably calculated to contain information regarding additional contacts between the State and its jailhouse informants.**

Through BOP phone records, Mr. Prible demonstrated that the State minimized the number of contacts the Harris County District Attorney's office. The lead prosecutor allowed Beckcom to falsely testify that he phoned the lead prosecutor two or three times. 26 RR at 26. BOP Tru-Fone records document nine phone calls in 2002 alone just from Beckcom on top of unrecorded phone calls placed through counselors. *Second Amended Petition* at 67 (referring to *Exh. 'L'* (TruFone log for M. Beckcom)). Beckcom also testified that he only met with prosecutors on four occasions, on December 10, 2001, to provide them his handwritten account of Mr. Prible's alleged confession, twice before trial for a total of one and a half hours and once more just to pass on when trial would take place. 26 RR at 27-28. Mr. Prible has grounds therefore for seeking to discover additional contacts between the State and Beckcom as well as documents that may demonstrate more prolonged meetings with Beckcom before trial.

Evidence that the State suppressed evidence showing similar prosecutorial misconduct using interrelated rings of FCI Beaumont informants against Herrero is important to Mr. Prible's contention that his due process right to impeach the integrity of the State's investigation. *See Second Amended Petition,* at 16 (citing *Kyles v. Whitley,* 514 U.S. 419, 448-449 (1995)). Harris County jail records for Moreno and Dominguez are therefore relevant to Mr. Prible's impeachment of the State's investigation.

### B.     DOCUMENTS SOUGHT FROM FEDERAL AGENCIES SHOULD BE PRODUCED.

#### *United States Attorney's Office Records*

**1.     United States Attorney's Offices files related to the Federal Writs issued to transfer Foreman in 2001 are reasonably calculated to contain information supporting Mr. Prible's claims.**

According to BOP records, federal writs were issued on or about August 3, 2001. This federal process evidently commanded the Bureau of Prisons to transfer Foreman from FCI Beaumont to Houston, Texas, around the time that the Grand Jury of the 177th District Court that first indicted Mr. Prible was convened. Mr. Prible was then transferred back to FCI Beaumont shortly after this Grand Jury returned the indictment. In order to cause a federal court to issue a federal writ, the moving party must justify its issuance. Furthermore, the writ takes the form of an order from the Court that is then served upon an individual or agency, such as BOP, from which action is sought. Records of the writs issuance have to exist.

In Mr. Prible's case, any information generally indicating that the reason a federal writ was issued on or about August 3, 2001, was because Foreman was needed in a state criminal investigation or, particularly stating that he was needed in an investigation related to Mr. Prible, would be material. Such information would falsify Beckcom's claims at trial that he and Foreman had no information about Mr. Prible's case until Mr. Prible allegedly began "opening

13

up" about killing Steve and Nilda sometime in October of 2001. The information would also substantiate Mr. Prible's allegations that the State was (i) using agents to develop incriminating evidence in violation of his Sixth Amendment rights to counsel, and (ii) using Foreman, in particular, and as Carl Walker, Jr., maintained, as a conduit to pass information and run the jailhouse investigation of Mr. Prible.

> 2. **Mr. Prible cannot obtain information regarding the issuance of the federal writ for Foreman without this Court's order.**

Whether a writ has issued cannot be ascertained from the ECF filing system used by the United States District Courts. Furthermore, the writ may be applied for and served under seal or under an order that forbids disclosure because the subject matter is related to a criminal investigation. BOP did not produce a copy of the federal writ used to transfer Foreman in response to this Court's 2011 order for disclosure of Foreman's records.

Mr. Prible does not have any information regarding the specific U.S. Assistant Attorney who presumably approached the United States District Court to issue the writ for Foreman. Furthermore, the writ may have been issued out of either the Southern District or the Eastern District of Texas. The conviction on drug offenses that sent Foreman to FCI Beaumont was out of the Eastern District of Texas. *See USA v. Foreman,* 1:99-cr-00013-RC -KFG-2 (E.D.Tex, filed Jan. 21, 1999).

A court order for discovery, or authorization service of a Rule 45 subpoena on the United States Attorney's Offices for the Southern and Eastern Districts of Texas is therefore needed so that Mr. Prible can obtain even the most basic information about the federal writ issued on or about August 3, 2001, pertaining to Foreman.

## *Bureau of Prison and U.S. Marshal's Records*

3. **Bureau of Prison records are reasonably calculated to contain information substantiating Mr. Prible's Due Process allegations that the State was aware of, and involved with, a ring of informants angling to incriminate Mr. Prible in return for State favors.**

BOP facilitated the State's use of jailhouse informants to incriminate Mr. Prible. BOP Counselors permitted informants, such as Beckcom, to use their phone lines rather than monitored and tape recorded lines to contact the lead prosecutor. BOP officials let the State use their offices to interview informants. According to Beckcom, he met with the lead prosecutor and her investigator on December 10, 2012, "in the lieutenant's office." 26 RR at 25. Moreno was delivered by the U.S. Marshal Service for the July 3, 2001, interview by the lead prosecutor. U.S. Marshals would also have been responsible for moving Foreman in August of 2001 pursuant to federal writs. Records sought from BOP and the U.S. Marshal Service are therefore reasonably calculated to document known contacts between the lead prosecutor and FCI Beaumont informants that BOP and the U.S. Marshal Service facilities, as well as reveal unreported contacts between the State and these informants.

Wherefore, Mr. Prible respectfully requests that the Court order the foregoing documents disclosed or authorize Mr. Prible to issue subpoena for these records pursuant to Rule 6 of the Rules Governing 2254 proceedings and Rule 45 of the Federal Rules of Civil Procedure.

    Respectfully submitted,

    HILDER & ASSOCIATES, P.C.

By:   /s/ *James Rytting*
      Philip H. Hilder
      State Bar No. 19620050
      James Rytting
      State Bar No. 24002883
      819 Lovett Boulevard
      Houston, Texas 77006

                    Telephone (713) 655-9111
                    Facsimile (713) 655-9112
                    ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

On September 14, 2012, a copy of Mr. Prible's second motion for discovery was served upon Respondent by ECF filing or U.S. Mail, return receipt requested, addressed to the Texas Attorney General, Capital Litigation, P.O. Box 12548, Capitol Station, Austin, Texas 78711.

                    */s/ James G. Rytting*
                    James Rytting

## CERTIFICATE OF CONFERENCE

On September 14, 2012, I conferred with Assistant Attorney General, Tom Jones, who is opposed to the motion for discovery.

                    */s/ James G. Rytting*
                    James Rytting