# EXHIBIT "24"

RECEIVED IN
COURT OF CRIMINAL APPEALS
JUN 2 5 2007
Louise Pearson, Clerk

CAUSE NO. 921126

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE 351ST |
| | ) | |
| VS. | ) | DISTRICT COURT |
| | ) | |
| RONALD JEFFERY PRIBLE JR. | ) | OF |
| | ) | |
| | ) | HARRIS COUNTY |
| | ) | |
| | ) | TEXAS |

## SUBSEQUENT APPLICATION FOR A WRIT OF HABEAS CORPUS

## THIS IS A CAPITAL CASE

Petitioner, **RONALD PRIBLE JR.**, is currently confined on death row the Polunsky Unit in Livingston, Texas. I, acting on my own behalf pursuant to the article 11.071 of the Texas code of criminal procedure, I petition this court to issue a writ of habeas corpus and to order my release from confinement on grounds that my custody violates the Constitution and laws of the United States and Texas.

"Do you know what it means to incarcerate an innocent man? It is kidnapping, it is torture, and in the case of capital punishment, it is murder!"

A. INTRODUCTION

Explain Issues:

B. STANDARD FOR THE COURTS CONSIDERATION OF THIS BRADY CLAIM.

In Brady VS. Maryland, 373 U.S. 83 (1963) the United States Supreme Court held that "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution". ID. at 87 subsequent

decisions have abandoned the prerequisite of a defense request for exculpatory evidence before an accused may benefit from the court's decision in Brady, United States VS. Bagley, 473 U.S. 667, 682 (1985). Moreover, the court has rejected any distinction between impeachment and exculpatory evidence for purposes of Brady analysis. ID at 677; Giglio VS. United States 405 U.S. 150, 154 (1972). Under Brady and its progeny a proceeding is rendered fundamentally unfair if: (1) The prosecution is suppressed favorable evidence; and (2) the evidence was material to either the guilt or punishment, Brady VS. Maryland, 373 U.S. 83, 87 (1963). See Kyles VS. Whitley, 514 U.S. 419, 432 (1995); United States VS. Bagley, 473 U.S. 667, 683 (1985); Blackmon VS. Scott, 22F, 3D, 560, 564 (5th CIR), Cert. denied. 513 U.S. 1060 (1994); Harm VS. State, 183 S.W. 3D 403, 406 (Tex. Crim. App. 2006); exparte Adams, 768 S.W. 2D 281, 290 (Tex Crim. App. 1989). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different" Kyles, 519 U.S. at 432; Bagley, 473 U.S. at 632; Blackmon, 22F.3D at 564; Adams, 768 S.W. 2D at 290. The Kyles decision clarifies four significant aspects of materiality analysis under Brady. First, to demonstrate materiality, a petitioner is not required to demonstrate by a preponderance of the evidence that the suppressed evidence, if known to the defense, would have ultimately resulted in an acquittal of a life sentence Kyles, 514 U.S. at 434. The inquiry is more properly whether the suppressed evidence undermines confidence in the jury's decision. ID. At 1566. Second, materiality analysis "is not a sufficiency of the evidence test". ID (emphasis added). The supreme court clearly stated, "(A) Defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict (or return a

sentence of death)". ID. At 434-35. One demonstrates a Brady violation by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ID. (foot note omitted); see also Lindsey VS. King, 769 F. 2D 1034, 1042 (5th Cir. 1985) (suppress impeachment evidence may have consequences for the case far beyond discrediting the witness' testimony). Third, harmless error analysis is not applicable to Brady violations. Kyles 514 U.S. at 435. The Kyles court stated, "Once a reviewing court applying Bagley has found constitutional error there is no need for further harmless error review", ID. Finally materiality must be assessed "In terms of the suppressed evidence considered collectively, not item by item." Kyles, 514 U.S. at 436 as is discussed herein, when the suppressed evidence in my case is considered collectively, as it must be under Kyles, there is a reasonable probability that the result of the guilt/innocence phase of my trial would have been different.

