UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD JEFFREY PRIBLE, | § | |
| Petitioner, | § | |
| | § | No. 4:09-cv-1896 |
| v. | § | (Death penalty case) |
| | § | (U.S. Dist. Judge Keith P. Ellison) |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department | § | |
| Of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent | § | |

**RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE
A THIRD AMENDED PETITION AND TO EXPAND THE RECORD
WITH EVIDENCE ATTACHED THERETO**

Prible, sentenced to death in a Texas court for shooting deaths of Nilda

Tirado and Esteban Herrera, Jr., seeks federal habeas corpus relief. *See* 28

U.S.C. § 2254 (Westlaw 2015). His conviction and sentence were affirmed on

appeal, *Prible v. State*, 175 S.W.3d 724 (Tex. Crim. App. 2005), and his petition

for certiorari review was denied, *Prible v. Texas*, 546 U.S. 962 (2005). His

initial application for state habeas corpus relief was denied and two additional

state applications were dismissed without a merits review, *Ex parte Prible*, No.

WR-69328-01, -02, -03, 2008 WL 2487786 (Tex. Crim. App. June 18, 2008)

(unpublished), and certiorari review was denied, *Prible v. Texas*, 129 S. Ct.

1307 (2009). He filed a federal petition for habeas corpus relief (Docket # 1)

and a first amended petition (Docket # 7), which the Respondent, here called

"the Director," answered (Docket # 12). This Court then stayed and held in abeyance federal proceedings to allow Prible to return to state court to offer previously unpresented claims. (Docket # 23.) After the Court of Criminal Appeals dismissed Prible's fourth application as abusive, *Ex parte Prible*, No. WR-69,328-04, 2011 WL 5221864 (Nov. 2, 2011), Prible returned to this Court and filed a second amended petition (Docket # 47), which the Director answered (Docket # 56). After this Court approved discovery (Docket # 77), Prible now moves to file his third amended petition and seeks to expand the record (Docket No. 86). The motions should be denied.

## CLAIMS

In his proposed Third Amended Petition, Prible alleges the following:

Claim No. 1. The state sponsored false and misleading testimony and surreptitiously used state agents to gather evidence (Docket # 86-2 at 129–40);

Claim No. 2. Prible was deprived of due process when the State suppressed evidence that would have been favorable to the defense, to-wit, that witnesses Michael Beckcom and Nathan Foreman were part of a snitch ring whose members tried to gain favors by fabricating false confessions (*id.* at 141–61);

Claim No. 3. Prible was deprived of his Sixth Amendment rights when the State surreptitiously used state agents to gather evidence (*id.* at 162–68);

Claim No. 4. Prible received ineffective assistance of trial counsel (*id.* at 169–73);

Claim No. 5. The State suppressed evidence that the State surreptitiously gathered evidence through agents (*id.* at 174–75);

Claim No. 6. Prible was denied due process when the State introduced evidence of extraneous offenses, specifically, evidence about the death of the three children (*id.* at 176–86);

Claim No. 7. Prible received ineffective assistance when counsel failed to effectively challenge the testimony of State's expert William Watson regarding the semen found in the mouth of the victim, Nilda Tirado (*id.* at 187–97);

Claim No. 8. Prible was deprived of his right to an impartial jury because the venire did not reflect a fair cross-section of the community (*id.* at 198–204); and

Claim No, 9. Prible is actually innocent of the crime (*id.* at 205–08).

In addition to the claims presented to the Court previously, Prible adds two claims:

Claim No. 10. The state sponsored false and misleading testimony through expert William Watson (Docket # 86–2 at 218–24), and

Claim No. 11. Prible received ineffective assistance when trial counsel failed to use Prible's phone records to rebut the State's rape theory (*id.* at 224–27).

## STATUTE OF LIMITATION

This Court need not permit Prible to file a third amended petition for the sole purpose of appending Claim Nos. 10 and 11. Both are barred by the statute of limitation.

A federal petition for writ of habeas corpus is governed by a one-year statute of limitation. The limitation period runs from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (Westlaw 2015).

