UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **RONALD JEFFREY PRIBLE,** | ' |
| **PETITIONER,** | ' |
| V. | ' CASE NO. H-09-CV-1896 |
| **LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,** | ' ' ' |
| **RESPONDENT.** | ' |

**PETITIONER'S RENEWED MOTION TO COMPEL PRODUCTION OF HARRIS COUNTY DISTRICT ATTORNEY'S "WORK PRODUCT" FILES AND "WORK PRODUCT" E-MAILS IN LIGHT OF PROSECUTOR KELLY SIEGLER'S DEPOSITION TESTIMONY**

TO THE HONORABLE KEITH P. ELLISON:

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Ronald Jeffrey Prible ("Prible"), Petitioner, renews his motion to compel the Harris County District Attorney's Office ("HCDA") to produce its entire "work product" file in this case and the related case of Hermilo Herrero, and to produce certain e-mails currently being withheld on the basis that they, too, constitute protected "work product." In support thereof, Prible shows as follows:

**I.**

**According to Ms. Siegler, trial defense counsel had access to her entire file – including any and all of her notes – at all times.**

On October 17, 2007, Prible's counsel deposed the lead prosecutor in his capital murder case, Kelly Siegler. During her deposition, Ms. Siegler claimed that she adhered to an "open file" policy, that she did not maintain a separate "work product" file, and that any and all of her

2

notes were included in the open file that was available to defense counsel any time they wanted to look at it:

> Q. (BY MS. SCARDINO)... Did you disclose to Mr. Prible's defense attorney that you had spoken with Mr. Foreman on August 8th, 2001?
>
> A. (BY MS. SIEGLER) Mr. Prible's attorney, Terry Gaiser?
>
> Q. Uh-huh.
>
> A. We talked about Nathan Foreman. I don't know exactly if I told him about that conversation but we did discuss Nathan Foreman.
>
> Q. I'm asking you if you told Mr. Gaiser or Mr. Wentz if you – about the substance of your meeting with Mr. Foreman on August 8th, 2001?
>
> A. I think I did.
>
> Q. And you would have – did you show him your notes from that meeting?
>
> A. They were in the file.
>
> Q. But he wasn't allowed to see your work product notes, was he?
>
> A. Those weren't – that's not work product. My notes were in the file. Notes are notes. They're in the file.
>
> Q. So, should they all be – all your notes –
>
> A. Yes.
>
> Q. – be viewable –
>
> A. Yes.
>
> Q. – to the defense counsel?
>
> A. Yes.
>
> Q. Okay. So, you're saying that all of your – any – any of your notes that were contained in the file would have been disclosed to defense counsel?
>
> A. My notes would have been in the open file.

> Q. Okay. So, you didn't take any notes out saying – claiming work product protection over them before the defense came to review the file?
>
> A. Not that I remember, no.

See Siegler Deposition (excerpts of which are attached hereto as **Exhibit A**), at pp. 111:9-112:17.

> Q. (BY MS. SCARDINO): And is that why you decided not to have Mr. Gonzalez testify against Prible in his case, because you determined that he was not credible?
>
> A. Correct.
>
> Q. Okay. Did you ever show Mr. Gaiser or Mr. Wentz this letter from Mr. Gonzalez?
>
> A. It would have been in the file.
>
> Q. Okay. So, your – your testimony is yes, you did show it to them?
>
> A. I don't know if they looked at it or not. It would have been in the file.
>
> Q. It would have been in the file that you gave them to review when they came into your office to review the file?
>
> A. Correct.
>
> Q. And do you have any written record of what was in that file that you gave them to review?
>
> A. No.
>
> Q. Okay. You never made any notes about specifics?
>
> A. The file was an open file. I've known Terry Gaiser for years. Any time he wanted to read the file, he could come. I would even bring it to court for him to read during docket call. "Here it is, Terry. Knock – knock yourself out."

See **Exhibit A**, at pp. 153:18-154:17.

Ms. Siegler claimed that she did not even know what "work product" was:

> Q. (BY MS. SCARDINO) . . . Ms. Siegler, earlier we were talking about the open file policy that you said the DA's office had during this time period that Mr.

