UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD JEFFREY PRIBLE, | § | |
| | § | |
| PETITIONER, | § | |
| V. | § | CASE NO. 4-09-CV-01896 |
| | § | |
| LORI DAVIS, DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL JUSTICE, | § | |
| CORRECTIONAL INSTITUTIONS DIVISION, | § | |
| | § | |
| RESPONDENT. | § | |

## SECOND MOTION TO DEPOSE WILLIAM WATSON, PhD

TO THE HONORABLE JUDGE KEITH M. ELLISON:

On July 8, 2016, this Court granted in part Petitioner, Ronald Jeffrey Prible's motion to depose the prosecution team. USDC, Dkt. [134]. The Court denied without prejudice Prible's request for leave to depose William Watson, a DNA Analyst who testified at Prible's October 2002 trial. *Id.* However, the Court invited Prible to seek leave to depose Watson upon completion of authorized discovery. *Id.* Having completed depositions of the prosecution team, Prible files this motion to take the deposition Watson's deposition pursuant to Habeas Rule 6 and Rule 30 of the Rules of Civil Procedure, and would show as follows:

### A. BACKGROUND FACTS

On April 24, 1999, Nilda Tirado and Esteban ("Steve") Herrera were found shot dead in their still smoldering home. Petitioner denied that he had killed either victim, but admitted that he had been with the two the night they died, and he admitted that Nilda had performed oral sex on him. *See* 21 RR 176-178.

1

*Pretrial*

Early in the investigation, the State employed Mr. Watson (who had not yet finished his doctorate) to test items, including oral, anal and vaginal swabs for DNA evidence.  By June 4, 1999, Watson had determined that DNA from sperm found in Nilda's oral cavity matched Prible's DNA profile, and reported, as well, that semen detected on vaginal and anal swabs came from Steve.  *See USDC Dkt.* [99], *Third Amended Petiton,* Exhibit 5 (Report signed by William Watson, MS).

Watson did not render a forensic opinion in his June report regarding the length of time *post mortem* that haploid DNA (from sperm) detected on the oral swabs in the case could have persisted, while the victim remained alive, in the victim's oral cavity in a state that would permit collection and development of a DNA profile.  Watson's did not discuss in his reports reasons for the quantity of DNA found or the quality of the samples.  Nor did Watson give an opinion as to the likely interval between oral sex and death based on any other evidence.

*Trial*

At trial, however, Watson was asked to provide an opinion about how long sperm could survive in the oral cavity of a living subject. 24 RR 101.  Watson opined that sperm would not survive in testable quantities (amounts capable of yielding a complete or complete DNA profile of the donor) in the oral cavity under such circumstance for more than one hour after being deposited. According to Watson, this testimony was based on his experience. 24 RR 102.  Watson testified that he had processed hundreds of oral swabs from sexual assault cases in which oral sex had been reported.  Watson could not recall a single case, he said, in which he had seen a DNA profile of

2

the donor developed from swabs of the oral cavity taken more than an hour after the sexual assault was reported to have occurred. *Id.*

In closing argument, the lead prosecutor, Kelly Siegler, and the second chair, Vic Wiesner, used Watson's testimony to argue that Prible engaged in oral sex with the victim within minutes if not second of her death. Although Prible was not seen with a weapon anytime during the hours before the murder, and was not wearing clothing in which one could be readily concealed – he had on normal, as opposed to baggy, blue jeans, tea shirt and tennis shoes – the prosecution insisted, based on Watson's testimony, that Prible forced Nilda to have oral sex at gun point, and shot her in the back of the head right after he orgasmed. 28 RR 22 ("I would suggest to you what the evidence indicates is that the Defendant after killing Steve forced Nilda to orally copulate him at gunpoint and executed her as soon as he finished.").

*Post-trial Depositions*

During recent depositions authorized by this Court both Wiesner and Siegler emphasized the importance of DNA evidence, and they emphasized Watson's opinion about the perimortem interval between oral sex. According to Wiesner, this testimony was the most important evidence in the case. Relative to this testimony, he said, Michael Beckcom's testimony was insubstantial.

Wiesner further stated evidence that Prible claimed was withheld, such as photographs showing Beckcom was associated with group of individuals who were endeavoring to obtain Rule 35 reductions of their federal sentence by providing the State with testimony against Prible, would have been important for defense attorney to have, but for Watson's testimony placing Prible at the scene engaged in oral sex with Nilda proximate to her murder. According to Weisner, this DNA was so important that, in his opinion,

3

> 20 I don't think we would try the
> 21· case without physical evidence linking Prible to the
> 22· scene…

*Wiesner Deposition*, p. 74.