C. THE EXCULPATORY EVIDENCE

The prosecution (Kelly Siegler) knowingly and intentionally hid her true ties to Mike Beckom and her jail house informants in Beaumont Federal Prison. She gave impression Mike Beckom just an inmate who comes forward with some information of a confession. She gives impression to court Beckom just an inmate who contacted her out of clear blue to be forthcoming with some information of a murder because he believed it to be the right thing to do. Truth be told she encouraged Beckom with the incentive of a letter to the prosecutor asking for a time reduction to get close to Prible and find any information that would aid her in making her case. (This is a Messiah issue: Massiah VS. United States, 377 U.S. 201 (1964) when it recruited a prisoner to act as the government agent in

deliberately elicited incriminating information from Prible. See Creel VS. Johnson, 163F.3d 385, 393 (5th Cir 1988). When Prible continued to tell Beckom he was innocent of this crime Beckom took it upon himself to fabricate a confession (See his statement obvious impossible untruth) to ensure he would receive some form of payment from Siegler, (what is more priceless than your freedom?) Siegler was using Beckom and his group of friends from Federal Prison to aid her in making cases (Name of those used: Nathan Foreman, Mike Beckom, Rafael Dominquez, as well as others not named here) only upon me being wrongly convicted and placed on Death Row has the actions done in the dark come to light. Siegler never thought the truth of what she did would be found out. She used Mike Beckom, Celly Nathan Foreman and his best friend Rafael Domiquez to say Hermilio Herrero confessed to them a month before my trial at his trial. Had this information been known I could have showed this for what it truly was, a conspiracy by one Kelly Siegler to make cases where there was no evidence. (She took it upon herself to make evidence which is a criminal action itself.) Nathan Foreman could not be used to testify against Herrero because when he said he confessed to him, records showed he was not even on compound. (Never the less Foreman was reinstated for a state violation when his time was up in Federal Prison for his friends assistance to Siegler). One more note on the subject of Foreman, his uncle famous boxer George Foreman is personal friends with Siegler) Had I been given this information I could have shown these inmates were waiting on me before I stepped on compound to get close to me in hopes of getting information they could give to Siegler in hopes of a reward of time reduction (I was at a low security prison about to go home when I was charged with Capital Murder and awaiting a bench warrant to Harris County, my level was raised and I

5

was sent to Medium. This is where Siegler informants at her request were already in waiting to get close to me so they could try to obtain information from me as well as boost their creditability they knew me. Had I been made aware of the ties she had to Beckcom and his group of friends who aided Siegler in other cases, I could have showed this as it truly a prosecutor who had Foreman recruit his friends to enlist in Siegler army of deceit. To carry out what ever mission she task them with in hopes of a time cut. The fact that they lie as to the true facts of their conversation with whom they deem a target of opportunity is just collateral damage to them.

D. EVIDENCE OF SUCH

Hermilio Herrero case where Siegler used same group of prison friends (Forman Group) on him.

Carl Walker who was apart of this group who has now come forward with information to such. (Carl Walker # 04770-017 who currently in federal prison and is not getting any form of payment to make known what he is).

Detective Brown same Homicide Detective who testified at my trial was Hermilio Herrero homicide investigator as well. (He played dumb at my trial, his own words "poor detective work" and goes on to lie saying "He never saw those pictures taken of my body nude at homicide station in interrogation room". They showed I had no marks on my body, he took the pictures.

Out of 3000 inmates, Herrero and I are supposed to have confessed to same prosecutor ~~group~~ of jail house informants she recruited and did not make known. Also same homicide detective who just unknowing of all this as well works both cases. This is not a coincidence and my jury had a right to know this!!!

E. THE SUPPRESSED EVIDENCE IS MATERIAL

Materiality must be assessed "in terms of the suppressed evidence considered collectively, not item by item". Kyles, 514 U.S. at 436.