The period is tolled during the time in which a properly filed application for state postconviction or other collateral review is pending. *See* § 2244(d)(2). The period is not tolled, however, when the petition is before a federal court. *See Duncan v. Walker*, 533 U.S. 167, 172–73 (2001).

Prible's conviction became final when the Supreme Court denied certiorari review of his state appeal on October 17, 2005. *Prible v. Texas*, 126 S. Ct. 481. The limitation period was tolled already, though, because he had filed his state habeas application on November 18, 2004. (01, 02, 03 SHCR 2.)[1] After the Court of Criminal Appeals denied habeas relief on June 18, 2008, *Ex parte Prible*, 2008 WL 2487786,[2] Prible had one year, until July 19, 2009, to file his federal petition. *See* § 2244(d)(1). He timely filed his original petition on June 18, 2009. (Docket # 1) The federal filing did not toll the running of the limitation period, which expired the next day, on July 19, 2009.

Prible's proposed third amendment adds two new claims more than six years after the limitation period has run. He does not cite new constitutional law, *see* § 2244(d)(1)(C), or newly discovered facts, *see* § 2244(d)(1)(D), to suggest a later-beginning limitation period. The claims, Numbers 10 and 11, are barred by limitation. *See Ellis v. Quarterman*, Civil Action No. H-07-2768, 2008 WL 2963467, at *6 (S.D. Tex. July 30, 2008) (applying statute of

---

[1] "01, 02, 03 SHCR" refers to the clerk's record of the papers filed in connection with Prible's first, second, and third state habeas applications, followed the page number.

[2] Although Prible sought certiorari review of the state court's postconviction decision, the certiorari petition did not toll the running of the limitation period. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007).

limitation claim by claim) (citing *Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004)). This Court need not allow the third amendment to add complaints.

## DEFAULT

The two claims also are defaulted. A federal habeas court may not grant relief on a state prisoner's application for a federal writ of habeas corpus unless the applicant has exhausted his state court remedies. *See* § 2254 (b)(1)(A). To exhaust his state court remedies, the petitioner must have presented the substance of his claim to the state courts fairly. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)). Where a state prisoner seeks federal relief on a claim that has not yet been presented to state courts, the federal court may find the claim barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Where a petitioner has failed to exhaust his state-court remedies but where the state court to which he would be required to present his unexhausted claims would now find those claims barred, federal habeas corpus review is precluded by the procedural default doctrine. *See id.*; *Nobles*, 127 F.3d at 423 (finding unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred). The Texas Court of Criminal Appeals applies its abuse-of-the-writ rules regularly and strictly. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

Prible has never presented to the state court system for review Claim Nos. 10 and 11. Were he to do so now, the Court of Criminal Appeals would find the application abusive. Indeed, the state court found Prible's most recently filed application abusive. Because Prible has never presented these claims to the state court system and because he cannot do so now, the claims are defaulted. *See Coleman*, 501 U.S. at 735 n.1.

## EXCUSING THE DEFAULT

If state prisoner wishes to avoid the procedural bar in federal court, the prisoner must show either (1) cause for the default and actual prejudice that is attributable to the default, or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice. *See Coleman*, 501 U.S. at 750.

As for the issue of "cause," where a trial-related ineffective-assistance claim is defaulted owing to state habeas counsel's failure to raise the claim in state postconviction proceedings, the failure of state habeas counsel can constitute cause for purposes of excusing the default. *Martinez v. Ryan,* 132 S. Ct. 1309, 1315 (2012).

As for the miscarriage of justice exception, to demonstrate such a miscarriage, the prisoner must show he is actually innocent of the crime of which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339–40 (1992). To be credible, an actual-innocence claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## I.   Prible Does Not Show That He Is Actually Innocent.

In Claim No. 10, citing *Giglio v. United States*, 405 U.S. 150 (1972), Prible alleges he was denied due process when the prosecution sponsored false testimony from DNA expert William Watson (Docket 86-2 at 218–19), introduced and argued false and misleading expert testimony regarding burn patterns and accelerant use (*id.* at 219), sponsored false testimony suggesting that Herrera would not have allowed Prible into Herrera's house (*id.* at 220–21), and sponsored false and misleading testimony about phone calls that had been received by Herrera (*id.* at 21–23).