*Prible was prosecuted, and in that – when a defense attorney came in to view the file, would they be able to take notes of what they were reading?*

*A. Yes.*

*Q. But they would not be able to make copies of the documents in the file; is that right?*

*A. Correct.*

*Q. And you testified that you had no work product file that you kept as such, correct?*

*A. Not per se, not necessarily, no.*

*Q. Okay. And that is because all of your work product would have been reviewable by the defense, right?*

*A. I'm trying to think of what work product might have come up in Prible early on. I can't think of what it would have been.*

*Q. Okay.*

*A. But my notes I wouldn't have considered work product.*

*Q. Okay. All notes – any notes that you took working on this case would have been available to defense attorneys to see; is that right?*

*A. Yes.*

*Q. Okay. And how do you define work product? What's your understanding of that definition? The legal definition of work product.*

*A. We tried to keep most things not work product just because it was simpler.*

*Q. Okay. Do you – do you know what the term "work product" – how it's defined under the law?*

*A. Tell me.*

*Q. No, I'm asking you if you – if you know?*

*A. No, I don't know the criminal definition of it.*

See **Exhibit A,** at pp. 147:12-148:22.

Ms. Siegler also referred to her file several times in lieu of answering questions, indicating that the answer to the questions could be found in her file:

> Q. (By Ms. Scardino) . . . What was done post 1999?
>
> A. That's when I got the case.
>
> Q. Yes. And what did you do when you started investigating the case?
>
> A. Started from the beginning all over again.
>
> Q. Did you interview witnesses?
>
> A. Yes.
>
> Q. Okay. But you didn't make any notes of those witnesses?
>
> A. If I did, they're in the file.
>
> Q. They would be in your work product file?
>
> A. No. They would be in the file.

See **Exhibit A,** at p. 58:1-12.

> Q. (BY MS. SCARDINO) . . . Were you present at this meeting with Mr. Bonds and Mr. Foreman?
>
> A. If – if Johnny would have been interviewing Nathan Foreman, I would have been there.
>
> Q. Okay. Would you have taken notes on that meeting?
>
> A. Not necessarily.
>
> Q. If you had taken notes, where would they be?
>
> A. They would be in the file but I probably didn't take any.

See **Exhibit A,** at p. 224:9-18.

At other times during her deposition, Ms. Siegler seemed to accuse *Prible's attorney* of concealing certain items from her prosecution file:

> *Q. Now, Exhibit 113 – Exhibit 113 is a letter from Carl Walker, another inmate in FCI Beaumont, to you about Mr. Prible's case. Do you recognize this letter?*
>
> *A. I do, but this is the only letter I noticed you all talk about in your petition where you don't have the envelope attached with the date. I'd like to see the date, please.*
>
> *Q. Well, I'd like to see it also but it wasn't produced to us from your file.*
>
> *A. That's odd.*
>
> *Q. Do you think it should be in your file somewhere?*
>
> *A. You should ask him that.*
>
> *Q. Well, I'm asking you because you know what's in the file. Would you have kept that –*
>
> *A. Yes.*
>
> *Q. – in your file?*
>
> *A. Yes.*
>
> *Q. Okay. So – and it would be – and in your mind, we should be able to review the entire file, right, that you had in this case?*
>
> *A. No, I just want to know where the envelope is because you've attached the rest of the envelopes.*
>
> *Q. Right. I've attached everything that was given – I'll represent to you that was produced to us by the DA's office. So, you've seen this letter before. Do you recognize it?*
>
> *A. Okay.*
>
> *Q. Okay. Now, why did you not use Carl Walker to testify against Mr. Prible?*
>
> *A. I didn't believe him.*
>
> *Q. Okay. Did you ever speak with him on the phone?*