Conversely, the evidence Prible contended was unconstitutionally withheld was not material for *Brady* purposes relative to the incriminating physical evidence. According to Wiesner, as a defense attorney, he would not try to use the fact that Beckcom was associated with informants who were trying to set Prible up because the DNA evidence would be his overriding concern:

> Q.· ·The question is:· Would you want this
> 20· information?· Would you try to build a case as a defense
> 21· attorney that he was being set up by informants?
> 22· · · A.· ·No.· If I was the defense attorney, I would
> 23· have to come up with some sort of theory about how his
> 24· semen was found in the dead woman's mouth.· Because if
> 25· not, he's guilty, we didn't even need any informants.

*Id.,* p. 65.

### B.  ARGUMENT

In light of the use of Watson's testimony at trial and the affirmation of its importance to the State in recent depositions, deposing Watson is warranted under Habeas Rule 6 and Rule 45 of the Rules of Civil procedure for the following reasons:

First, Watson deposition is relevant to Prible's actual innocence claim and to his related "gateway" innocence claim. At the time of trial, Watson was a young analyst. He was unware, apparently, of actual, controlled, statistically analyzed, studies that show the spermatozoa persist

in oral cavities of living subjects for many hours after being deposited. *See USDC Dkt.* [99], *Third. Amended Petition*, Exh. 54 ("Affidavit of Elizabeth Johnson"). Watson therefore may reverse or modify his opinion in light of these studies. The impact of such a reversal, given the facts of Prible's case, would be magnified. Watson provided purportedly scientific proof that Prible was at the scene and engaged in sex proximate to (specifically, within an hour of) Nilda's and Steve's murder. 24 RR 101-02. This testimony also undercut otherwise exceptionally strong alibi testimony, from Prible's neighbor, Christina Garrusquita, who testified that she heard Steve Herrera and Prible talking loudly outside her window in the very early morning, and, from her window, saw Jeff go inside his home and saw Steve drive away. 27 RR 10.

Second, Watson testimony is relevant to Prible's claim that the State sponsored false and misleading testimony and engaged in a false and misleading oral argument, as allege in Prible's Tenth Claim or relief. *See USDC* Dkt. [99], *Third Amended Petition,* at 209. Watson can potentially shed light on whether consulted him about the extremely foreshortened timeframe they argued his testimony supported, or whether the prosecutors manufactured these arguments without Watson's input or against his recommendations. Deposition testimony is therefore calculated to fortify Prible's due process claims that he was convicted on the basis of false and misleading testimony.

Third, deposing Watson is necessary given deposition testimony indicating prosecutors felt justified in not disclosing information about the ring of snitches connected to the lead prosecutor because Watson's DNA testimony rendered informant testimony unnecessary and evidence impeaching Beckcom, the informant sponsored at trial, immaterial.

5

WHERFORE, Prible requests that his motion to depose Watson be ordered granted.

                    Respectfully submitted,

                    HILDER & ASSOCIATES, P.C.

By: _____
Philip H. Hilder
State Bar No. 19620050
James Rytting
State Bar No. 24002883
819 Lovett Boulevard
Houston, Texas 77006
Telephone (713) 655-9111
Facsimile (713) 655-9112

Gretchen N. Scardino
State Bar No. 24037170
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, Texas 78701
Telephone: (512) 474-2449
Facsimile: (512) 474-2622

ATTORNEYS FOR PETITIONER
RONALD JEFFREY PRIBLE

## CERTIFICATE OF CONFERENCE

Undersigned counsel has not conferenced this motion, and so it should be considered OPPOSED.

*/s/James G. Rytting*
James G. Rytting

## CERTIFICATE OF SERVICE

On this 8th Day of December 2017, I served the foregoing motion on Respondent using the ECF filing system, and hand delivered a copy of the motion to the Harris County District Attorney's Office.

*/s/James G. Rytting*
James G. Rytting

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **RONALD JEFFREY PRIBLE,** § § | | |
| **PETITIONER,** § § | | |
| V. § § | **CASE NO. 4-09-CV-01896** | |
| **WM. STEPHENS, DIRECTOR, TEXAS** § **DEPARTMENT OF CRIMINAL JUSTICE,** § **CORRECTIONAL INSTITUTIONS DIVISION,** § § | | |
| **RESPONDENT.** § | | |

## ORDER

Petitioner Ronald Jeffery Prible has filed a Second Motion for Leave to Depose DNA Analyst William Watson pursuant to Habeas Rule 6 and Rule 30 of the Federal Rules of Civil Procedure. After considering the pleadings, the record, and the arguments of counsel, the Court **GRANTS** / **DENIES** Prible's motion.

ORDERED this _____ day of _____, 2015.

_____
HON. KEITH P. ELLISON