1. Prosecution knowingly and intentionally hid true ties to Mike Beckom and her other jail house informants roles in this as well. (That means their information in any shape, fashion, or form).
2. Prosecution fails to make information as to her use of informants in regards to Hermilio Herrero case and how informants roles are so interconnected in my case.
3. This was a clear act on prosecution behalf to cover up any connection between Herrero case and Prible case. (The informants involved are one and same as far as group, their roles, and ties to the prosecutor).
4. Detective Brown who swear out a warrant the victims were shot with a 38 pistol and records show I purchased a 38 pistol from Carters Country and I have not been forth coming with it to be ruled out as the murder weapon. Now first of all, no one ever came and asked me for the 38 pistol so I could give it to be tested and shown not to be the murder weapon. (How

      can I not be forth coming with something I never been asked to come forward with?) It comes out at my trial they do not know the caliber of the murder weapon but my 38 was not it. Now Detective Brown swore out falsely the affidavit for my arrest to get me charged so Seigler could put her plan in action of getting me next to her informants. (She knew it would up my custody level and I would be placed at medium with Foreman group). This was a conspired act by one Kelly Siegler (Dram Queen) to fabricate evidence to bring back a conviction and put another notch in her belt.

If this information was made known there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. See Kyles, 519 U.S. at 432; Bagley, 473 U.S. at 682; Blackmon, 22 F. 30 at 564; Adams, 768 S.W. 2D at 290.

F. THIS BRADY CLAIM SATISFIES THE STANDARD FOR FILING A SUCCESSIVE APPLICATION UNDER ARTICLE 11.071 SECTION 5.

Article 11.071, section 5 (a) prohibits the consideration of a successive application unless the applicant can establish on of the following showings:

    (1) The current claims and issues have not been and could not have been presented previously in a timely initial application…because the factual or

legal basis for the claim was unavailable on the date the applicant filed the previous application.

(2) By a preponderance of the evidence, but for a violation of the United States constitution no rational juror would have found the applicant guilty beyond a reasonable doubt.

Tex. Code Crim. Proc. Art. 11071 section 5 (a). This claim meets the standards set forth in Art. 11.071, section 5 (a) because it could not have been presented in a prior application because the factual basis was unavailable at that time. Information was never made known by the prosecution team, the evidence was never disclosed to the defense in this case, and in many others, the Court of Criminal Appeals has found that previously unpresented Brady claims and claims based on newly discovered evidence of innocence will meet the requirements of section 5 and this be considered on the merits in State Court. See exparte Blair, No. 40, 719-3 (Tex.Crim. App. May 30, 2001). See exparte Reed, No. 5096103 (Tex. Crim. App. October 19, 2005) (authorizing successive proceeding on a claim that the state with held impeachment evidence of eyewitness and evidence of innocence); Exparte Washington, No. 35,410-02 (Tex. Crim. App. 2002) (authorizing successive proceedings on claim that state with held information regarding criminal records of punishment phase witnesses and presented false and misleading testimony); Exparte Murphy, No. 30. 035-02 (Tex. Crim. App. Sept 13, 2000) (authorizing successive proceeding on a claim that prosecutors relied on perjured

testimony); Exparte Faulder, No. 10, 395-03 (Tex. Crim. App. June 9, 1997) (authorizing successive proceedings on a claim that prosecutors with held the correct name and address of a witness with exculpatory information). Accordingly, this court should issue the writ pursuant to article 11.071 section 6 and allows further proceedings on this claim in accordance with the statute. Moreover, this court should delay its decision regarding the findings of fact and conclusions of law on Mr. Prible, claims currently pending before court so that they may be considered in conjunction with the prosecution conspiracy with jail house informants to give false testimony for time reduction and failing to make information available to defense. (Clearly a Brady violation).

## CONCLUSION AND PRAYER FOR RELIEF

In this petition and this document Prible has demonstrated good cause for court to grant relief. Wherefore, petitioner Prible prays that the honorable court:

(1) Allow him to be heard on matters contained in this document, if necessary, to present testimony in support there of.

(2) Grant other such relief as Law and Justice require.

Respectfully submitted this  14  day of June 2007.

_____
Ronald J. Prible Jr.