In claim No. 11, Prible alleges that he received ineffective when counsel failed to used Prible's cell-phone records to counter William Watson's testimony regarding the interval between Prible and Tirado's sexual encounter and Tirado's death (Docket # 86-2 at 224); failed to impeach the testimony of Victor Martinez that Herrera would not have allowed Prible to enter his house (*id.* at 224); failed to use Prible's cell-phone records to exonerate Prible (*id.* at 224); failed to exclude or impeach the testimony of the State's experts regarding burn patterns and accelerants (*id.* at 225); failed to object to the State's closing argument regarding the use of Kutzit as an accelerant (*id.* at

225–26); and failed to object to the prosecutor's comment upon Prible's failure to testify (*id.* at 226).

As mentioned above, both claims are defaulted. To the extent that Prible argues that the default associated with Claim Nos. 10 and 11 should be excused on grounds of actual innocence, his argument fails.

In connection with his complaint about the testimony of William Watson, Prible offers a report from a different expert, Elizabeth A. Johnson, Ph.D. (Docket # 91-10 at 2–6.) Johnson disputes Watson's opinion that his finding Prible's sperm in Tirado's mouth suggests that Tirado was killed immediately after the sexual encounter. Johnson said that studies suggest that sperm could be found in the mouth of a live individual hours after a sexual encounter. Johnson's report, taken at face value, does not disprove Watson's timeline. Johnson simply offers a longer possible timeline. And given other evidence, to be discussed below, Johnson's expanded timeline is less probable than Watson's. Prible offers not evidence of innocence but a battle of the experts.

As for Prible's cursory complaint about the burn-pattern evidence (Docket # 86-2 at 219, *citing id.* at 110–38), he offers no new evidence but asks this Court to reevaluate the trial evidence.

As for his argument regarding Herrera's allowing visitors into his house (*id.* at 220–21), Prible reargues trial evidence.

9

Regarding Victor Martinez's trial testimony about the phone calls between Estaban Herrera, called "Steve" by friends and family, and his brother, Edward Herrera, Prible asks this Court to reevaluate trial evidence. As for phone records indicating that Steve, using Prible's cell phone, called his brother's pager, Edward Herrera so testified at trial. As for phone records suggesting that calls were made from Prible's phone after the murders, no evidence suggests that Prible spoke to anyone or left messages. The records suggest, rather, that if calls were made from Prible's cell phone, the calls were placed inadvertently, that is, were "pocket calls."

As for evidence of Prible's guilt, apart from his confession to Beckcom, Prible was last seen with Steve Herrera in the early morning hours preceding the murders. Victor Martinez testified that he, Steve Herrera, and Prible left Rick's Cabaret after 2 the morning of the murders. (RR XXV: 28.)[3] They went to Herrera's house, a fifteen- to twenty-minute drive. (RR XXV: 31.) There, the three talked for a while. (RR XXV: 32.) When Martinez left, he saw Prible and Steve Herrera playing pool in the garage. (RR XXV: 33.) Martinez arrived at his own home at 3:30 a.m. (RR XXV: 34.) One could infer that Prible and Steve Herrera were last seen together at about 3 a.m. The fire in Herrera's house was discovered by a neighbor at about 6 to 6:30 a.m. (RR XXI: 104.)

---

[3] "RR" refers to the reporter's record of the trial testimony, followed by the volume in a Roman numeral and the page number in Arabic.

10

Police found guns and ammunition at Prible's house and found a semiautomatic-pistol magazine that did not fit any of the recovered weapons. (RR XXIV: 124–28, 184–85.) The magazine was consistent with the design for a Ruger P85 pistol, which could have fired the slugs that killed Herrera and Tirado. (RR XXIV: 179, 180, 184.) A check stub showed Prible purchased nine millimeter ammunition consistent with that used to kill the victims. (RR XXII: 204; RR XXIV: 188; SX 201.)