> *A. I don't even remember the name of Carl Walker. Unlike the other inmates whose names I do recognize, I don't remember Carl Walker's name. And I also notice in this letter that he talks as if Prible had already been indicted, unlike the others, which, again, makes me wonder where is the envelope that went with this letter.*
>
> *. . .*
>
> *Q. And I would very much like to see that envelope also. I would represent to you. So -- Okay. So, you chose – you decided not to use Mr. Walker because you thought he was not credible?*
>
> *A. Based on what he's saying here –*
>
> *Q. What he's saying here?*
>
> *A. – it doesn't make sense.*
>
> *Q. Okay. But you're saying that you showed this letter to Mr. Prible's defense team?*
>
> *A. I'm saying it was in the file.*
>
> *Q. So, you can't say for certain that you showed this letter to Mr. Prible's defense team?*
>
> *A. I don't know what they read. The file was open for them to read whatever they wanted.*

See **Exhibit A,** at pp. 154:18-156:24.

## II.
**The HCDA should be ordered to produce the remaining pages of "work product" because (1) according to Ms. Siegler, this evidence was never withheld from Mr. Prible's trial counsel in the first place, and (2) the credibility of Ms. Siegler's deposition testimony cannot be evaluated without viewing the entire prosecution file to determine whether the information she claims is in the file actually exists.**

In July 2016, Prible served the HCDA with a subpoena requesting "any and all material that has heretofore been withheld from the defense on the basis that it is work product, privileged, or otherwise confidential." In response to that subpoena, the HCDA withheld 487 pages of notes from the Prible and Hermilo Herrero files that it claimed constituted protected

prosecutorial work product. This Court reviewed the 487 pages of notes *in camera* and determined that some of the pages (namely, those within Tabs 9 and 65) possibly contained exculpatory information and needed to be produced. *See* May 12, 2017 Order (Dkt. 154).

Prible respectfully requests that the remaining "work product" be produced at this time on the basis that Ms. Siegler, by her own admission, waived any "work product" protection that might otherwise have attached to those documents when she allegedly[1] made her entire file – including her notes – available to Prible's trial counsel. "A party's decision to produce protected written work product, including notes of conversations made in the course of a criminal investigation and information learned during a criminal investigation, unquestionably waives protection of such materials." *See Wright v. State,* 374 S.W.3d 564, 580 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *In re Bexar Cnty. Criminal Dist. Attorney's Office,* 224 S.W.3d 182, 187 (Tex. 2007)). Moreover, the veracity of Ms. Siegler's deposition testimony cannot be evaluated without looking at the entire file and determining whether the as-yet-unseen information that she referenced in her deposition actually exists.

## CONCLUSION

Given Ms. Siegler's testimony that her entire file – including her notes – was available at all times to Prible's trial counsel, Prible respectfully requests that the Court order the HCDA to produce the remaining pages of "work product" that were previously submitted to the Court for *in camera* review. Due to the fact that a scheduling order is in place with a motion for evidentiary hearing due in December, Prible respectfully requests expedited consideration of this motion.

---

[1] Prible's renewal of this motion should not be construed as an admission by him that Ms. Siegler testified truthfully and did, in fact, disclose her entire file – including her notes – to his trial counsel.

        Respectfully submitted,

        HILDER & ASSOCIATES, P.C.

By:   */s/ Gretchen Scardino*
      Philip H. Hilder
      State Bar No. 19620050
      James Rytting
      State Bar No. 24002883
      819 Lovett Boulevard
      Houston, Texas 77006
      Telephone (713) 655-9111
      Facsimile (713) 655-9112

      Gretchen N. Scardino
      State Bar No. 24037170
      REED & SCARDINO LLP
      301 Congress Avenue, Suite 1250
      Austin, Texas 78701
      Telephone: (512) 474-2449
      Facsimile: (512) 474-2622

      ATTORNEYS FOR PETITIONER

## CERTIFICATE OF CONFERENCE

On the 2nd day of November, 2017, I conferred with counsel for Respondent who stated that Respondent opposes this motion.

>
> */s/ Gretchen N. Scardino*
> Gretchen N. Scardino

## CERTIFICATE OF SERVICE

On this 3rd day of November, 2017, I served the foregoing motion on Respondent using the ECF filing system.

>
> */s/ Gretchen N. Scardino*
> Gretchen N. Scardino