The evidence also indicates that Nilda Tirado had performed oral sex upon Prible shortly before her death. (RR XXIV: 103–05.) Prible alleges that the encounter was consensual and occurred in bathroom of the Herrera-Tirado home while Herrera was in the garage. (RR XXVI: 45.) The only evidence that Prible and Tirado were having an affair came from Prible himself. (RR XXVI: 33.) Tirado's girlfriends, however, testified that Tirado did not like Prible and that he gave her the creeps. (RR XXV: 116, 122.)

Apart from Beckcom's testimony, the evidence offered by the prosecution is consistent with Prible's guilt. And Prible's explanation for the DNA evidence is far-fetched and self-serving. Prible does not show actual innocence sufficient to excuse the procedural default of either Claim No. 10 or 11.

II.     *Martinez v. Ryan* Offers No Relief.

  A.    *Martinez* does not apply to a due process claim.

To the extent that Prible alleges that the failure of state habeas counsel to raise the due process claim, Claim No. 10, in state habeas proceedings constitutes "cause" for purposes of excusing the default, he errs. The principles set out in *Martinez* excuse default of a claim regarding the effectiveness of trial counsel. 142 S. Ct. at 1315. Nothing under *Martinez* suggests that the rules can be used to excuse the default of a due process claim.

  B.    Prible does not meet the *Martinez* standards.

In Claim No. 11, Prible alleges that he received ineffective assistance at the guilt-innocence portion of trial when counsel failed to use Prible's phone records to rebut the State's allegation that he raped Nilda Tirado. (Docket # 86-2 at 224–27.) To the extent that he seeks to avoid default through *Martinez*, his fails to meet the requirements.

Where a petitioner wishes to avoid default in connection with a claim that trial counsel was ineffective, the petitioner must show that state habeas counsel's failure to raise the claim in state postconviction proceedings fell below the constitutional standard for effective assistance. *Martinez*, 132 S. Ct. at 1318. The petitioner must also show that the trial-related claim was substantial, that is, that the claim had some merit. *Id.* As for the trial-related ineffective-assistance claim, a defendant must demonstrate (1) that counsel's

12

performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The phone records referenced by Prible (Docket # 91-8 at 2–5) would not have aided his defense. Trial testimony from Victor Martinez and Edward Herrera indicates that Steve Herrera used Prible's cell phone to call Edward's pager in the late evening of April 23, 1999, and the early hours of April 24.

Victor Martinez testified that he saw Steve use Prible's cell phone to place "a couple" of calls to Edward Herrera's pager before the three—Prible, Steve Herrera, and Martinez—left for Rick's Cabaret. (RR XXV: 46.) Sometime after 2 a.m. when the trio had left Rick's, Steve, again using Prible's cell phone, called Edward's pager. (RR XXV: 28.) Martinez testified that he never heard Prible's phone ring; that is, he never heard the paged party return the page to Prible's call phone. (RR XXV: 12.)

Edward Herrera testified he received a page from his brother, Steve, at about 9 p.m. April 23. (RR XXV: 72.) Edward testified that he knew the page was from his brother because his brother used a numeric code, "021," to identify the caller. (RR XXV: 72–73.) He testified that he thought he returned the page. (RR XXV: 74.) Prible's cell-phone records do not indicate that someone used Prible's phone to place a call to Edward Herrera's pager at about 9 p.m. April 23. (Docket # 91-8 at 4–5.) Because Edward testified that his brother, told him that he was calling from his house, it is possible that Steve called his brother's

13

pager not using Prible's cell phone but using his home phone. Edward testified, however, that when Steve first called his pager, Steve called from a cell phone. (RR XXV: 78 ll. 18–19.) Edward may have been mistaken.

Edward testified he received another page—the code indicated from Steve—at about 11 p.m. (RR XXV: 77.) Prible's phone records indicate that a call was placed to Edward pager at 11:03 p.m. (Docket # 91-8 at 4.)

Edward testified that he receive two additional pages from his brother. (RR XXV: 78.) Edward testified that he spoke with his brother after each page. (RR XXV: 78.) Edward said he spoke with his brother at about 2 p.m. when his brother was at Rick's. (RR XXV: 79.) Edward received a page from his brother at about 2:20 or 2:30 a.m. (RR XXV: 79.) The calls bore his brother numeric identification code. (RR XXV: 79.) Edward said he called his brother back and spoke to him. (RR XXV: 79.) The last page Edward received from his brother came at about 3 a.m. (RR XXV: 80.) Edward returned the page. (RR XXV: 80.) Edward also said he received later pages, pages that did not bear his brother's numeric identifier. (RR XXV: 80–81.)

Prible's cell phone records show that calls were placed to Edward's pager at 11:03 p.m. April 23 (eighteen seconds), at 12:05 a.m. April 24 (twenty-six seconds), 12:07 a.m. (twenty-seven seconds), 3:14 a.m. (nineteen seconds), 4:04 a.m. (nine seconds), 4:06 a.m. (thirty-three seconds), 5:05 a.m. (one minute and thirty-nine seconds), and 6:13 a.m. (thirty-two seconds).  (Docket # 91-8 at 4–

14

5.) Prible's phone records do not, however, indicate who placed the calls and do not indicate any numeric identifier.

Prible argues that the cell phone calls placed to Edward's pagers from 4 a.m. to 6:13 a.m. April 24 suggest that Prible was not the killer. Prible argues that the killer would not continue to call the pager of the victim's brother. A more likely explanation is that the cell phone calls to the pagers were accidental "redials." From 3:14 a.m. to 6:13 a.m. only Edward's pager number was called. Not until 10:12 a.m. April 24 was the cell phone used to place a call to a number other than Edward's pager. A reasonable explanation is that after Steve placed a call to his brother's pager, Prible—presuming Prible had possession of the phone—inadvertently pocket-dialed the most recent number called. Edward Herrera did not testify that he spoke with Prible or responded to the anonymous pages.

Prible does not show that counsel was constitutionally required to use Prible's phone records, records that corroborated the testimony of Victor Martinez and Edward Herrera and did not exculpate Prible. *See Strickland*, 466 U.S. at 687. Nor does Prible show that had counsel used the phone records, the result would have differed or that the omission of the records led to an unfair trial. *See id.* at 694. Hence, under *Martinez*, the phone record-related ineffective-assistance claim is not substantial and the failure of state habeas

counsel to raise the issue did not amount to a constitutional error. *See* 132 S. Ct. at 1318. Prible cannot use *Martinez* to avoid default.

Prible also complains that counsel should have excluded burn-pattern evidence; should have used the phone records to challenge the State's rape theory, should have impeached the testimony of Victor Martinez; and should have objected to the prosecutor's comment upon Prible's failure to testify. (Docket # 86-2 at 224–26.) Prible complains only that counsel should have done more and better. The petitioner does not show that the ineffective-assistance claim is substantial or that state habeas counsel was constitutionally ineffective for failing to raise the issue in state postconviction proceedings. *See Martinez*, 132 S. Ct. at 1318. Prible does not, therefore, avoid default.

## EXPANDING THE RECORD

As for those claims raised previously in Prible's second amended petition (Docket # 47), the claims have been addressed previously in the Director's amended answer and motion for summary judgment. (Docket # 56.) As for any attempt to add to the record, for those claims reviewed on the merits by the state court system, additional evidence is made superfluous by *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.") As for the claims that are defaulted, they need not be reviewed on the merits at all. See *Coleman*, 501 U.S. at 735 n.1.

CONCLUSION

This Court should deny Prible's motion to file a third amended petition and should deny his motion to expand the record.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
 for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

_____ s/ Thomas M. Jones _____
THOMAS M. JONES*
Assistant Attorney General
Criminal Appeals Division
Attorney-In-Charge

State Bar No. 00784357
Southern District Bar No. 29084

P. O. Box 12548, Capitol Station
Austin TX 78711-2548
Ph.: (512) 936-1400
Fax No. (512) 936-1280
E-mail:
Thomas.Jones@texasattorneygeneral.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that on August 14, 2015, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Counsel for Prible

Hilder & Associates, P.C.
Philip H. Hilder
James Rytting
819 Lovett Blvd.
Houston TX 77006
Email: philip@hilderlaw.com, james@hilderlaw.com

      s/ Thomas M. Jones
     THOMAS M. JONES
     Assistant Attorney General